# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JACQUELINE WEISS and JOSEPH WEISS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff<br>v.<br><br>Arby's Restaurant Group, Inc.,<br><br>   Defendant. | Civil Action No. 1:17-CV-1035 |
| In re: Arby's Restaurant Group, Inc. Data Security Litigation<br><br>CONSOLIDATED CONSUMER CASE | Case No. 1:17-cv-1035 |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CONSUMER PLAINTIFFS' CONSOLIDATED <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

I.     ALLEGATIONS IN THE COMPLAINT .......................................................... 1

II.    LEGAL STANDARD........................................................................................ 3

III.   ARGUMENT .................................................................................................... 3

     A.     Plaintiffs Fail To State A Claim For Breach Of Implied Contract. ....................... 3

          1.     Plaintiffs May Not Unilaterally Impose On Arby's An Implied Contractual Obligation To Safeguard Data. .................................................... 3

          2.     Plaintiffs Fail To Allege Any Actionable Injury Or Damages. ................. 8

     B.     Plaintiffs Fail To State A Claim For Negligence................................................... 12

          1.     No Duty.................................................................................................... 13

               (a)     No Negligence Duty To Safeguard Personal Data. ..................... 13

               (b)     No Duty To Protect Against Third-Party Criminal Attack........... 15

          2.     No Negligent Act. ..................................................................................... 17

          3.     No Causation............................................................................................. 19

          4.     No Injury................................................................................................... 20

          5.     The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim. ........... 21

     C.     Plaintiffs Fail To State A Claim For Negligence Per Se. ..................................... 22

          1.     The Existence Of The FBPA Bars The Negligence Per Se Claim. .......... 23

          2.     Section 5 Cannot Sustain A Claim For Negligence Per Se. ..................... 24

          3.     Plaintiffs Fail To Allege Any Section 5 Violation.................................... 25

          4.     No Causation; No Injury; And No Avoiding The ELD............................ 28

     D.     Plaintiffs Fail To State A Claim For Unjust Enrichment....................................... 28

     E.     Each Plaintiff's Claim For Violation Of Georgia's FBPA Is Unavailing. ........... 29

          1.     No Plaintiff Has Standing To Assert An FBPA Claim............................. 29

          2.     Plaintiffs Fail To Identify Any Misrepresentation By Arby's. ................. 30

          3.     Plaintiffs Fail To Plead Reliance. ............................................................ 31

          4.     Plaintiffs Fail To Allege Actual Injury. ................................................... 32

     F.     Claims Under Other States' Statutes Are Not Properly Pled............................... 32

     G.     Plaintiffs Fail To State A Claim For Declaratory Judgment................................. 35

IV.   CONCLUSION................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfi v. Nordstrom, Inc.*,
 No. 09-cv-1249, 2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) ...............................................10

*Almanza v. United Airlines, Inc.*,
 851 F.3d 1060 (11th Cir. 2017) ....................................................................................................3

*Alonso v. Blue Sky Resorts*,
 LLC, 179 F. Supp. 3d 857 (S.D. Ill. 2016) ...............................................................8, 11, 13

*Am. Ins. Co. v. Evercare Co.*,
 430 F. App'x 795 (11th Cir. 2011) .............................................................................................35

*Amburgy v. Express Scripts, Inc.*,
 671 F. Supp. 2d 1046 (E.D. Mo. 2009).............................................................................17, 32

*Anderson v. Hannaford Bros.*,
 659 F.3d 151 (1st Cir. 2011).............................................................................................7, 9, 10

*In re Arby's Restaurant Group, Inc. Data Security Litigation*,
 No. 17-cv-514 (N.D. Ga. Filed May 19, 2017)............................................................................8

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*,
 No. 08-cv-1958, 2010 WL 1882316 (D. Conn. May 10, 2010) ...............................................34

*Badish v. RBS Worldpay, Inc.*,
 No. 09-cv-0033, 2010 U.S. Dist. LEXIS 145301 (N.D. Ga. Feb. 5, 2010) ..............................7

*Banknorth, N.A. v. BJs Wholesale Club, Inc.*,
 442 F. Supp. 2d 206 (M.D. Pa. 2006) .........................................................................................8

*Bans Pasta, LLC v. Mirko Franchising, LLC*,
 No. 13-cv-00360, 2014 WL 637762 (W.D. Va. Feb. 12, 2014)................................................25

*In re Barnes & Noble Pin Pad Litig.*,
 No. 12-CV-08617, 2016 WL 5720370 (N.D. Ill. Oct. 3, 2016) ...............................................32

*In re Barnes & Noble Pin Pad Litig.*,
 No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013)....................................................9

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544, 555 (2007)...........................................................................................................18

*Belle Chasse Auto. Care, Inc. v. Advanced Auto Parts, Inc.*,
No. 08-cv-1568 (E.D. La. Mar. 24, 2009) ...........................................................21

*Bellsouth Telecom. LLC v. Cobb Cnty.*,
A17A0265, 2017 WL 2590853 (Ga. Ct. App. June 15, 2017) ..............................24

*Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*,
54 F. Supp. 2d 1127 (M.D. Fla. 1999), *aff'd,* 216 F.3d 1092 (11th Cir. 2000) .......................9

*Bishop v. Shorter Univ., Inc.*,
No. 15-cv-00033 (N.D. Ga. June 4, 2015), ECF No. 22.............................5, 10, 21

*Blair v. Wachovia Mortg. Corp.*,
No. 11-cv-00566, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ..........................34

*Blotner v. Doreika*,
678 S.E.2d 80 (Ga. 2009)....................................................................................13

*Bogard v. Inter-State Assurance Co.*,
589 S.E.2d 317 (Ga. App. Ct. 2003) ...................................................................29

*Bradley Center, Inc. v. Wessner*,
296 S.E.2d 693, 696 (Ga. 1982)..........................................................................16

*Brazil v. Janssen Research & Dev. LLC*,
No. 15-CV-0204, 2016 WL 4844442 (N.D. Ga. Mar. 24, 2016) ..........................33

*Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*,
172 F. Supp. 3d 1007 (M.D. Tenn. 2016).............................................................34

*Brock v. Avery*,
110 S.E.2d 122 (Ga. Ct. App. June 24, 1959).......................................................24

*Bruscato v. Gwinnett-Rockdale-Newton Cmty. Serv. Bd.*,
660 S.E.2d 440 (Ga. Ct. App. 2008) ...................................................................16

*Burnett v. Stagner Hotel Courts, Inc.*,
821 F. Supp. 678 (N.D. Ga. 1993), *aff'd,* 42 F.3d 645 (11th Cir. 1994) ..................6

*Burton v. MAPCO Exp., Inc.*,
47 F. Supp. 3d 1279 (N.D. Ala. 2014)...................................................................9

*Cent. Anesthesia Assocs., P.C. v. Worthy*,
333 S.E.2d 829 (Ga. 1985)..................................................................................28

*Cirzoveto v. AIG Annuity Ins. Co.*,
625 F. Supp. 2d 623, 632 (W.D. Tenn. 2009).......................................................34

*City of Atlanta v. Benator*,
    714 S.E.2d 109 (Ga. Ct. App. 2011) ...................................................................21

*Cooney v. Chi. Pub. Schs.*,
    943 N.E.2d 23 (Ill. App. Ct. 2010) ...................................................................13

*Copelan v. Elite Lending Partners*,
    No. 13-CV-95, 2013 WL 4786239 (M.D. Ga. Sept. 6, 2013) ...............................30

*Crawford & Assocs., Inc. v. Groves-Keen, Inc.*,
    194 S.E.2d 499 (Ga. Ct. App. 1972)...................................................................11

*Cruet v. Emory University*,
    85 F. Supp. 2d 1353 (N.D. Ga. 2000) ...............................................................23

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...........................................................................28

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) .........................................................................30

*De La Flor v. Ritz-Carlton Hotel Co.*,
    556 F. App'x 938 (11th Cir. 2014) ...............................................................14, 25

*Dittman v. UPMC*,
    No. GD-14-003285, 2015 WL 4945713 (Pa. Com. Pl. Civ. May 28, 2015) ....................7, 13

*Edwards-Astin v. Medtronic Minimed, Inc.*,
    No. 08-cv-103, 2008 WL 11319723 (N.D. Ga. 2008) ...........................................31

*Engl v. Natural Grocers by Vitamin Cottage*,
    15-cv-02129, 2016 WL 8578252 (D. Colo. Sept. 21, 2016) ..................................11

*Ermutlu v. McCorkle*,
    416 S.E.2d 792 (Ga. Ct. App. 1992).....................................................................17

*Extremity Healthcare, Inc. v. Access To Care Am., LLC*,
    793 S.E. 2d 529 (Ga. Ct. App. 2016).....................................................................4

*F.T.C. v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)................................................................................27

*Fanelli v. BMC Software, Inc.*,
    2013 WL 12190241 (N.D. Ga. July 29, 2013).....................................................23

*Federated Bank v. F.D.I.C.*,
    645 F. App'x 853 (11th Cir. 2016) ........................................................................8

iv

*Finnerty v. State Bank & Trust Co.*,
687 S.E.2d 842 (Ga. Ct. App. 2009)....................................................21

*First Choice Fed. Credit Union v. Wendy's Co.*,
No. 16-cv-506, 2017 U.S. Dist. LEXIS 20754 (W.D. Pa. Feb. 13, 2017)............25

*Fitzpatrick v. Gen. Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) ........................................................34

*FTC v. Windward Mktg.*,
No. 96-cv-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997)......................27

*Galaria v. Nationwide*,
No. 2:13-cv-00118 (S.D. Ohio, August 16, 2017), ECF No. 89......................20

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*,
608 S.E.2d 636 (Ga. 2005)............................................................21

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)...........................................12

*Graham v. CitiMortgage, Inc.*,
No. 14-cv-1476, 2014 WL 12360943 (N.D. Ga. Sept. 23, 2014)...........................3

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ........................................................30

*Grigsby v. Valve Corp.*,
No. 12-cv-0553, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012)......................32

*Hammond v. The Bank of New York Mellon Corp.*,
No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...........................32

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*
4 A.3d 492 (Me. 2010)................................................................21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
613 F. Supp. 2d 108 (D. Me. 2009), *rev'd on other grounds sub nom.*
*Anderson v. Hannaford*, 659 F.3d 151 (1st Cir. 2011) ..................9, 11, 17

*Higginbottom v. Thiele Kaolin Co.*
304 S.E. 2d 365 (Ga. 1983)............................................................5

*Holmes v. Countrywide Fin. Corp.*,
2012 WL 2873892 (W.D. Ky. July 12, 2012) ...................................10, 11

v

*Honig v. Comcast of Georgia I, LLC*,
    537 F. Supp. 2d 1277 (N.D. Ga. 2008) .................................................................24

*Hubbard v. Dep't of Transp.*,
    568 S.E.2d 559 (Ga. Ct. App. 2002) ....................................................................25

*Hudson v. Cent. Georgia Health Servs.*,
    No. 04-cv-301, 2005 WL 4145745 (M.D. Ga. Jan. 13, 2005)..................................5

*Hughes v. Chattem, Inc.*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011) .................................................................29

*Irwin v. Jimmy Johns Franchise LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...........................................................15, 29

*Jenkins v. Wachovia Bank, N.A.*,
    724 S.E.2d 1 (Ga. Ct. App. 2012), *rev'd sub nom. Wells Fargo Bank, N.A. v.*
    *Jenkins*, 744 S.E.2d 686 (Ga. 2013), *vacated in part on other grounds*, 752
    S.E.2d 633 (Ga. Ct. App. 2013)..............................................................12, 16, 24

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)...................................................................................6

*Kenney v. Healey Ford-Lincoln-Mercury, Inc.*,
    730 A.2d 115 (Conn. App. Ct. 1999) ...................................................................34

*Krottner v. Starbucks Corp.*,
    406 Fed. App'x 129 (9th Cir. 2010) ..................................................................7, 21

*Kuhns v. Scottrade*,
    No. 16-cv-3426, 2017 WL 3584046 (8th Cir. Aug. 21, 2017) .......................6, 10, 17

*LabMD Inc., v. FTC*,
    No. 16-16270, 678 F. App'x 816 (11th Cir. 2016)................................................27

*LeBlanc v. Unifund CCR Partners*,
    601 F.3d 1185 (11th Cir. 2010) ..........................................................................26

*Legacy Acad., Inc. v. Mamilove, LLC*,
    761 S.E.2d 880 (Ga. Ct. App. 2014), *rev'd in part*, 771 S.E.2d 868 (Ga. 2015),
    *vacated in part*, 777 S.E.2d 731 (Ga. Ct. App. 2015)..........................................25

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...............................................................12

*Longernecker-Wells v. Benecard Services*,
  658 Fed. App'x 659 (3rd Cir. 2016) ...................................................................7

*Lovell v. P.F. Chang's China Bistro, Inc.*,
  No. 14-cv-1152, 2015 WL 4940371 (W.D. Wa. 2015) ......................................6

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................21

*Lynas v. Williams*,
  454 S.E.2d 570 (Ga. Ct. App. 1995) ................................................................31

*Massih v. Jim Moran & Assocs., Inc.*,
  542 F. Supp. 2d 1324 (M.D. Ga. Mar. 28, 2008)..............................................28

*May v. State*,
  761 S.E.2d 38 (Ga. 2014) ................................................................................15

*McConnell v. Ga. Dep't of Labor*,
  787 S.E.2d 794 (Ga. Ct. App. 2016), *cert. granted* (Feb. 27, 2017)............13, 15, 16

*McDaniel v. Wells Fargo Bank, N.A.*,
  No. 14-cv-2337, 2016 WL 1071101 (N.D. Ga. Mar. 17, 2016) ..........................10

*MCI Commc'ns Servs. v. CMES, Inc.*,
  728 S.E.2d 649 (Ga. 2012).............................................................................20

*McLoughlin v. People's United Bank, Inc.*,
  No. 08-cv-00944, 2009 WL 2843269 (D. Conn. Aug. 31, 2009)...................21, 34

*In re Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) .........................................................22, 26, 31

*Moore-Davis Motors, Inc. v. Joyner*,
  556 S.E.2d 137 (Ga. App. Ct. 2001) ................................................................32

*Moyer v. Michaels Stores, Inc.*,
  No. 14-cv-561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ..........................11, 12

*Norman v. Jones Lang Lasalle Ams., Inc.*,
  627 S.E.2d 382 (Ga. Ct. App. 2006) ................................................................25

*Norton v. Budget Rent A Car Sys., Inc.*,
  705 S.E.2d 305 (Ga. Ct. App. 2010) ..................................................................8

*Pagliara v. Johnston Barton Proctor and Rose, LLP*,
  708 F.3d 813 (6th Cir. 2013) ...........................................................................34

*Partner Servs., Inc. v. Avanade, Inc.*,
   No. 13-cv-0001, 2013 WL 12180442 (N.D. Ga. Aug. 26, 2013) ...............................5

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017) ......................................................................3, 19

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007) ...............................................................................8

*Porsche Cars N.A., Inc. v. Diamond*,
   140 So. 3d 1090 (Fla. Dist. Ct. App. 2014) ....................................................27, 34

*Pugh v. Bank of Am.*,
   No. 13-cv-2020, 2013 WL 3349649 (W.D. Tenn. July 2, 2013)............................34

*Randolph v. ING Life Ins. & Annuity Co.*,
   973 A.2d 702 (D.C. 2009) ...................................................................................11

*Remax The Mountain Co. v. Tabsum, Inc.*,
   634 S.E.2d 77 (Ga. Ct. App. 2006)......................................................................22

*Resnick v. AvMed*,
   693 F.3d 1317 (11th Cir. 2012) .......................................................................9, 20

*Rosen v. Protective Life Ins. Co.*,
   No. 09-cv-03620, 2010 WL 2014657 (N.D. Ga. May 20, 2010)............................22

*Savannah Coll. of Art v. Roe*,
   409 S.E.2d 848 (GA 1991) ...................................................................................6

*Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*,
   641 F. App'x 849 (11th Cir. 2016) ...........................................................14, 15, 22

*Sion v. Sunrun*,
   No. 16-cv-05834-JST, 2017 WL 952953 (N.D. Cal. Mar. 13, 2017).....................21

*Small v. Savannah Intl. Motors*,
   619 S.E.2d 738 (Ga. App. Ct. 2005).....................................................................32

*Smith Serv. Oil Co. v. Parker*,
   549 S.E.2d 485 (Ga. Ct. App. 2001) ....................................................................28

*Smith v. United States*,
   No. 15-cv-726-WSD, 2016 WL 6680467 (N.D. Ga. Nov. 14, 2016).....................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)................................................................9, 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................ *passim*

*State St. Bank & Trust Co. v. Canal Ins. Co.*,
    No. 14-CV-2080, 2014 WL 12360078 (N.D. Ga. Dec. 1, 2014) ..........................35

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    64 F. Supp. 3d 1304 (D. Minn. 2014) ...........................................................15, 31

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) ...............................................................21

*Terrill v. Electrolux Home Products, Inc.*,
    753 F. Supp. 2d 1272 (S.D. Ga. 2010) ..............................................................29

*Thomas v. US Bank Nat'l Ass'n*,
    675 F. App'x 892 (11th Cir. 2017) ...................................................................12

*Tiismann v. Linda Martin Homes Corp.*,
    610 S.E.2d 68 (Ga. 2005) ...................................................................................32

*In re TJX Co. Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009) ..............................................................................26

*Torres v. Wendy's*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016) .........................................................9, 21

*Torres v. Wendy's, Int'l, LLC.*,
    No. 16-cv-210 (M.D. Fla. March 21, 2017), ECF No. 101 ......................7, 15, 33

*Tyler v. Michaels Stores, Inc.*,
    840 F. Supp. 2d 438 (D. Mass. 2012) ................................................................29

*Vance v. T.R.C.*,
    494 S.E.2d 714 (Ga. Ct. App. 1997) ..................................................................16

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) .........................................................................34

*Walden v. City of Hawkinsville*,
    No. 03-CV-0398, 2005 WL 2304398 (M.D. Ga. Sept. 21, 2005) .......................25

*Walker v. Sunrise Pontiac-GMC Truck*,
    249 S.W. 3d 301 (Tenn. 2008) ..........................................................................35

*Wells Fargo Bank, N.A. v. Jenkins*,
    744 S.E.2d 686 (Ga. 2013) ...........................................................................13, 24

*Whalen v. Michael Stores, Inc.*,
  153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, No. 16-260 (L), 2017 WL
  1556116 (2d Cir. May 2, 2017) ...............................................................9

*Willey v. J.P. Morgan Chase, N.A.*,
  No. 09-1397, 2009 WL 1938987 (S.D.N.Y. July 7, 2009)...................................26

*Williams v. Singletary*,
  78 F.3d 1510 (11th Cir. 1996) ...............................................................15

*Willingham v. Global Payments, Inc.*,
  No. 12-cv-1157, 2013 WL 440702 (N.D. Ga Feb. 5, 2013)........................... *passim*

*WirelessMD, Inc. v. Healthcare.com Corp.*,
  610 S.E.2d 352 (Ga. App. Ct. 2005)............................................................5

*Worix v. MedAssets, Inc.*,
  869 F. Supp. 2d 893 (N.D. Ill. 2012) .......................................................14

*In re Zappos.com*,
  108 F. Supp. 3d 949 (D. Nev. 2015).........................................................11

*In re Zappos.com, Inc. Customer Data Sec. Breach. Litig.*,
  No. 12-cv-00325, 2013 WL 4830497 (D. Nev. Sept. 9, 2013)...........................7, 29

**Statutes**

15 U.S.C. § 45(n) ...................................................................................27

Conn. Gen. Stat. § 42-110b..................................................................34

FTC Act ...................................................................................... *passim*

Gramm-Leach-Bliley Act ........................................................................24

O.C.G.A. § 10-1-912...............................................................................17

O.C.G.A. § 10-1-391...............................................................................23

O.C.G.A. § 10-1-393...............................................................................23

O.C.G.A. § 10-1-399...................................................................23, 29, 30, 35

Tenn. Code § 47-18-109(g)....................................................................35

Tenn. Code § 47-18-115 ........................................................................34

**Other Authorities**

DATA SECURITY STANDARD, REQUIREMENTS AND SECURITY ASSESSMENT PROCEDURES (Version 3.1 Apr. 2015) ...................................................................18

FTC Franchise Rule, 16 C.F.R. § 436.1........................................................................24

F.R.C.P. Rule 8 ..............................................................................................................33

F.R.C.P. Rule 9 .......................................................................................................30, 34

*Statement of the Fed. Trade Comm'n on Small Business Cybersecurity* (Mar. 8, 2017) ......................................................................................................................26

VISA'S ZERO LIABILITY POLICY, ..................................................................................8

ZERO LIABILITY PROTECTION ......................................................................................8

Although the Complaint spans 85 pages and 224 paragraphs, it rests on mere generalities and legal conclusions and pleads not a single out-of-pocket loss suffered by any of the five Plaintiffs.  Each Plaintiff purchased food from Arby's using a credit or debit card for payment, but under Georgia law there is no duty in contract or negligence to safeguard such card data from the criminal acts of third parties.  The negligence claims are also barred by the economic loss doctrine, and unjust enrichment claims are unavailing as no undue benefit was conferred on Arby's.  Nor has any Plaintiff met the requirements for asserting a claim under the Georgia Fair Business Practices Act or stated a violation of any other state consumer statute.  As a result, each of the counts of the Complaint should be dismissed.

## I.       ALLEGATIONS IN THE COMPLAINT

The Complaint alleges that on various dates between October 27, 2016 and January 14, 2017, each Plaintiff purchased food at a local Arby's restaurant in the state where he or she resides (Connecticut, Florida, Georgia, and Tennessee), using a credit or debit card (a "payment card").  Compl. ¶¶ 28, 32, 36, 41.  The Complaint does not allege, however, that in the course of their purchases Plaintiffs inquired about, or any Arby's representative made any statement to them regarding, the company's data security measures.

The Complaint further alleges that on or around October 8, 2016, computer

1

hackers began using malicious software to access the point-of-sale systems at Arby's locations (the "Intrusion"), *id.* ¶¶ 3, 96, and allegedly obtained copies of each Plaintiff's "payment card data," *id.* ¶¶ 1, 96.  Plaintiffs allege the hackers also obtained "other personally identifiable information," *id.* ¶ 1, but without ever identifying that information or how it may have been obtained.  *See generally*, *id.*

Significantly, no Plaintiff alleges any out-of-pocket loss.  Although Plaintiffs allege "suspicious activity," including unspecified unauthorized charges on their payment card accounts, none asserts that he or she paid such charges and was not reimbursed.  *Id.* ¶¶ 30, 38, 43.  The Complaint generically refers to "late fees" resulting from an inability to use cancelled payment cards, but no Plaintiff pleads having actually incurred such fees.  *Id.* ¶¶ 174, 181, 207, 220.  The Complaint also refers to "foregoing reward points and/or cash-back rewards" that might have been available during the period prior to a cancelled card's replacement, but no Plaintiff identifies the "points" or "rewards" he or she purportedly did not get or explains why an equivalent reward could not have been obtained by use of a different card.  *Id.* ¶¶ 14, 30, 39.  Although Plaintiffs claim a risk of "future fraud" from the Intrusion, they simultaneously concede their payment cards have already been cancelled, foreclosing the potential for future fraudulent charges.  *Id.* ¶¶ 30, 34, 43, 49.  Finally, while Plaintiffs allege they expended time and suffered annoyance and

inconvenience in addressing the Intrusion (*id.* ¶¶ 30, 34, 43,45), no Plaintiff alleges any out-of-pocket loss from this supposed injury.

## II.   LEGAL STANDARD

"[T]he 'obligation' to provide the 'grounds' of [the pleader's] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"   *Graham v. CitiMortgage, Inc.*, No. 14-CV-1476, 2014 WL 12360943, at *1 (N.D. Ga. Sept. 23, 2014).   As the Eleventh Circuit has explained, "inferences may logically derive only from factual allegations actually made," *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 n.4 (11th Cir. 2017); "unwarranted deductions of fact" are not accepted as true, *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1071 (11th Cir. 2017).

## III.   ARGUMENT

### A.   <u>Plaintiffs Fail To State A Claim For Breach Of Implied Contract.</u>

#### 1.   *Plaintiffs May Not Unilaterally Impose On Arby's An Implied Contractual Obligation To Safeguard Data.*

At the core of each Plaintiff's claims is that he or she visited an Arby's restaurant, entered into a contract to purchase food, and paid the contract price using a payment card.   Compl. ¶¶ 28, 32, 36, 41.   Plaintiffs nowhere allege that, as part of these contracts, Arby's *expressly* promised to safeguard Plaintiffs' payment card data from criminal hackers.   Instead, Plaintiffs contend Arby's *impliedly* made that

3

promise, not because of anything Arby's said or did regarding data security at the time of contracting, but rather because Plaintiffs purportedly "would not have provided their [card data]" otherwise.  *Id.* ¶¶ 147-148.

Georgia law[1] provides no basis for Plaintiffs' implied contract claim.  *First*, it is black-letter law that one party's expectations alone, even if reasonable, can never suffice to impose contractual terms on another.  *See Extremity Healthcare, Inc. v. Access To Care Am., LLC*, 793 S.E. 2d 529, 534 (Ga. Ct. App. 2016) (quoting 1 Williston on Contracts § 4:1 (4th ed. 2016) (in contract formation, "subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties.")).  To plead the requisite "meeting of the minds" for an implied data security term, each Plaintiff must assert facts showing that *Arby's* said or did something to demonstrate an objective manifestation of *Arby's* intent to take on a contractual data security obligation to each of them.  *Id.*  The Complaint is silent, however, regarding any act or statement by Arby's that would remotely suggest an intent to so bind itself.[2]  That being the case, Plaintiffs' assertions as to their own subjective intent fall well short

---

[1] For purposes of this motion only, Arby's accepts as true Plaintiffs' allegation that Georgia law governs Plaintiffs' common-law claims.  Compl. ¶¶ 125-131.

[2] Notably, the *only* Arby's statement about security identified in the Complaint is the cautionary statement that "security breaches [involving] . . . unauthorized disclosure of confidential information," in fact, "may occur."  Compl. ¶ 94.

of showing the parties' *mutual* assent at the time of sale to an additional term regarding data security.[3]

*Second,* Georgia law will not imply a term into a contract unless a party would otherwise receive "*no benefits at all* from the contract." *WirelessMD, Inc. v. Healthcare.com Corp.*, 610 S.E.2d 352, 355 (Ga. Ct. App. 2005) (rejecting implied term not "absolutely necessary" for plaintiff to receive consideration).[4]  Thus, where a party received at least some form of consideration, additional implied terms are not "absolutely necessary" for that party to benefit from the contract and are rejected. *See id.* at 356; *Hudson v. Cent. Ga. Health Servs.*, No. 04-cv-301, 2005 WL 4145745, at *6 (M.D. Ga. Jan. 13, 2005) (agreement to pay "hospital's regular charges" did not require implication of further term that charges would be "reasonable and fair").  Here, Plaintiffs concede they received the food they contracted to purchase.  Compl. ¶ 214.  As a result, they cannot claim that a further

---

[3] Indeed, Plaintiffs' allegations fall short even on *their* side of the negotiating equation, as they allege no *facts* to establish their claimed subjective intent.  *See Bishop v. Shorter Univ., Inc.,* No. 15-cv-00033 (N.D. Ga. June 4, 2015), ECF No. 22 at *35-36 (allegation that plaintiffs "would not have entrusted" their information to defendants was merely a "legal conclusion" and "not a well-pleaded allegation").

[4] *See also Higginbottom v. Thiele Kaolin Co.* 304 S.E. 2d 365, 368 (Ga. 1983) (no implied duty to mine land where monthly rental payments already provided consideration); *Partner Servs., Inc. v. Avanade, Inc.*, No. 13-cv-0001, 2013 WL 12180442, at *6 n.5 (N.D. Ga. Aug. 26, 2013) (no implication of term even if consistent with underlying agreement unless "absolutely necessary . . . to effectuate the intention of the parties").

term requiring Arby's to safeguard their payment card information is "absolutely necessary" for them to benefit from their contracts.[5]

*Third,* the fact that Plaintiffs' food would have cost the same had they paid with cash *confirms* that Arby's received no consideration for, and hence cannot be found to have impliedly assented to, an additional contractual term obliging Arby's to protect their payment card data.  *See Kuhns v. Scottrade*, No. 16-cv-3426, 2017 WL 3584046, at *4 (8th Cir. Aug. 21, 2017) (rejecting contention that portion of brokerage fees were allocated to data security; promise that data "would not be hacked . . . may not be plausibly implied"); *cf. Katz v. Pershing, LLC,* 672 F.3d 64, 74 (1st Cir. 2012) (no implied term as to data security where defendant received no compensation for such security services).

For precisely these reasons, courts around the country have rejected implied contract claims in data breach cases,[6] even where the merchant made express

---

[5] Far from considering such obligations "absolutely necessary," Georgia courts are particularly *averse* to introducing implied contractual terms requiring protection against third-party criminal acts.  *See Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 682 (N.D. Ga. 1993) (no implied contractual duty to protect against third-party criminal acts, even where written agreement provides for security, "[i]n the absence of a plain and explicit expression of willingness to" do so), *aff'd,* 42 F.3d 645 (11th Cir. 1994); *see also Savannah Coll. of Art v. Roe*, 409 S.E.2d 848, 849 (Ga. 1991) (same, where agreement between the parties did not "plainly and explicitly" do so).

[6] *See, e.g., Lovell v. P.F. Chang's China Bistro, Inc.*, No. 14-cv-1152, 2015 WL 4940371, at *3 (W.D. Wa. 2015) (dismissing implied contract claim because

statements about its security (which Plaintiffs do not allege here).[7]  The few outlier decisions that allowed such claims to proceed either interpreted other states' laws in ways directly contrary to governing Georgia law[8] or misapplied Georgia law itself.[9]

In sum, because Plaintiffs have not sufficiently alleged an implied contract term as to data security, their implied contract claims fail as a matter of law.

---

contract's "terms involved only the provision of and payment for food, not a promise to safeguard the customer's credit or debit card information"); *Longernecker-Wells v. Benecard Services,* 658 Fed. App'x 659, 662-63 (3rd Cir. 2016) (same, because receipt of information alone does not imply promise to safeguard); *see Dittman v. UPMC*, No. GD-14-003285, 2015 WL 4945713 at *6 (Pa. Com. Pl. Civ. May 28, 2015) ("common sense requires a finding" that defendant would not agree to safeguard information against third-party criminal attack).

[7] *See In re Zappos.com, Inc. Customer Data Sec. Breach. Litig.*, No. 12-cv-00325, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (dismissing implied contract claim even where Zappos allegedly represented "its servers were protected by a secure firewall and [] customers' data was safe"); *Willingham v. Global Payments, Inc.*, No. 12-cv-1157, 2013 WL 440702 at *21 (N.D. Ga Feb. 5, 2013) (recommending dismissal of implied contract claim even where defendant made security representations on website and privacy statement); *Krottner v. Starbucks Corp.*, 406 Fed. App'x 129, 131 (9th Cir. 2010) (affirming dismissal of implied contract claim even where defendant allegedly addressed the maintenance of confidential information in employee documents).

[8] *See, e.g., Anderson v. Hannaford Bros.*, 659 F.3d 151 (1st Cir. 2011) (allowing implied contract claim under Maine law based only on what customer "expected"); *Torres v. Wendy's, Int'l, LLC.*, No. 16-cv-210 (M.D. Fla. March 21, 2017), ECF No. 101 at *7 (following *Hannaford* under Florida law).

[9] *See Badish v. RBS Worldpay, Inc.*, No. 09-cv-0033, 2010 U.S. Dist. LEXIS 145301, at *21-22 (N.D. Ga. Feb. 5, 2010) (mistakenly relying on allegations as to plaintiff's unexpressed subjective intent as sufficient to plead mutual assent of *the parties* to alleged implied additional contract term.).

2.    *Plaintiffs Fail To Allege Any Actionable Injury Or Damages.*

Plaintiffs also failed to plead that they suffered "resultant damages," *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010), from Arby's alleged breach of an implied promise. *Federated Bank v. F.D.I.C.*, 645 F. App'x 853, 859 (11th Cir. 2016).[10]  No Plaintiff alleges having incurred any out-of-pocket loss*, and none of the injuries Plaintiffs *do* allege is actionable in contract.

*First*, although Plaintiffs say there were unauthorized charges on their payment cards, none alleges that he or she ever had to pay any such charge.  This is not surprising, given that Visa and MasterCard require their issuers to protect their cardholders from having to pay unauthorized charges.[11]  Based on those card brand rules, numerous courts in data breach actions have recognized that a cardholder's

---

[10] *Cf. Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) (dismissing implied contract claim in data breach case for failure to plead compensable damage); *Alonso v. Blue Sky Resorts*, LLC, 179 F. Supp. 3d 857, 865 (S.D. Ill. 2016) (same).

[11] Under Visa and MasterCard policies, financial institutions that choose to become payment-card issuers thereby assume responsibility to reimburse customers for any unauthorized fraudulent charges on their accounts.  *See* VISA'S ZERO LIABILITY POLICY, https://www. visa.com/chip/personal/security/zero-liability.jsp (last visited Aug. 21, 2017); ZERO LIABILITY PROTECTION https://www.mastercard.us/en-us/about-mastercard/what-we-do/terms-of-use/zero-liability-terms-conditions.html (last visited Aug. 21, 2017); *see also Banknorth, N.A. v. BJs Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 209 (M.D. Pa. 2006) (discussing "Visa Zero Liability Policy," which requires issuers to limit consumer liability for fraudulent charges to $0). Notably, in the financial institution litigation, the plaintiff issuing banks seek damages for making these very reimbursements. *See In re Arby's Restaurant Group, Inc. Data Security Litigation*, No. 17-cv-514 (N.D. Ga. May 19, 2017), ECF No. 51.

mere allegation of an unauthorized charge, unaccompanied by an asserted associated out-of-pocket loss, is insufficient to state actionable injury.[12]

*Second*, Plaintiffs similarly make general reference to "late fees" suffered by the class, Compl. ¶¶ 174,181, 207, 220, but no Plaintiff says he or she ever incurred any such fee, *id.* ¶¶ 30-50. *See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1137 (M.D. Fla. 1999), *aff'd*, 216 F.3d 1092 (11th Cir. 2000) (dismissal where named plaintiffs themselves suffered no injury).

---

[12] *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 132-32 (D. Me. 2009) (reversed or reimbursed charges cannot sustain an injury in tort or contract), *rev'd on other grounds sub nom. Anderson*, 659 F.3d 151; *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (unreimbursed charges insufficient to state a claim); *see also Whalen v. Michael Stores, Inc.,* 153 F. Supp. 3d 577, 581, 583 (E.D.N.Y. 2015) (no Article III injury or loss where attempted fraudulent charge was not approved), *aff'd,* No. 16-260, 2017 WL 1556116 (2d Cir. May 2, 2017); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1284-85 (N.D. Ala. 2014) (no Article III injury without alleging non-reimbursement); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *1 (N.D. Ill. Sept. 3, 2013) (same); *Torres v. Wendy's*, 195 F. Supp. 3d 1278, 1282-83 (M.D. Fla. 2016) (same); *Willingham*, 2013 WL 440702, at *6 (same).  The Eleventh Circuit's ruling in *Resnick v. AvMed* is no exception.  693 F.3d 1317 (11th Cir. 2012).  Although the Court in *Resnick* did not require plaintiffs to allege that their losses were "unreimbursed" in order to suffice as injury, the losses in question cited by the Court included such items as significant lost wages, *id.* at 1324 (citing ¶ 49 of complaint), and $4,298.77 overdrawn from an E*Trade account for which plaintiff was held responsible, *id.* (citing ¶ 63 of complaint), and thus were not subject to the full reimbursement policies that apply in the payment card context, *see supra* n.11.

*Third*, two Plaintiffs allege "foregoing rewards points and/or cash back rewards," Compl. ¶¶ 30, 39, due to a delay in receiving their replacement cards, but they fail to plead what rewards they forewent and how they were thereby injured. *See Alfi v. Nordstrom, Inc.*, No. 09-cv-1249, 2010 WL 5093434, at *1-5 (S.D. Cal. Dec. 8, 2010) (lost payment card rewards insufficient to confer standing where program attributes/terms not pled).  Moreover, because it was these two Plaintiffs and their banks—not Arby's—that decided to cancel their payment cards before obtaining/providing a replacement card, any "reward" losses from their brief inability to make purchases on those specific cards are far too attenuated to support relief.  *See Anderson*, 659 F.3d at 167 (lost reward points too attenuated to form base of recovery in contract or tort); *Bishop,* No. 4:15-cv-00033, at *51 (same).

*Fourth,* Plaintiffs' claimed "injuries" from annoyance, inconvenience, embarrassment, and "hassle" or lost time in dealing with the alleged compromise of their cards, Compl. ¶¶ 34, 43-45, are not "damages" recoverable in contract.  *See, e.g.*, *Kuhns*, 2017 WL 3584046, at *4 (no contract claim absent financial loss; "[m]assive class action litigation should be based on more than allegations of worry and inconvenience"); *McDaniel v. Wells Fargo Bank, N.A.*, No. 14-cv-2337, 2016 WL 1071101, at *4 (N.D. Ga. Mar. 17, 2016) ("embarrassment, mental anguish and emotional distress" not cognizable in contract); *Holmes v. Countrywide Fin. Corp.*,

2012 WL 2873892, at *11 (W.D. Ky. July 12, 2012) ("time or effort" addressing data breach does not "articulate a compensable legal injury").[13]

*Fifth*, although each Plaintiff alleges an increased risk of identity theft due to the purported compromise of his or her data, Compl. ¶ 49, no court has held that an increased risk of future injury satisfies the "damages" element of a contract claim, and many courts have refused to so hold.[14]  Nor is any such claim plausible here given that, as Plaintiffs concede, the only information at issue is payment card data for already cancelled cards.  Compl. ¶¶ 30, 34, 38, 43; *Alonso*, 179 F. Supp. 3d at 864 ("[B]ecause the cards have been canceled, future risk of injury is essentially nonexistent."); *Engl v. Natural Grocers by Vitamin Cottage*, 15-cv-02129, 2016 WL 8578252, at *6 (D. Colo. Sept. 21, 2016) (same).  Further, Plaintiffs' contention that their payment card data somehow "lost value" upon being compromised (Compl. ¶ 48) has been flatly rejected by other courts.  *See, e.g.*, *Willingham*, 2013 WL 440702 at *23 (stolen information "[did] not have inherent monetary value").[15]

---

[13] *See also Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 n.9 (D.C. 2009) (collecting authorities holding that efforts to guard against possible misuse of data insufficient to state a claim); *Crawford & Assocs., Inc. v. Groves-Keen, Inc.*, 194 S.E.2d 499, 502 (Ga. Ct. App. 1972) (contract damages must "be capable of exact computation").

[14] *See, e.g., Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014); *Holmes*, 2012 WL 2873892 , at *7; *Hannaford*, 613 F. Supp. 2d at 134.

[15] *See also In re Zappos.com*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) (no Article

*Lastly*, Plaintiffs allege "actual injury and damages" based on the amount they paid for their food.  Compl. ¶ 47.  But they indisputably received and have no complaint about that food, and they paid no more for it than those paying cash.  They cannot, then, have "overpaid" for what they bought.  *See, e.g., Moyer*, 2014 WL 3511500 at *7 (rejecting plaintiffs' overpayment claim for failure to plead sufficient facts); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (no overpayment where plaintiffs' premium membership fees were for additional networking services, not security).[16]  In short, Plaintiffs' implied contract claims fail to plead any actionable injury and are dismissible on that ground as well.

## B.   Plaintiffs Fail To State A Claim For Negligence.

To state a claim for negligence, Plaintiffs must plead (1) duty, (2) breach, (3) proximate cause, and (4) damages.  *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687 (Ga. 2013).  None of these elements is adequately pled here, and in

---

III injury where plaintiffs failed to explain how data became less valuable or alleged any attempt to sell it); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) (hereinafter "*Sony II*") (purported diminution in value of personal identifiable information not actionable injury); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236 at *4 (N.D. Cal. Mar. 26, 2013) (same).

[16] Plaintiffs similarly fail to identify any actionable harm that resulted from a purported delay in notice, as opposed to from the Intrusion itself.  *See Thomas v. US Bank Nat'l Ass'n*, 675 F. App'x 892, 897 (11th Cir. 2017) (affirming dismissal of breach of contract because alleged injury would have resulted regardless of notice).

any event Plaintiffs' negligence claim is barred by the economic loss doctrine.

    1.   *No Duty.*

    (a)   *No Negligence Duty To Safeguard Personal Data.*

Plaintiffs allege Arby's owed them a duty "to exercise reasonable care to secure and safeguard" their information, Compl. ¶ 154, but the Georgia Court of Appeals rejected that duty, holding a "duty of care to safeguard personal information [] has no source in Georgia statutory law or caselaw." *McConnell v. Ga. Dep't of Labor*, 787 S.E.2d 794, 799 (Ga. Ct. App. 2016), *cert. granted* (Feb. 27, 2017).[17] *McConnell* is directly applicable here. There, a putative class alleged negligent disclosure of their personal information. *Id.* at 799. But *McConnell* found the Georgia Legislature had already determined not to create any such duty when it enacted two separate and distinct statutes on information security. *Id.* at 797-800. Thus, *McConnell* concluded, it would be "beyond the scope of judicial authority . . . [for a court] to create [such] a legal duty" on its own.[18] *Id.* at 800; *see Blotner v.*

---

[17] The Georgia Supreme Court has granted certiorari to consider whether the Court of Appeals should have considered sovereign immunity before the merits, and, if not, whether the merits ruling was correct. Case No. S16C1786, 2017 Ga. LEXIS 147 (Ga. Feb. 27, 2017). Oral argument is set for August 28, 2017.

[18] Courts applying other states' laws have come to the same conclusion for this very same reason. *See also Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 28-29 (Ill. App. Ct. 2010) (refusing to recognize a common-law duty to safeguard information where Illinois Legislature requires only notice of a breach); *Dittman*, 2015 WL 4945713, at *4 (same, applying Pennsylvania law); *cf. Alonso v. Blue Sky Resorts, LLC*, 179

*Doreika*, 678 S.E.2d 80, 80-81 (Ga. 2009) (where common-law duty is not recognized in Georgia, the rule can "be changed only by legislative act" (quoting *Albany Urology Clinic v. Cleveland*, 528 S.E.2d 777, 779 (Ga. 2000))).

The Eleventh Circuit similarly has found no duty to safeguard information under Georgia law absent a contractual obligation to do so.  *See Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 853 (11th Cir. 2016) (affirming rejection of negligence claim arising from data breach in part because plaintiff had identified no extra-contractual duty to safeguard its information).  In *Willingham*, the very same conclusion was reached in this District.  2013 WL 440702, at *18-19 (recommending dismissal of data-breach claim because breached entity owed no tort duty to consumers under Georgia law).[19]  Many other federal courts around the country have dismissed data-breach claims on precisely the same grounds, holding that merchants owe no duty to consumers to safeguard customer information.[20]  And

---

F. Supp. 3d 857 (S.D. Ill. 2016) (dismissing plaintiffs' common-law claims based on limited nature of Kentucky and Indiana data breach disclosure statutes).

[19] "[I]ndustry-standard practices" (Compl. ¶ 156(b)) also do not suffice to create a duty in negligence.  *De La Flor v. Ritz-Carlton Hotel Co.*, 556 F. App'x 938, 939 (11th Cir. 2014) ("industry standards" create no "'independent legal duty' with which [defendant] had to comply") (citation omitted); *Willingham*, 2013 WL 440702, at *19 ("no case law . . . support[s] a finding that commercial standards or general industry standards such as PCI-DSS would create a legal duty").

[20] In addition to the cases cited in footnote 18, *see, e.g., Irwin v. Jimmy Johns Franchise LLC*, 175 F. Supp. 3d 1064, 1071 (C.D. Ill. 2016) (no duty in tort to safeguard personal information) and *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893,

the few cases to find such a duty are inapposite because, with one exception,[21] all

were decided based on a state-law peculiarity not present in Georgia law.[22]

>    (b)    *No Duty To Protect Against Third-Party Criminal Attack.*

Plaintiffs' duty allegations are further (and independently) defective because

Georgia courts have long recognized that "one owes no duty to protect another from

injuries inflicted by a third party."  *May v. State*, 761 S.E.2d 38, 45 (Ga. 2014).  To

invoke a narrow exception to this long-recognized rule, Plaintiffs claim they had a

"special relationship" with Arby's because they "entrust[ed Arby's] with their

[cardholder data]" and only Arby's had the "ability to protect its systems . . . from

attack."  Compl. ¶ 162.  But Plaintiffs did not *entrust* anything to Arby's—they

---

897-98 (N.D. Ill. 2012) (same).

[21] The lone exception is *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, where the court determined that general negligence law in Georgia imposes a duty owed "to all the world not to subject them to an unreasonable risk of harm." MDL Docket No. 2583, 2016 WL 2897520, at *3-4 (N.D. Ga. May 17, 2016) (citation omitted).   However, *McConnell,* which specifically rejected the *Home Depot* analysis, is binding as to Georgia law.  *Williams v. Singletary*, 78 F.3d 1510, 1515 (11th Cir. 1996) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."). *McConnell* (supported by *Silverpop* and *Willingham*) thus dictates the outcome here, not *Home Depot*.

[22] *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1310 (D. Minn. 2014) (finding alleged duty plausible because "the duty to safeguard [card] data in Minnesota has received . . . legislative endorsement"); *Torres*, No. 16-cv-210, at *8-9 (finding plausible claims of negligence based on Florida's "foreseeable zone of risk" standard).

merely used their payment cards to make a purchase.  And given, as Georgia courts have held, that consumers do not have a special relationship even with their own *banks*,[23] there is no basis for finding one between consumers and *merchants* from whom they merely purchase food.[24]

Instead, and consistent with common sense the "special relationship" exception applies only to specific, classically recognized categories, such as common carriers and innkeepers, *Bruscato v. Gwinnett-Rockdale-Newton Cmty. Serv. Bd.*, 660 S.E.2d 440, 444 n.7 (Ga. Ct. App. 2008), or in certain instances where the defendant exercises an extremely high degree of control over a criminal attacker, *see, e.g.*, *Bradley Center, Inc. v. Wessner*, 296 S.E.2d 693, 696 (Ga. 1982) (relationship between psychiatric hospital and in-patient).  Even where a plaintiff alleges grievous bodily harm and/or a direct, contractual, professional relationship (unlike here), Georgia courts have still refused to expand the exception to new relationships.  *See, e.g.*, *Vance v. T.R.C.*, 494 S.E.2d 714, 718 (Ga. Ct. App. 1997) (physician had no special relationship with minor patient requiring him to protect

---

[23] *See Jenkins v. Wachovia Bank, N.A.*, 724 S.E.2d 1, 5 (Ga. Ct. App. 2012) (noting "Georgia's general rule that the bank-customer relationship is not confidential"), *rev'd sub nom. Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686 (Ga. 2013), *vacated in part on other grounds*, 752 S.E.2d 633 (Ga. Ct. App. 2013).

[24] *Sony II*, 996 F. Supp. 2d at 967-73 ("'[S]pecial relationship' cannot be based on "everyday consumer transactions."); *see also McConnell*, 787 S.E.2d at 797 n.4 (refusing to expand prior cases applying special-relationship exception).

her from sexual abuse).[25]  And even where a special relationship *does* exist, Georgia courts find a duty only to protect against criminal attacks that cause physical harm to person or property, which is not alleged here.  *See Smith v. United States*, No. 1:15-CV-726-WSD, 2016 WL 6680467, at *4 (N.D. Ga. Nov. 14, 2016) ("[T]he special relationship exception [set forth in *Wessner*] does not apply to claims of economic loss . . . .").[26]

### 2.  *No Negligent Act.*

Plaintiffs' negligence claim rests predominantly on the conclusory premise that merely suffering a data breach establishes negligence.  *See, e.g.,* Compl. ¶ 165 ("ARG breached its duties . . . by failing to implement adequate security systems, protocols and practices sufficient to protect. . . Customer Data.").  Such pleading is insufficient to allege negligence, however.  *See Kuhns*, 2017 WL 3584046 at *4 ("The implied premise that because data was hacked Scottrade's protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement'

---

[25] *See also Ermutlu v. McCorkle*, 416 S.E.2d 792, 795 (Ga. Ct. App. 1992) (psychiatrist had no duty to control outpatient who killed herself and another).

[26] Arby's alleged duty "to timely disclose the [Intrusion]" (Compl. ¶ 167) likewise fails, given that Georgia's data breach notice statute (O.C.G.A. § 10-1-912) provides no private cause of action and in any event is not claimed to have been violated.  *See Hannaford*, 613 F. Supp. 2d at 124 (no common-law cause of action for delayed notice where notification statute providing no private right of action has been enacted); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (same).

that cannot survive a motion to dismiss."); *Willingham*, 2013 WL 440702, at *19 ("[The mere] 'occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.'" (citation omitted)).

Nor are Plaintiffs' few specific assertions of "inadequate" security sufficient to allege negligence. First, Plaintiffs allege Arby's "failed to meet the October 1, 2015 deadline for installing EMV chip readers at its restaurant," Compl. ¶ 84, and "failed to enable point-to-point and end-to-end encryption," *id.* ¶ 93, but the PCI-DSS standards require neither measure, so Arby's cannot have been negligent in failing to implement them.[27]   Second, Plaintiffs allege that Arby's "fail[ed] to conduct regular security audits," *id.* ¶ 172, but again Plaintiffs neither point to an industry standard calling for such audits nor specify the how, when, and where of Arby's supposed non-compliance.  Instead, Plaintiffs improperly leave the Court to speculate about the facts establishing the supposed insufficiency of Arby's security audits.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."

---

[27] *See* PCI SECURITY STANDARDS COUNCIL, PAYMENT CARD INDUSTRY (PCI) DATA SECURITY STANDARD, REQUIREMENTS AND SECURITY ASSESSMENT PROCEDURES (Version 3.1 Apr. 2015) available at https://web.archive.org/web/20160201174424 /https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-1.pdf.   Instead of pointing to the PCI-DSS provisions that supposedly impose these requirements, the Plaintiffs rely on a recommendation in what appears to be an advertisement by a POS-software company.  Compl. ¶ 73.

18

(citation omitted)).[28]

### 3.   *No Causation.*

Additionally, the Complaint contains no well-pleaded facts, only conclusory allegations, as to *how* any alleged security failures caused the Intrusion. *See, e.g.*, Compl. ¶ 171 ("ARG's failure to take proper security measures . . . created conditions conducive to a foreseeable, intentional criminal act."); ¶ 174 ("As a direct and proximate cause of ARG's conduct, Consumer Plaintiffs and the Class suffered damages."). Such bare, factually unsupported allegations do not suffice. *See Perry*, 854 F.3d at 1342 n.4 (inferences may be drawn "only from factual allegations actually made").[29]

Nor do Plaintiffs sufficiently plead a "nexus" between the Intrusion and their

---

[28] While Arby's had no "duty to notify" Plaintiffs of the Intrusion under Georgia's notification statute or otherwise, *supra* note 26, Plaintiffs in any event fail to plead a breach of this supposed duty, since the Complaint confirms Arby's *did* provide notice, and, in fact, far sooner than the "many months" claimed. *Compare* Compl. ¶ 168, *with id.* ¶¶ 6, 101 (providing notice in February after discovery in mid-January).

[29] This failure is particularly striking with respect to Plaintiffs' allegation that Arby's failed to notify them of the Intrusion. Plaintiffs must "set forth a plausible claim that the alleged untimely disclosure, and not the intrusion itself, resulted in [Plaintiffs'] alleged injuries." *Sony II*, 996 F. Supp. 2d at 965. However, rather than plead, even in conclusory fashion, the different result that would have flowed from earlier notice, *see* Compl. ¶ 170, Plaintiffs admit that all alleged purchases were made *before* Arby's became aware of the incident (and thus before it could have provided notice). *Id.* ¶¶ 6, 28, 32, 36, 41.

claimed injuries. *Resnick*, 693 F.3d at 1326 ("[T]o prove that a data breach caused identity theft, the pleadings must include an allegation of a nexus between the two instances beyond allegations of time and sequence."). Each Plaintiff allegedly purchased food at an Arby's restaurant during the Intrusion and later discovered "suspicious activity" on or a "compromise" of his or her payment card, but under *Resnick* a plaintiff cannot establish a causal nexus by a mere temporal correlation. "[A]s *Resnick* recognized, . . . even with close temporal proximity, allegations of time and sequence alone are not enough to establish causation." *Galaria v. Nationwide*, No. 13-cv-00118 (S.D. Ohio Aug. 16, 2017), ECF No. 89 at *13.[30]

####  4.    *No Injury.*

Out of pocket loss is the traditional measure of damages for negligence under Georgia law. *MCI Commc'ns Servs. v. CMES, Inc.*, 728 S.E.2d 649, 651 (Ga. 2012). None of the Plaintiffs alleges any out-of-pocket loss here, *see supra* Part III.A.2, and courts considering data breach cases consistently have rejected negligence claims premised on the other supposed injuries Plaintiffs assert.[31]

---

[30] Plaintiff Barnes alleges that, in communicating with his bank about unauthorized charges on his account, the bank representative remarked that, since Barnes had made a purchase at a local Arby's, "the compromise of his card probably originated from the Arby's Data Breach." Compl. ¶ 38. The allegation adds nothing but speculation and a repetition of mere "time and sequence."

[31] Courts in this context thus have rejected negligence claims of injury premised on (a) increased risk of future identity theft, *see, e.g., Finnerty v. State Bank & Tr. Co.*,

5. *The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim.*

In any event, even had Plaintiffs pled all, rather than none, of the elements of a negligence claim, that claim would be barred under Georgia's economic loss doctrine ("ELD"). "[A] plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005) (barring negligence claim); *see City of Atlanta v. Benator*, 714 S.E.2d 109, 116-17 (Ga. Ct. App. 2011) (no recovery in negligence for losses unconnected to physical injury to persons or property). Indeed, in this District nearly identical claims were rejected on ELD grounds in *Willingham*, 2013 WL 440702, at *18 (recommending dismissal under Georgia's ELD of a consumer negligence claim based on a payment processor data breach), as numerous other courts have done in precisely these circumstances.[32]

---

687 S.E.2d 842, 845 (Ga. Ct. App. 2009); *Krottner*, 406 Fed. App'x at 131; *Sion v. Sunrun*, No. 16-cv-05834, 2017 WL 952953 at *3 (N.D. Cal. Mar. 13, 2017); *McLoughlin v. People's United Bank, Inc.*, No. 08-cv-00944, 2009 WL 2843269, at *8 (D. Conn. Aug. 31, 2009); *Belle Chasse Auto. Care, Inc. v. Advanced Auto Parts, Inc.*, No. 08-cv-1568 (E.D. La. Mar. 24, 2009), (b) unauthorized charges without allegations of out-of-pocket loss, *see, e.g., Sony*, 903 F. Supp. 2d at 963, (c) inconvenience or lost time, *see, e.g., Bishop*, No. 4:15-cv-0033 at *53; *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 4 A.3d 492, 496-97 (Me. 2010), (d) alleged overpayment for the goods or service, *see, e.g., Sony*, 903 F. Supp. 2d at 963; *Torres*, 195 F. Supp. 3d at 1284, and (e) alleged diminution in value of personal information, *see, e.g., Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012).

[32] *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1171-76 (D.

Under Georgia law (unlike in some other states), the ELD applies regardless of whether a contract exists, but it is especially well-suited to situations with an underlying contract. *Remax The Mountain Co. v. Tabsum, Inc.*, 634 S.E.2d 77, 79 n.6 (Ga. Ct. App. 2006) (applying ELD in absence of any contract or contractual scheme); *Rosen v. Protective Life Ins. Co.*, No. 09-cv-03620, 2010 WL 2014657 at *9 (N.D. Ga. May 20, 2010) ("Where a party's claim arises only from a duty owed in contract and the party only alleges economic damages the 'economic loss rule' applies."). Here, the existence of a contract between the parties is undisputed. Thus, Plaintiffs' attempt to supplement their contracts with Arby's through negligence is exactly what Georgia's ELD forbids. *Silverpop*, 641 F. App'x at 853 (duty to safeguard confidential information "is one arising under the contract itself," not tort).

C.   <u>Plaintiffs Fail To State A Claim For Negligence Per Se.</u>

Plaintiffs base their "negligence per se" claim on a purported violation of Section 5 of the FTC Act but neither Georgia law nor Plaintiffs' own pleading supports such a claim. Plaintiffs neither allege a cognizable Section 5 violation nor plead causation and damages or an exemption from the ELD.

---

Minn. 2014) (dismissing various state-law consumer negligence claims under ELD); *Sony II*, 996 F. Supp. 2d at 967-73 (dismissing California consumer negligence claim under ELD); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 530-31 (N.D. Ill. 2011) (dismissing Illinois consumer claims for negligence and negligence per se under ELD).

     1.    *The Existence Of The FBPA Bars The Negligence Per Se Claim.*

Under Georgia law, a claim for negligence per se is available only "for the breach of a legal duty where [a cause of action for such breach] does not otherwise exist." *Cruet v. Emory University*, 85 F. Supp. 2d 1353, 1354 (N.D. Ga. 2000). Where a statutory or common law cause of action is already provided, no "bootstrap[ing]" of negligence per se on top of that cause of action is permitted. *See Fanelli v. BMC Software, Inc.*, 2013 WL 12190241, at *13 n.4 (N.D. Ga. July 29, 2013). Here, Georgia's "Baby FTC Act," the Fair Business Practices Act (FBPA), provides a cause of action for "unfair . . . practices  in the conduct of consumer transactions," O.C.G.A. § 10-1-393(a), that is intended to be "interpreted and construed consistently with . . . Section 5(a)(1) [of FTC Act]," O.C.G.A. § 10-1-391(b). Indeed, Plaintiffs expressly claim that violations of the FTC Act constitute a violation of the FBPA.[33] The existence of the FBPA therefore bars Plaintiffs from basing a negligence per se claim on Section 5.[34]

---

[33] *Compare* Compl. ¶ 178 (alleging "violation of Section 5 of the FTC Act constitutes negligence *per se*"), *with* ¶ 205 (alleging violation of the FTC Act constitutes a violation of the FBPA).

[34] This conclusion only makes sense, because if a negligence per se claim based on Section 5 were permitted, the Georgia Legislature's demand requirements and prohibition on representative actions in the FBPA context could be evaded by a Section 5-based negligence per se claim and would effectively be rendered a nullity. O.C.G.A. § 10-1-399(b) (pre-suit demand requirement); O.C.G.A. § 10-1-399(a) (no representative actions); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1289

2.    *Section 5 Cannot Sustain A Claim For Negligence Per Se.*

In any event, Georgia limits negligence per se only to statutes that "provide for certain duties or the performance of or refraining from any specific acts." *Jenkins*, 744 S.E.2d at 688 (Gramm-Leach-Bliley Act expresses "goal" that companies respect customer privacy but proscribes no "specific acts" and thus cannot support a negligence per se claim).[35]  Although Section 5 generally proscribes "unfair" trade practices, it does *not* enumerate required or prohibited "specific acts," as necessary to satisfy *Jenkins*.  Courts applying Georgia law have thus allowed FTC Act-based negligence per se claims to proceed *only* when premised on violation of a specific rule provided for in an FTC Act *regulation* (FTC Franchise Rule, 16 C.F.R. § 436.1 *et seq.*) that "supplie[d] a clear legal duty requiring specific actions"—not when premised on Section 5 alone.  *Bans Pasta, LLC v. Mirko Franchising, LLC*, No. 13-cv-00360, 2014 WL 637762, at *12-13 (W.D. Va. Feb. 12, 2014) (allowing claim under Franchise Rule's specific notice requirements, and noting absence of authority allowing such claims premised on the FTC Act itself);

(N.D. Ga. 2008) (declining to invalidate class-action waiver provision given FBPA's prohibition on consumer class actions).

[35] *See also Bellsouth Telecom. LLC v. Cobb Cnty.*, A17A0265, 2017 WL 2590853, at *9 (Ga. Ct. App. June 15, 2017) (Dillard, P.J., concurring) (duty must be "imposed *expressly* by the statute at issue with specificity"); *Brock v. Avery*, 110 S.E.2d 122, 126 (Ga. Ct. App. June 24, 1959) (law barring "obstruct[ion of] traffic more than []  necessary" is "too indefinite").

*cf. Legacy Acad., Inc. v. Mamilove, LLC*, 761 S.E.2d 880, 892 n.25 (Ga. Ct. App. 2014), *rev'd in part*, 771 S.E.2d 868 (Ga. 2015), *vacated in part*, 777 S.E.2d 731 (Ga. Ct. App. 2015) (same).   No specific FTC regulation is alleged here. [36] Moreover, Plaintiffs' references to unidentified "FTC publications and orders" (Compl. ¶ 176) and "applicable industry standards" (*id.* ¶ 177) do not provide the requisite specificity, since none "has the force of law." *Norman v. Jones Lang Lasalle Ams., Inc.*, 627 S.E.2d 382, 388 (Ga. Ct. App. 2006).[37]

### 3.   *Plaintiffs Fail To Allege Any Section 5 Violation.*

Plaintiffs also fail to allege facts to support a plausible inference that Arby's acted "unfairly" in violation of Section 5.   "The plain meaning of 'unfair' is 'marked

---

[36] The lone exception applying Georgia law is *Home Depot*, which relied upon *Bans Pasta* and *Legacy Acad., Inc.* to hold that Section 5 can sustain a negligence per se claim in the absence of any specific FTC rule or regulation.   2016 WL 2897520, at *4; *see also First Choice Fed. Credit Union v. Wendy's Co.*, 16-cv-506, 2017 U.S. Dist. LEXIS 20754 at *13 (W.D. Pa. Feb. 13, 2017) (relying on *Home Depot* for same).   As shown above, that is an incorrect reading of those cases and Georgia law.
[37] *See Hubbard v. Dep't of Transp.*, 568 S.E.2d 559, 566-67 (Ga. Ct. App. 2002) (government manual not mandatory); *Walden v. City of Hawkinsville*, No. 03-cv-0398, 2005 WL 2304398, at *4 (M.D. Ga. Sept. 21, 2005) (same as to guidelines); *Willingham*, 2013 WL 440702, at *19 (PCI-DSS does not "create a legal duty"); *De La Flor v. Ritz-Carlton Hotel Co.*, 556 F. App'x 938, 939 (11th Cir. 2014) (same as to "industry standards"); FED. TRADE COMM'N, START WITH SECURITY: LESSONS LEARNED FROM FTC CASES 1 (June 2015) (FTC orders "apply just to those companies";   no   binding   effect   on   others),   *available   at* www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

by injustice, partiality, or deception.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (quoting Merriam-Webster Online Dictionary (2010)); *see In re TJX Co. Retail Sec. Breach Litig.*, 564 F.3d 489, 496-97 (1st Cir. 2009) (unfairness under Massachusetts consumer protection statute, which incorporates "FTC criteria," covers only "egregious conduct" such as "inexcusable and protracted reckless" security failings); *Michaels Stores*, 830 F. Supp. 2d at 526 (same holding under Illinois consumer protection statute); *cf. Home Depot*, 2016 WL 2897520, at *1-2 (Section 5 "unfairness" adequately pled by alleged failure to respond to years of warnings from employees and experts and purported affirmative efforts to prevent improvements, including firing a complaining employee).  Here, Plaintiffs rely on nothing more than the occurrence of the Intrusion itself to plead "unfairness" on Arby's part, Compl. ¶¶ 90, 177, which even the FTC has recognized is insufficient.  M. Olhausen, Acting Chairman, Fed. Trade Comm'n, *Prepared Statement of the Fed. Trade Comm'n on Small Business Cybersecurity* at 3-4 (Mar. 8, 2017) ("[T]he *mere fact that a breach occurred does not mean that a company has violated [Section 5]*"; violation involves "data security failures . . . [that are] multiple and systemic" (emphasis added)).[38]

---

[38] *Available at* https://www.ftc.gov/system/files/documents/public_statements/1174903/p072104_commission_testimony.pdf; *see also Willey v. J.P. Morgan Chase, N.A.*, No. 09-1397, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009) (failure

Moreover, Section 5 is violated only where the requisite egregious conduct results in "*substantial injury* to consumers which is *not reasonably avoidable* by consumers themselves and *not outweighed* by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n) (emphasis added); *FTC v. Windward Mktg.*, No. 96-cv-615F, 1997 WL 33642380 at *10 (N.D. Ga. Sept. 30, 1997). Having failed to allege any tangible injury here, *see supra* Part III.A.2, Plaintiffs have not pled "substantial injury" under Section 5.[39] Nor do they provide facts making plausible their conclusion that any such injury was neither reasonably avoidable nor outweighed by countervailing benefits. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255–56 (3d Cir. 2015) (in data breach case, countervailing benefits analysis requires balancing costs and benefits of having had in place additional security measures in question); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) ("An injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it.").

---

to "describe any insufficiency in [defendant's] security procedures" or how such procedures "failed to comply with the [relevant] [g]uidelines" was fatal).

[39] *See LabMD Inc., v. FTC*, No. 16-16270, 678 F. App'x 816, 820 (11th Cir. 2016) (noting it "may not be reasonable" to find that "intangible harm" meets Section 5's substantiality requirement); *Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090, 1101 (Fla. Dist. Ct. App. 2014) (citing FTC policy statement stating that the "Commission is not concerned with trivial or merely speculative harms").

4.    *No Causation; No Injury; And No Avoiding The ELD.*

Negligence per se claims, like general negligence claims, must be predicated on adequate allegations of causation and damages, *see Cent. Anesthesia Assocs., P.C. v. Worthy*, 333 S.E.2d 829, 831 (Ga. 1985) (to plead a negligence per se claim, "the plaintiffs must still prove a causal connection . . . as well as their damages"), and are subject to the ELD, *see Massih v. Jim Moran & Assocs., Inc.*, 542 F. Supp. 2d 1324, 1331 (M.D. Ga. Mar. 28, 2008) (applying Georgia's economic loss rule to dismiss claim for negligence per se).  The defects in Plaintiffs' negligence claim detailed *supra* in Parts III.B.3 and III.B.4 thus apply with full force to, and separately defeat, their negligence per se claim.

D.    <u>Plaintiffs Fail To State A Claim For Unjust Enrichment.</u>

Unjust enrichment occurs only "when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001).  Here the Complaint itself *confirms* the existence of a contract—to purchase food for a specified price, Compl. ¶¶ 28, 32, 38, 41—which is fatal to their unjust enrichment claim.[40]  Moreover, Plaintiffs cannot ignore that Arby's received no

---

[40] *See Bogard v. Inter-State Assurance Co.*, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) (contract precludes unjust enrichment claim); *see also Sony II*, 96 F. Supp. 2d at 984-

uncompensated benefit from their food purchases at contract prices.  Compl. ¶¶ 29, 32, 36, and 41.[41]  Plaintiffs thus fail to allege an unjust enrichment claim.[42]

E.       Each Plaintiff's Claim For Violation Of Georgia's FBPA Is Unavailing.

1.       *No Plaintiff Has Standing To Assert An FBPA Claim.*

Each Plaintiff may assert only his or her home state's statutory consumer claims. *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010) (Georgia choice of law rules require application of the consumer protection statutes of each of the respective plaintiffs' home states).  This means the FBPA claim in Counts VI and VII must be dismissed as to the Plaintiffs who do not allege Georgia residency (*i.e.*, Rutters, Russell, and the Weisses, Compl. ¶¶ 21, 22, 24).  The remaining Plaintiff, Barnes, alleges Georgia residency but failed to make the required pre-suit demand.  O.C.G.A. § 10-1-399(b) (claimant must deliver a prior

---

85 (no unjust enrichment where data breach claimants did not challenge validity of consumer agreements).

[41] *In re Zappos.com*, 2013 WL 4830497, at *5 ("[N]o unrecompensed benefit conferred" where plaintiffs received shoes they paid for); *see also Irwin v. Jimmy Johns Franchise LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("Irwin paid for food products," not "a side order of data security"); *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124-25 (S.D. Ind. 2011) (plaintiffs received goods they paid for).

[42] *Smith Serv.*, 549 S.E.2d at 486 (no unjust enrichment without uncompensated benefit).  Plaintiffs allege Arby's used their payment card data "for business purposes" (Compl. ¶ 184) but do not identify it or allege Arby's retained any benefit from doing so, nor could they.  *See Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451-52 (D. Mass. 2012) (rejecting unjust enrichment claim and contention that reasonable people would expect compensation for providing their information).

written demand for relief that, *inter alia*, "identif[ies] the claimant" and "the injury suffered").[43]  Plaintiff Barnes is therefore "barred from recovering under the Act" and the FBPA claim should also be dismissed as to him.  *Copelan v. Elite Lending Partners,* No. 13-cv-95, 2013 WL 4786239, at *3 (M.D. Ga. Sept. 6, 2013) (dismissal with prejudice).

### 2.   *Plaintiffs Fail To Identify Any Misrepresentation By Arby's.*

Even if standing existed, Plaintiffs' FBPA claim still fails because they have not pled an FBPA violation with the requisite specificity.  The gravamen of the claim sounds in fraud—that Arby's "[m]isrepresent[ed] that its services and data systems abided by and had sponsorship, approval, or certification by [or] . . . affiliation, connection or association with . . . the [PCI] Security Standards Council" or otherwise complied with the PCI DSS.  Compl. ¶ 204.  Rule 9(b) thus requires the Complaint to state with particularity "when, where, [and] how the alleged

---

[43] *See* Declaration of Alice Chow ¶ 2.  Only Plaintiffs Russell and the Weisses made any prior demand and "identif[ied]" only themselves.  *Id.*, Ex. A (copy of demand). Although purporting to make the demand "on behalf of all others similarly situated," *id.,* representative claims are disallowed.  *See* O.C.G.A. 10-1-399(a); *see also Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) (named plaintiff must have individual standing to assert any claim).  The Court may consider the demand letter on a motion to dismiss.  *See Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) ("[I]f the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it [is central to the plaintiff's claim.]").  The demand letter is central to the Plaintiffs' Counts VI and VII.  *See, e.g.*, Compl. ¶¶ 210, 223.

misrepresentations were made." *See Edwards-Astin v. Medtronic Minimed, Inc.*, 08-cv-103, 2008 WL 11319723 at *4 (N.D. Ga. 2008).

Plaintiffs fail to identify any Arby's statement they believe was deceptive—a defect as fundamental as it is fatal. [44]  Indeed, far from attributing to Arby's statements making *assurances* to consumers, the *only* pre-Intrusion statement referenced in the Complaint is an Arby's *warning* that "security breaches [involving] . . . unauthorized disclosure of confidential information . . . may occur."  Compl. ¶ 94.  Nor do Plaintiffs allege Arby's made a "deceptive" statement as to whether it had been certified as PCI DSS compliant or even allege that Arby's had *not* been so certified.  *See* Compl. ¶¶ 71-80 (alleging conclusory non-compliance, but *not* lack of certification).  Thus, no misrepresentation in violation of the FBPA is pled here. [45]

### 3.  *Plaintiffs Fail To Plead Reliance.*

Even if Plaintiffs adequately asserted a misrepresentation (they do not), *actual reliance* on the purported misrepresentation must be pled as well.  *See Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga. Ct. App. 1995) (dismissing FBPA claim where "essential element" of justifiable reliance not pled).  The Complaint, however, makes

---

[44] *See In re Target*, 64 F. Supp. 3d at 1312 (dismissing data breach claim that failed to identify any misrepresentation); *Michaels Pin Pad*, 830 F. Supp. 2d at 525 (same).
[45] To the extent Plaintiffs' conclusory allegation as to "unfair and deceptive acts and practices" is intended to plead "unfairness" under the FBPA, that claim fails for the same reasons as stated in Part III.C.3 above.

no allegation that Plaintiffs relied on *anything* when they made their purchases.  The absence of reliance independently requires dismissal of the FBPA claim.

4.     *Plaintiffs Fail To Allege Actual Injury.*

Further, the FBPA is available only where claimants suffer "actual damages." *Tiismann v. Linda Martin Homes Corp.*, 610 S.E.2d 68, 70 (Ga. 2005) (requiring "actual injury suffered").  "Actual damages" means injury beyond the mere payment of a purchase price, *see Small v. Savannah Intl. Motors,* 619 S.E.2d 738, 743 (Ga. Ct. App. 2005) (claimed entitlement to "refund of the purchase price and restitution" does not satisfy injury requirement under FBPA), or an alleged inconvenience, *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 139 (Ga. Ct. App. 2001) (lost time insufficient).  Plaintiffs allege *no out-of-pocket loss* here, *see supra* Part III.A.2, which thus independently requires dismissal of their FBPA claim, as other courts have recognized in similar circumstances.[46]

F.     <u>Claims Under Other States' Statutes Are Not Properly Pled.</u>

"Alternatively" to the FBPA count, Plaintiffs purport to assert claims under

---

[46] *See, e.g.*, *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-08617, 2016 WL 5720370, at *6, 8 (N.D. Ill. Oct. 3, 2016) (dismissing state consumer protection claims for lack of damages); *Grigsby v. Valve Corp.*, No. 12-cv-0553, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012) (same); *Amburgy*, 671 F. Supp. 2d at 1057-58 (same); *see also Hammond v. The Bank of New York Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *12 (S.D.N.Y. June 25, 2010) (same, on summary judgment).

the analogous consumer protection statutes of three other states (Connecticut, Tennessee, and Florida). But the Complaint makes no attempt to state the elements of these claims or Plaintiffs' supposed entitlement to relief thereunder. Instead, Plaintiffs lump together, in a single count, a hodgepodge list of alleged Arby's acts and practices ostensibly prohibited by generic "state consumer laws," Compl. ¶¶ 217, 218, and then allege the Connecticut, Florida, and Tennessee statutes are among the laws Arby's supposedly violated, *id.* ¶ 219. Such pleading falls woefully short of the plain statement of entitlement to relief Rule 8 requires. *Torres*, No. 16-cv-210, at *9-11 (rejecting claims "lumping all six [state consumer] causes of action into one count" as deficient under Rule 8); *see also Brazil v. Janssen Research & Dev. LLC*, No. 15-cv-0204, 2016 WL 4844442, at *8 (N.D. Ga. Mar. 24, 2016) (dismissing "shotgun complaint" that "lumps multiple claims together in one count").

Even if Plaintiffs had attempted to make out claims under the Connecticut, Tennessee, and Florida consumer protection statutes, these would likewise fail since each, like the FBPA, requires allegations of: (a) a misrepresentation pled with

particularity[47] (or "unfairness" as construed under Section 5[48]); (b) actual reliance

on such misrepresentation (or, for the Florida statute, that an objectively reasonable

consumer would have behaved differently),[49] and (c) actual injury as a result,[50] none

---

[47] *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 08-CV-1958, 2010 WL 1882316, at *9 (D. Conn. May 10, 2010) (requiring CUTPA claim based on fraud to be pled with particularity); *Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) (TCPA requires "specific fraudulent or deceptive acts rather than general allegations"); *Blair v. Wachovia Mortg. Corp.*, No. 11-cv-00566, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (FUDTPA claims sounding in fraud must be plead with particularity). Omissions-based theories, moreover, add further barriers Plaintiffs cannot surmount. *See Kenney v. Healey Ford-Lincoln-Mercury, Inc.*, 730 A.2d 115, 117 (Conn. App. Ct. 1999) (CUTPA-based omissions claim fails in absence of duty to disclose); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (FDUTPA-based omissions claim fails in absence of duty to disclose). *Cirzoveto v. AIG Annuity Ins.* Co., 625 F. Supp. 2d 623, 632 (W.D. Tenn. 2009) (TCPA-based omissions claim fails in absence of duty to disclose). Claims amounting to negligence, like Plaintiffs', are insufficient under the TCPA. *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *9 (W.D. Tenn. July 2, 2013) (dismissing TCPA claim, stating "[a]llegations that a party acted negligently do not satisfy the particularity requirement of Rule 9").

[48] Conn. Gen. Stat. § 42-110b(b); Tenn. Code. § 47-18-115; *Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090, 1101 (Fla. Dist. Ct. App. 2014).

[49] *Fitzpatrick v. Gen. Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011).

[50] *See, e.g.*, *McLoughlin v. People's United Bank, Inc.*, No. CIVA 308CV-00944 VLB, 2009 WL 2843269 (D. Conn. Aug. 31, 2009) (dismissing CUTPA claim for failure to allege "ascertainable loss"; increased risk of identity theft insufficient); *Sony II*, 996 F. Supp. 2d at 993-94 (dismissing data breach claim under FDUTPA for failure to allege "actual damages"); *Pagliara v. Johnston Barton Proctor and Rose, LLP*, 708 F.3d 813, 820 (6th Cir. 2013) (affirming dismissal of TCPA claim for failure to allege "ascertainable loss of money or property").

of which is sufficiently pled here.[51]  *See supra* Parts III.E.2-4.[52]

G.   Plaintiffs Fail To State A Claim For Declaratory Judgment.

Plaintiffs' failure to plead any actionable claim dooms their request for declaratory judgment but, more importantly, the absence of any facts regarding Arby's current information security posture precludes declaratory judgment.  *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (declaratory judgment requires "substantial controversy" of "sufficient immediacy and reality"); *State St. Bank & Trust Co. v. Canal Ins. Co.*, No. 14-cv-2080, 2014 WL 12360078, at *6 (N.D. Ga. Dec. 1, 2014) (dismissing declaratory relief claim as duplicative).[53]

IV.   **CONCLUSION**

Arby's respectfully requests that the Court dismiss the Complaint.

---

[51] Moreover, the TCPA, like the FBPA, bars class actions.  *See* Tenn. Code § 47-18-109(g); *Walker v. Sunrise Pontiac-GMC Truck*, 249 S.W. 3d 301, 310-11 (Tenn. 2008).

[52] At a minimum, if Count VII (which asserts the claims under the consumer protection statutes of Connecticut, Florida, and Tennessee) is intended to be asserted by *all* Plaintiffs as to each statute, Count VII should be dismissed as to each Plaintiff with respect to such Plaintiff's non-home state statute.  *See supra* Part III.E.1.

[53] Plaintiffs' cause of action for injunctive relief under the FBPA fails for the same reasons.  O.C.G.A. § 10-1-399 ("Any person who *suffers injury or damages as a result of* . . . consumer acts or practices *in violation of this part* . . . may bring an action individually . . . to seek equitable injunctive relief" (emphasis added)).

Respectfully submitted this 24th day of August 2017.

*/s/ Robert B. Remar*
Robert B. Remar
Ga. Bar No. 600575
Joshua P. Gunnemann
Ga. Bar No. 152250
Cameron B. Roberts
Ga. Bar No. 599839

**ROGERS & HARDIN LLP**
2700 International Tower
229 Peachtree Street NE
Atlanta, Georgia 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
rremar@rh-law.com
jgunnemann@rh-law.com
croberts@rh-law.com

Douglas H. Meal (admitted *pro hac vice*)
Mark P. Szpak (admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
douglas.meal@ropesgray.com
mark.szpak@ropesgray.com

*Attorneys for Defendant Arby's Restaurant Group, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the **DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CONSUMER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

Dated: August 24, 2017　　　　　　　Respectfully submitted,

<u>/s/ Robert B. Remar</u>
Robert B. Remar
Ga. Bar No. 600575

**ROGERS & HARDIN LLP**
2700 International Tower
229 Peachtree Street NE
Atlanta, Georgia 30303
Telephone:  (404) 522-4700
Facsimile:  (404) 525-2224
rremar@rh-law.com

*Attorney for Defendant Arby's*
*Restaurant Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2017, I caused the within and foregoing document, **DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CONSUMER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**, to be served via the Court's CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

Dated: August 24, 2017          Respectfully submitted,

*/s/ Robert B. Remar*
Robert B. Remar
Ga. Bar No. 600575

**ROGERS & HARDIN LLP**
2700 International Tower
229 Peachtree Street NE
Atlanta, Georgia 30303
Telephone:  (404) 522-4700
Facsimile:  (404) 525-2224
rremar@rh-law.com

*Attorney for Defendant Arby's*
*Restaurant Group, Inc.*