IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE ARBY'S RESTAURANT | : | CIVIL ACTION NO. |
| GROUP INC. LITIGATION | : | 1:17-cv-0514-AT |
| | : | 1:17-cv-1035-AT |
| | : | 1:17-mi-55555-AT |

## ORDER

This matter is before the Court on Defendant's Motions to Dismiss [Docs. 52, 57, 178, 217][1]. Plaintiffs in this case – a group of Financial Institutions and a group of Consumers (collectively, "Plaintiffs") – filed lawsuits after Defendant Arby's Restaurant Group disclosed that third party hackers had breached Arby's credit card point of sale machines and retrieved the personal information of hundreds of thousands of consumers. Plaintiffs allege that Arby's failed to take reasonable care to protect credit cardholder information and to timely notify the cardholders of the data breach. The Court's rulings are set forth below.

## I.   STANDARD FOR MOTION TO DISMISS

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-556 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds

---

[1] The Motion to Dismiss the Financial Institution Plaintiffs' Consolidated Amended Complaint in 1:17-cv-0514-AT is filed at Doc. 57 and again in 1:17-mi-55555-AT at Doc. 178. The Motion to Dismiss the Consumer Plaintiffs' Consolidated Amended Complaint in 1:17-cv-1035-AT is filed at Doc. 52 and again in 1:17-mi-55555-AT at Doc. 217.

upon which it rests.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a).  In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim.  *Id.* at 556.  A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely."  *Id.*

## II.   BACKGROUND[2]

Between October 2016 and January 2017, third-parties hacked into Arby's point of sale machines.  (Consumer Compl., Doc. 205 ¶ 3; Fin. Inst. Compl., Doc.

---

[2] The factual background the Court describes below is based on the allegations in the Financial Institution Plaintiffs' Consolidated Amended Complaint and the Consumer Plaintiffs' Consolidated Amended Complaint, which contain substantially similar allegations.  The Court construes in Plaintiffs' favor consistent with the standard discussed above.

165 ¶ 6.)  The hackers used malicious software (malware) to access the point of sale machines, obtaining sensitive credit and debit card numbers from Arby's customers in the process.  (Consumer Compl. ¶ 3; Fin. Inst. Compl. ¶¶ 5-6.) Plaintiffs allege "industry partners in mid-January" either sent or received notification of the breach.  (Consumer Compl. ¶ 103; Fin. Inst. Compl. ¶ 56.) Arby's disclosed the breach in two public announcements in February and April 2017.  (Consumer Compl. ¶¶ 7-8; Fin. Inst. Compl. ¶¶ 6-7.)  The restaurant chain said that "over 950 restaurants were infected with malware for an average of 73 days."  (Consumer Compl. ¶ 8; Fin. Inst. Compl. ¶ 7.)  Plaintiffs allege that the hackers stole "data on millions of payment cards" during the breach.  (Consumer Compl. ¶ 104.)

Plaintiffs allege that "[t]he susceptibility of [point of sale] systems to malware is well-known throughout the restaurant industry, as well as the retail industry."  (Consumer Compl. ¶ 10; Fin. Inst. Compl. ¶ 2.)  They also allege that Arby's should have been aware of the threat of a large data breach because of high-profile breaches over the years, including one at Wendy's International, whose parent company has an ownership interest in Arby's.  (Consumer Compl. ¶ 11; Fin. Inst. Compl. ¶ 1.)  Plaintiffs claim that even though "a significant portion of sales at [Arby's]  are made using credit or debit cards," Arby's "failed to make meaningful improvements to the security of its [point of sale] system and administrative network."  (Consumer Compl. ¶¶ 54-55; Fin. Inst. Compl. ¶¶ 38, 49-50.)  Plaintiffs allege that Arby's did not have "point to point encryption," did

not comply with the Payment Card Industry Data Security Standards (PCI-DSS), did not meet the deadline to implement the EMV chip card reader, and did not comply with Financial Trade Commission (FTC) security publications. (Consumer Compl. ¶¶ 67, 70, 79, 80; Fin. Inst. Compl. ¶¶ 80, 84, 86, 92.)

As a result of the breach, the Consumer Plaintiffs allege the following injuries: unauthorized charges on their debit and credit cards; theft of personal and financial information; increased costs to prevent identify theft and unauthorized use of their accounts; damages from inability to use or have access to their accounts; loss of productivity and enjoyment while taking time to address the breach; and money paid for products at Arby's they would not have bought if they knew about the security systems.  (Consumer Compl. ¶14.)  The Financial Institution Plaintiffs allege that they were forced to cancel compromised cards; issue refunds due to fraudulent transactions after the breach; stop and block unauthorized transactions on the accounts; and increase fraud monitoring.  (Fin. Inst. Compl. ¶ 11.)

Starting on February 10, 2017, Plaintiffs began filing lawsuits against Arby's.  The lawsuits brought by the various Financial Institutions were consolidated and reassigned to the undersigned on April 3, 2017.  (Doc. 68.)  The Financial Institution Plaintiffs filed a Consolidated Amended Complaint on May 19, 2017, and brought three claims against Arby's: negligence, negligence per se, and declaratory relief.  (Doc. 165.)  Arby's filed a motion to dismiss all claims brought by the Financial Institution Plaintiffs on June 19, 2017.  (Doc. 178.)

The lawsuits brought by Consumers were likewise consolidated and reassigned to this Court on May 17, 2017.  (Doc. 152.)  The Consumer Plaintiffs filed a Consolidated Amended Complaint on July 24, 2017 and brought seven claims against Arby's: breach of implied-in-fact contract; negligence; negligence per se; unjust enrichment; declaratory judgment; violation of Georgia Fair Business Practices Act; and violation of state consumer laws.  (Doc. 205.)  Arby's filed a motion to dismiss all claims brought by the Consumer Plaintiffs on August 24, 2017.  (Doc. 217.)

## III.  ANALYSIS

### A. Negligence & Negligence Per Se

This Court first considers Plaintiffs' negligence claim.  To state a cause of action for negligence in Georgia,[3] Plaintiffs must allege (1) a legal duty to conform to a standard of conduct recognized by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.  *City of Douglasville v. Queen*, 514 S.E.2d 195, 197 (Ga. 1999); *Lau's Corp. v. Haskins*, 405 S.E.2d 474, 476 (Ga. 1991), *abrogated on other grounds by Robinson v. Kroger Co.*, 493 S.E.2d 403 (Ga. 1997); *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982) (citation omitted). The duty can arise either by statute or be imposed by a

---

[3] Arby's has accepted as true that Georgia Law applies to Plaintiffs' negligence claim.  (Mot. Dismiss Fin. Inst. Compl. at 5.)

common law principle recognized by caselaw.  *Rasnick v. Krishna Hospital, Inc.*, 713 S.E.2d 835, 837 (Ga. 2011).

### 1.  *Common Law Duty*

The Financial Institution Plaintiffs allege that Arby's "owed an independent duty . . . to take reasonable care in managing and protecting cardholder information, and to timely notify Plaintiffs in the case of a data breach." (Fin. Inst. Compl. ¶ 101.)  Consumer Plaintiffs similarly allege that Arby's "owed a duty . . . to safeguard [consumer financial information] and to use commercially reasonable methods to do so." (Consumers Compl. ¶ 154.)  All Plaintiffs claim that it was foreseeable under the circumstances alleged "that [Arby's] data systems and the cardholder data those data systems processed would be targeted by hackers." (Fin. Inst. Compl. ¶ 102; Consumers Compl. ¶ 155.)

Arby's seeks dismissal of Plaintiffs' negligence claim on the basis that it owes no legal duty to either the Financial Institution Plaintiffs or the Consumer Plaintiffs.  Arby's makes two arguments in support of its position.  First, Arby's argues that Georgia law does not recognize a duty to safeguard personal data.  Second, Arby's argues that it does not owe a duty to prevent against a third-party criminal attack.

"The existence of a legal duty is a question of law for the court."  *Rasnick*, 713 S.E.2d at 837; *Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110 (11th Cir. 1992).  Georgia courts recognize a "general duty one owes to all the

world not to subject them to an unreasonable risk of harm." *Wessner*, 296 S.E.2d at 695; *Lowry v. Cochran*, 699 S.E.2d 325, 331 (Ga. Ct. App. 2010); *see also* Ga. Law of Torts § 3:1 (2016) ("[E]very person is required to conform to the appropriate standard of conduct raised by the law for the protection of others against unreasonable risks of harm."). This general duty "owe[d] to all the world" is "typically discharged by the observation of 'that degree of care which is exercised by ordinarily prudent persons under the same or similar conditions.'" Ga. Law of Torts § 3:1 at 96 (citing O.C.G.A. § 51-1-2); *Queen*, 514 S.E.2d at 197. Georgia law, however, does not impose an absolute duty to avoid injuring others. *Id.*; *T.J. Morris Co. v. Dykes*, 398 S.E.2d 403, 406 (Ga. Ct. App. 1990).

Generally, there is no duty to prevent the unforeseeable "intervening criminal act of a third person." *Wessner*, 296 S.E.2d at 696 (quoting *Atlantic Coast Line R.R. Co. v. Godard*, 86 S.E.2d 311, 315 (Ga. 1955)). But a person may still have a duty to protect against a criminal act of a third person if it is alleged that he had "reason to anticipate" the criminal act. *Id.; see also Wade v. Findlay Mgmt., Inc.,* 560 S.E.2d 283, 285 (Ga. Ct. App. 2002) ("Simply put, without foreseeability that a criminal act will occur, no duty on the part of the proprietor to exercise ordinary care to prevent that act arises.") (quoting *Days Inns of Am. v. Matt,* 454 S.E.2d 507 (Ga. 1995)). Thus, the concept of "foreseeability" in Georgia plays a role in defining the existence of a legal duty:

> Negligence consists of exposing someone to whom a duty of care is owed to a foreseeable, unreasonable probability of harm. Foresight

> requires the ability to anticipate a risk of harm from the conduct in some form. Negligence is predicated on what should be anticipated…

*Amos v. City of Butler*, 529 S.E.2d 420, 422 (Ga. Ct. App. 2000); *Corbitt v. Walgreen Co.*, 7:14-CV-17 MTT, 2015 WL 1726011, at *3 (M.D. Ga. Apr. 15, 2015) (citing *Amos*, 529 S.E.2d at 422). "The legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from [negligent] conduct." *Amos*, 529 S.E.2d at 422.

Georgia courts have analyzed the issue of foreseeability and liability for third party criminal acts in the peculiarly similar context of premises liability. In *Lau's Corp. v. Haskins*, the Georgia Supreme Court addressed whether a proprietor had a "duty" to exercise ordinary care in protecting his or her customers against the risk posed by criminal activity, holding "[i]f the proprietor has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.'" 405 S.E.2d at 476 ("The proprietor is not the insurer of the invitee's safety, but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge.") (citations omitted); *Robinson v. Kroger Co.*, 493 S.E.2d 403, 409 (Ga. 1997) ("By encouraging others to enter the premises to further the owner/occupier's purpose, the owner/occupier makes an implied representation that reasonable care has been exercised to make the place safe for those who come for that purpose, and that representation is the basis of the liability of the owner/occupier for an invitee's injuries. . . ."); *see also Sturbridge*

*Partners, Ltd. v. Walker*, 482 S.E.2d 339, 340 (Ga. 1997) (holding that a landlord has duty to exercise ordinary care to protect its tenants against foreseeable third party criminal acts).

In determining whether a third party criminal act is foreseeable, Georgia courts have held that "the incident causing the injury must be substantially similar in type to the previous criminal activities . . . so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity." *Sturbridge Partners, Ltd.*, 482 S.E.2d at 341; *Matt v. Days Inns of Am.*, 443 S.E.2d 290 (Ga. Ct. App. 1994), *aff'd, Days Inns of Am. v. Matt*, 454 S.E.2d 507 (Ga. 1995). The question "of reasonable foreseeability" of a criminal attack is generally "for a jury's determination rather than summary adjudication by the courts." *Sturbridge Partners, Ltd.*, 482 S.E.2d at 341 (quoting *Lay v. Munford*, 219 S.E.2d 416 (Ga. 1975)).

While there are no Georgia appellate cases that have considered negligence claims in a large data breach involving a third party criminal hacker, a few federal district courts applying Georgia law have confronted the issue.[4]  In 2016, a court

---

[4] This Court recognizes that courts across the districts are divided over whether similar companies like Arby's owe a legal duty to similar consumers or financial institutions. *Compare Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 193 (M.D. Pa. 2005), *aff'd*, 533 F.3d 162 (3d Cir. 2008) (finding defendant restaurant had a legal duty to safeguard customer information) *with Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, No. 15-CV-01125-MJR, 2017 WL 1551330, at *3 (S.D. Ill. May 1, 2017), *appeal pending* (declining to follow *Home Depot* and granting defendant's motion to dismiss because the defendant did not have a legal duty to safeguard customer payment information).  These decisions are obviously not binding and their persuasive value may be limited given their application of the common and statutory law of other states.

in this district denied Home Depot's motion to dismiss a claim of negligence brought by a group of financial institutions following the discovery of a massive data breach of Home Depot customers' personal financial information. *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *1 (N.D. Ga. May 18, 2016) (Thrash, J.). The court found that Home Depot had a duty to safeguard customer information because the plaintiffs had alleged that Home Depot "knew about a substantial data security risk dating back to 2008 but failed to implement reasonable security measures to combat it." *Id.* at *3. This duty arose from the general duty owed "to all the world not to subject them to an unreasonable risk of harm," recognized in *Wessner,* as a result of Home Depot's alleged failure to heed warnings that its data security was inadequate. *Id.* In *Home Depot*, the court declined to adopt the same argument that Arby's presses here, that there was no legal duty to safeguard customer information, because:

> To hold that no such duty existed would allow retailers to use outdated security measures and turn a blind eye to the ever-increasing risk of cyber attacks, leaving consumers with no recourse to recover damages even though the retailer was in a superior position to safeguard the public from such a risk.

*Id.* at *4.

Here, Plaintiffs allege that Arby's knew about potential issues with its point of sale systems and failed to implement reasonable security measures. Plaintiffs allege that Arby's was aware or should have been aware of a threat of a large data breach, including that Arby's: (a) was aware of the susceptibility of its point of

sale systems to hacking, (b) knew about other highly publicized data breaches that had occurred in recent years, and (c) was aware that Wendy's[5], its parent company and former corporate affiliate, suffered a significant breach of its point of sale system, a similar system used by Arby's   (Fin. Inst. Compl. ¶¶ 3, 5, 8, 29-30, 34-41, 42-44; Consumer Compl. ¶¶ 9-11.)

Under Georgia law and the standard articulated in *Home Depot*, allegations that a company knew of a foreseeable risk to its data security systems are sufficient to establish the existence of a plausible legal duty and survive a motion to dismiss.[6]  *See id.* ("A retailer's actions and inactions, such as disabling security features and ignoring warning signs of a data breach, are sufficient to show that the retailer caused foreseeable harm to a plaintiff and therefore owed a duty in tort.")*; In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1173 (D. Minn. 2014) (applying Georgia law and denying a motion to dismiss a claim of negligence in a data breach case "absent authority refusing to recognize . . . a duty to safeguard information"); *see also First Choice Fed. Credit Union v. Wendy's Co.*, Civil Action No. 16-506, 2017 U.S. Dist. LEXIS 20754, at *11 (W.D. Pa. 2017) (finding financial institution plaintiffs' negligence claim plausible under Ohio law based on allegations that Wendy's knew the risks of a data breach of

---

[5] "Arby's Restaurant Group" is owned by "Wendy's Company."  (Consumer Compl. ¶ 25.)
[6] Arby's argues that the plaintiffs cannot rely on the "special relationship" exception to negligence liability.  Although the Financial Institution Plaintiffs alleged the existence of a special relationship in their Complaint, they do not rely on the special relationship exception in response to Arby's Motion to Dismiss.  Rather, Plaintiffs assert Arby's is liable for the foreseeable outcome of its alleged negligent acts independent of its relationship with Plaintiffs.  Having reviewed the relevant cases, the Court agrees with Plaintiffs and need not consider the special relationship exception.

their point of sale systems and failed to take reasonable steps to guard against those risks); *Badish v. RBS Worldpay*, Civil Action No. 1:09-cv-0033-CAP, 2010 U.S. Dist. LEXIS 145301 (Doc. 59, Feb. 5, 2010) (Pannell, J.) (applying Pennsylvania common law and denying motion to dismiss negligence claim in data breach class action following hacking by third party). For these reasons, the general rule that a defendant does not have a duty to protect against the intervening criminal acts of a third party does not apply and Arby's argument to the contrary fails.

Arby's argues that *Home Depot* does not accurately reflect Georgia law, relying principally on the recent Georgia Court of Appeals case, *McConnell v. Dep't of Labor*.[7] The court in *McConnell* found that a Georgia state agency did not have a statutory duty to safeguard the social security numbers, phone numbers, and email address of individuals who applied for unemployment benefits. 787 S.E.2d 794, 800 (Ga. Ct. App. 2016), *vacated sub nom. McConnell v. Georgia Dep't of Labor*, 805 S.E.2d 79 (Ga. Sept. 13, 2017). In *McConnell*, an agency employee mistakenly emailed the sensitive information of over 4,000 individuals to more than 1,000 recipients. *Id.* at 796. The plaintiff, Thomas

---

[7] Arby's also cites *Silverpop Sys. Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849 (11th Cir. 2016) and *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) in support of its argument. *Silverpop* is not applicable to the issue of duty because the court there *assumed* that the defendants had a duty when considering evidence on a motion for summary judgment. The court in *Silverpop* ultimately found that the duty at issue, to protect against the disclosure of proprietary and confidential information, arose under the parties' contract as opposed to any independent duty under the law, thus precluding any relief under a negligence theory. 641 App'x at 853. *Willingham,* a report and recommendation that was ultimately not ruled upon or adopted by the district judge, holds no weight. The recommendation is also unpersuasive because, unlike in this case, "there [was] no direct relationship between the plaintiff and the defendant" in *Willingham*. 2013 WL 440702, at *18.

McConnell, filed a class action against the state Department of Labor asserting claims for negligence in disclosing "personal information" as defined under Georgia law, invasion of privacy (public disclosure of private facts), and breach of fiduciary duty.  Mr. McConnell contended that a duty to safeguard and protect his personal information existed under O.C.G.A. §§ 10-1-393.8 (GPIPA – Georgia Personal Identity Protection Act) and O.C.G.A. § 10–1–393.8 (FBPA – the Fair Business Practices Act).  The Georgia Court of Appeals found that "the trial court correctly concluded that Mr. McConnell's complaint is premised on a duty of care to safeguard personal information that has no source in Georgia statutory law or caselaw and that his complaint therefore failed to state a claim of negligence."  *Id.* at 799.

But *McConnell* is unpersuasive for three reasons.  First, the Georgia Supreme Court vacated the Court of Appeals opinion on September 13, 2017, finding that the Court of Appeals could not decide that the complaint failed to state a claim without first considering whether the doctrine of sovereign immunity barred the claims.  *McConnell v. Georgia Dep't of Labor*, 805 S.E.2d 79, 80 (Ga. Sept. 13, 2017).  Under Eleventh Circuit authority, this Court is not bound by any vacated decision, even if it was vacated on other grounds.  *See Friends of Everglades v. S. Florida Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("Parts of decisions that are vacated and have not been reinstated

'have no legal effect whatever.  They are void.'") (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc)).[8]

Second, even if the *McConnell* decision had any current binding effect, *Home Depot* is not expressly inconsistent with *McConnell* because the facts are starkly different.  As the court in *McConnell* recognized, *Home Depot* found a duty to protect the personal information of the defendant retailer's customers "in the context of allegations that the defendant failed to implement reasonable security measures to combat a substantial data security risk of which it had received multiple warnings dating back several years and even took affirmative steps to stop its employees from fixing known security deficiencies."  *McConnell*, 787 S.E.2d at 799 n.4. There were, however, no similar allegations of known security deficiencies in *McConnell*.  Nor were there any allegations that the action of the agency employee in "inadvertently" emailing the spreadsheet containing the information was foreseeable.  *Id.* at 796 n.1

Finally, the Georgia Court of Appeals in *McConnell* did not overrule the Georgia Supreme Court's recognition in *Bradley Ctr. Inc. v. Wessner* of a general duty of care.  The question posed in *Wessner* was whether a physician can owe a legal duty of care to an injured party who was not his patient.   The Supreme

---

[8] Arby's cites to *Holloway v. McElroy*, 632 F.2d 605, 634 (5th Cir. 1980) for the proposition that "[i]n the absence of explicitly contradictory precedent from the Georgia supreme court, the federal courts are bound" by a vacated Georgia Court of Appeals decision.  However, that case is factually different from the case in front of the Court now.  *Holloway* was decided years after the court of appeals decision.  In the intervening years, the Fifth Circuit believed that the Georgia Supreme Court had since adopted, in another case, the logic of the vacated court of appeals opinion without explicitly saying as much.  Other significant Supreme Court case developments confirmed the substantive ruling of the vacated decision.  In this case, there have only been a few months since the vacated decision, without any subsequent appellate history.

Court held that "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient." *Wessner,* 296 S.E.2d at 695-96.

*McConnell*'s characterization of the holding in *Wessner* as being narrowly limited to the precise facts of the case is dicta. *McConnell*, 787 S.E.2d at 797 n.4. As the Supreme Court in *Wessner* expressly noted, "[b]y finding appellant liable we have not created a 'new tort,' rather we have applied our traditional tort principles of negligence to the facts of this case." *Wessner,* 296 S.E.2d at 696. Thus, any implication in *McConnell* that the general duty of care owed to others does not apply outside the context of the specific facts in *Wessner* is misplaced. As the Supreme Court in *Wessner* recognized, "there are cases such as this, however, in which the intervening criminal acts may be foreseeable." *Wessner,* 296 S.E.2d at 696; *see, e.g., Underwood v. Select Tire, Inc.*, 676 S.E.2d 262, 267-68 (Ga. Ct. App. 2009) (relying on "the general duty one owes to all the world not to subject them to an unreasonable risk of harm" in reversing trial court's holding on summary judgment that seller and installer of defective tire owed no duty to customer and third party injured in motor vehicle accident resulting from tire blowout); *Lowry v. Cochran*, 699 S.E.2d 325, 331 (Ga. Ct. App. 2010) (applying general duty of care to negligence claim and finding that festival organizers could

15

be held liable for injuries sustained by spectator to skydiving demonstration based on evidence that the defendants breached their duty not to subject spectator to an unreasonable risk of harm by failing to employ adequate safety precautions where it was reasonably foreseeable that a spectator remaining could be injured).

Accordingly, the Court rejects Arby's argument that it owed no common law duty to Plaintiffs to protect their personal credit card data from third party hacking.

### 2. Statutory Duty

Arby's also seeks dismissal of Plaintiffs' negligence per se claim based on Arby's alleged violations of Section 5 of the Federal Trade Commission Act ("FTCA"). Plaintiffs allege that Arby's "violated Section 5 of the FTCA by failing to use reasonable measures to protect cardholder data and by not complying with applicable industry standards." (Fin. Inst. Compl. at ¶111; Consumer Compl. at ¶177.) Section 5 prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45.

"It is well-settled that Georgia law allows the adoption of a statute or regulation as a standard of conduct so that its violation becomes negligence per se." *Pulte Home v. Simerly*, 746 S.E.2d 173, 179 (Ga. Ct. App. 2013). And in Georgia, privately established guidelines and standards are admissible as illustrative of negligence. *Luckie v. Piggly–Wiggly S. Inc.*, 325 S.E.2d 844, 845 (Ga. Ct. App. 1984) (citing cases and stating that "[p]rivately established 'rules

are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself"); *Dupree v. Keller Indus., Inc.*, 404 S.E.2d 291, 295 (Ga. Ct. App. 1991) ("ANSI standards, as privately established guidelines, are admissible as illustrative of negligence."); *Owens v. Stifel, Nicolaus & Co., Inc.*, 7:12-CV-144 HL, 2014 WL 2769044, at *7 (M.D. Ga. June 18, 2014), *aff'd in part, rev'd in part on other grounds, and remanded*, 650 Fed. App'x 764 (11th Cir. 2016) ("[E]ven though the FINRA rules do not provide a private cause of action, failure to comply with the rules may provide evidence of a breach of the duty of care, 'which includes a duty to act in accordance with the standard of care used by other professionals in the community.'").  A negligence per se claim must contain an alleged "breach of a legal duty with some ascertainable standard of conduct." *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013).  Courts evaluating a claim of negligence per se further "examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against."  *Potts v. Fid. Fruit & Produce Co.*, 301 S.E.2d 903, 904 (Ga. Ct. App. 1983).

Arby's offers several arguments for why Plaintiffs' negligence per se claim is subject to dismissal.  First, Arby's argues that Section 5 cannot form the basis of a negligence per se claim because Section 5 only generally proscribes "unfair" or "deceptive" trade practices and does not enumerate any required or prohibited acts.  This argument was rejected without much fanfare by other district courts.

*See Home Depot,* 2016 WL 2897520, at *4 (noting that a few courts have suggested that the FTCA can serve as the basis of a negligence per se claims); *Wendy's Co.*, 2017 U.S. Dist. Lexis 20754, at *13.  And two circuit courts have expressly held that "unfair" or "deceptive" trade practices under Section 5 of the FTCA fairly encompass the failure to provide adequate data security measures to protect consumer financial data from threat of hacking.  *See Fed. Trade Comm'n. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 247 (3d Cir. 2015) (affirming district court's denial of motion to dismiss claim brought by FTC against companies for alleged deficient cybersecurity that failed to protect customer data against hackers as unfair and deceptive practice in violation of § 5 of the FTCA); *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) (denying motion to dismiss claim brought under Massachusetts statute prohibiting "unfair" or "deceptive" trade practices consistent with FTC's interpretation that defendant's lack of adequate security measures was unfair under the Federal Trade Commission Act).

Second, Arby's asserts that the Plaintiffs fail to allege how Arby's violated the FTCA.  However, Plaintiffs specifically allege that: (1) Section 5 of the FTCA prohibits "'unfair ... practices in or affecting commerce' including, as interpreted and enforced by the FTC, the unfair act or practice by retailers, restaurants and other businesses such as [Arby's] of failing to use reasonable measures to protect cardholder data," (2) Arby's "violated Section 5 of the FTCA by failing to use reasonable measures to protect cardholder data and by not complying with

applicable industry standards, including [Payment Card Industry Data Security Standards]," (3) the FTC has pursued over fifty enforcement actions against businesses as a result of their failure to employ reasonable data security measures, and (4) orders from these actions provide further clarification of the measures businesses must take to meet their data security obligations. (Fin. Inst. Compl. ¶¶ 110, 111, 114; Consumer Compl. ¶¶ 89, 176-77.)  These allegations are sufficient to plead a violation of Section 5.  *See Home Depot,* 2016 WL 2897520, at *4 *(*finding similar allegations adequate to plead cause of action in negligence for violation of § 5 of the FTCA).[9]

Arby's next contends that the Financial Institution Plaintiffs are not within the class of persons that the law intended to protect because the FTCA only applies "to consumers."   15 U.S.C. § 45(n).   However, the Financial Institution Plaintiffs allege that they "bear primary responsibility for reimbursing consumers for fraud losses" and that "many class members are credit unions, which are organized as cooperatives whose members are consumers."  (Fin. Inst. Compl. at ¶113.)  The same argument raised here by Arby's was rejected by the courts in *Home Depot* and *Wendy's.  Home Depot,* 2016 WL 2897520, at *4 (finding class of financial institutions and credit unions to be "within the class of

---

[9] As discussed in Sections III(c)  and (d) below, both Complaints' allegations identify a variety of specific ways in which Arby's failed to take reasonable measures to assure and address data security. These allegations plausibly suggest why Arby's – rather than the Plaintiffs here – was the party truly positioned to take action to prevent the hacking harm alleged in the lawsuit. Whether Plaintiffs' allegations stand up sufficiently for summary judgment or trial purposes is a completely different question than whether they are adequate for purposes of surviving a motion to dismiss.

persons intended to be protected" by the FTCA and that the harm alleged in having to reimburse customers for the fraud losses and costs associated with reissuance of cards "is the kind the statute meant to protect"); *Wendy's Co.*, 2017 U.S. Dist. Lexis 20754, at *13.  Arby's has offered no authority to suggest that businesses that are themselves consumers or (representative of consumers) are not subject to the protections of the FTCA.[10]   *See Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 180, 465 S.E.2d 670, 671 (1996) ("Of course, if a business, as a consumer, sustains damage, it may bring suit under [the Fair Business Practice Act] OCGA § 10-1-399(a).").

Finally, Arby's argues that the Consumer Plaintiffs' negligence per se claim premised on the FTCA is barred by their simultaneous claim under the Georgia Fair Business Practices Act (FBPA) because the Georgia legislature intended for the FBPA to be interpreted consistently with § 5 of the FTC act.  *See* O.C.G.A. § 10-1-391 ("It is the intent of [the Georgia Legislature] that [the FBPA to] be interpreted and construed consistently with . . . Section 5(a)(1) of the [FTC Act[]").  Arby's argues that the Plaintiffs can only bring a claim of negligence per

---

[10] Arby's provides a selectively truncated quotation from the Eleventh Circuit's decision in *Jeter v. Credit Bureau*, 760 F.2d 1168, 1172 n. 17 (11th Cir. 1985)  to suggest that the sole purpose of the FTCA was to protect unsophisticated consumers. Instead, *Jeter* corrected the district court's failure to consider the broad scope of the FTCA's sweep "to protect unsophisticated consumers, not only 'reasonable consumers' who could otherwise protect themselves in the market place." *Id.*  (Emphasis supplied.) The Act's protection of unsophisticated consumers does not dilute the Act's overall protections of the consumer public from unfair trade practices in short.  At very least, the Financial Institution Plaintiffs' interests here are inextricably tied together with their own customers who are in turn Arby's customers and whose accounts have been hacked.
 Several courts analyzing state consumer protection laws have held both natural persons and corporations "may avail themselves of the protections and remedies afforded by" such laws. *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 499 (D.N.H. 1996) (quoting *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co.*, 148 F.R.D. 25, 48 (D.N.H. 1993)).

se "for the breach of a legal duty where [a cause of action for such breach] does not otherwise exist." (Mem. Supp. Mot. Dismiss Consumer Compl. at 23 (quoting *Cruet v. Emory Univ.*, 85 F. Supp. 2d 1353, 1354 (N.D. Ga. 2000)).

Arby's misconstrues and attempts to stretch the principles discussed in *Cruet.* *Cruet* did not involve a negligence per se claim. Rather, Cruet sought relief for his alleged wrongful termination with Emory as a Senior Research Specialist. Cruet brought suit seeking damages under O.C.G.A. § 51-1-6 as a result of Emory's alleged discrimination against him due to his disability in violation of the Vocational Rehabilitation Act ("VRA") and the Americans with Disabilities Act ("ADA"). *Cruet v. Emory Univ.*, 85 F. Supp. 2d at 1354-55 ("The breach of a legal duty Cruet seeks to rely on here is one where an express cause of action already exists as part of a remedial scheme set out by Congress under the VRA and the ADA. Since a cause of action already exists for violations of the VRA and ADA, Cruet may not recover under § 51-1-6 for any alleged violations of these legal duties."). O.C.G.A. § 51-1-6, characterized as a tort "enabling" statute, provides:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

O.C.G.A. § 51-1-6 expressly provides that it does not permit a plaintiff to use the statute as a vehicle to assert a substantive right of action that already exists under

either federal or state law.[11]  Thus, Georgia courts have held that § 51-1-6 does not provide an additional right of action where an express cause of action already exists.  *See Cruet*, 85 F. Supp. 2d at 1354-55.  Plaintiffs here do not seek to bring an action pursuant to O.C.G.A. § 51-1-6.   And even if they did, Plaintiffs' negligence per se claim is based on violations of the FTCA, a federal statute for which there is no private right of action.   The fact that a similar state statute exists, which does provide for a private right of action, does not bar Plaintiffs from bringing their negligence per se claim.  *See Attaway v. Tom's Auto Sales, Inc.*, 242 S.E.2d 740, 742 (Ga. Ct. App. 1978) (holding that consumers who are damaged by violations of Georgia's Fair Business Practices Act have an "independent right to recover under the Act, regardless of any other theory of recovery").

### 3. Breach

Arby's argues that Plaintiffs failed to adequately plead any negligent act on the part of Arby's that resulted in a breach because "the complaint does not allege how the Intrusion occurred, what Arby's could or should have done to prevent it, or how its information security measures were unreasonable."  (Mem. Supp. Mot. Dismiss Fin. Inst. Compl. at 15.)  Arby's additionally argues that the "claim rests predominantly on the conclusory premise that merely suffering a data breach establishes negligence."  (Mem. Supp. Mot. Dismiss Consumer Compl. at 17.)

---

[11] O.C.G.A. § 51-1-6 is not a negligence per se statute, although it has sometimes been used as a vehicle to assert a negligence per se claim, in conjunction with another statutory violation.

The Financial Institution Plaintiffs allege that Arby's breached their duty because they "failed to act reasonably in protecting payment card data, and did not have reasonably adequate systems, procedures and personnel in place to prevent the disclosure and theft." (Fin. Inst. Compl. ¶ 106.) More specifically, they allege that Arby's "failed to comply with PCI DSS requirements; failed to take additional protective measures beyond those required by PCI DSS; failed to implement EMV-capable POS systems by the October 1, 2015 deadline; operated POS systems with outdated operating systems and software; [and] failed to enable point-to-point and end-to-end encryption." (*Id.* ¶ 79.) The Financial Institution Plaintiffs' Complaint alleges multiple deficiencies as well as recommended measures and precautions Arby's could have employed to protect its customer data from the known threat of hacking. Their Complaint also includes extensive allegations regarding the most common mode of hacking of data in restaurants and retail outlets and why Arby's should have been on notice of the susceptibility of its data system to hacking and breach. (*Id.* ¶¶ 3-4, 29-78.)

The Consumer Plaintiffs similarly allege that Arby's breached its duty by "fail[ing] to: (1) secure its point-of-sale systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach." (Consumer Compl. ¶¶ 73-107, 153.) Plaintiffs further allege that Arby's was aware of the possibility of a breach because of similar breaches in the restaurant

23

industry, including a breach at Wendy's, which owns a minority share in Arby's. (Fin. Inst. Compl. ¶ 43; Consumer Compl. ¶¶ 95, 158.)

The parties disagree on the facts relevant to the breach and the adequacy of Defendant's precautionary measures.   For example, the parties disagree on whether Arby's complied with industry security standards and whether Arby's was on notice after the Wendy's breach.   These types of disputes are improper for resolution on a motion to dismiss when Plaintiffs' factual allegations are accepted as true.   *See Ellington v. Tolar Const. Co.*, 227 S.E.2d 336, 338 (Ga. 1976) ("[I]t is . . . usually for the jury to say whether the conduct in question met the standard of the reasonable man.")   Accordingly, the Court finds that Plaintiffs have alleged facts sufficient to plead the breach element of their negligence claims based on the alleged failure of Arby's to protect its point of sale systems from the foreseeable threat of a security breach by potential third party hackers.

### 4.   *Causal Connection*

Arby's argues that Plaintiffs' negligence claim is also subject to dismissal because Plaintiffs "ma[de] only conclusory allegations of causation."   (Mem. Supp. Mot. Dismiss Fin. Inst. Compl. at 17.)   Both the Financial Institution and Consumer Plaintiffs argue that they have alleged two possible ways a hacker could have accessed Arby's system and that the breach could not have happened but for Arby's failure to implement protocols recommended by federal agencies, security experts, and the payment card industry.   (Fin. Insts.' Res. Opp. Mot. Dismiss at 15 (citing Compl. ¶¶ 34-35, 60-62, 65, 65-70, 75, 79); Consumers' Res.

24

Opp. Mot. Dismiss at 18 (citing Compl. ¶¶ 66-69, 80, 92-93, 107, 118, 120-122).) As for the Consumer Plaintiffs, they allege that each of them purchased food at an affected Arby's location and that fraudulent charges were subsequently discovered on the credit cards they used to make their purchases at Arby's. And for the 28 fraudulent charges incurred by Plaintiff Barnes totaling $1,579.40, Plaintiffs allege that his issuing bank informed him that the theft probably originated from the Arby's data breach which had been publicly disclosed at the time of those charges. (Consumer Compl. ¶ 38.)

Whether Plaintiffs are ultimately able to prove their allegations is another matter. *Redmon v. Daniel*, 779 S.E.2d 778, 784 (Ga. Ct. App. 2015) ("[Q]uestions of causation are normally for the jury" to answer). Drawing all reasonable inferences in the light most favorable to Plaintiffs, as required at the motion to dismiss stage, the Court finds that Plaintiffs have adequately pled that the alleged negligence of Arby's was the cause of their alleged injury.

### 5. *Damages*

Arby's argues that the Consumer Plaintiffs' negligence claims are subject to dismissal because they have not alleged "any out-of-pocket loss." (Mem. Supp. Mot. Dismiss Consumer Compl. at 20.) Arby's argues that the Consumer Plaintiffs do not allege they were required to pay back any unauthorized charges or that they ever incurred a late fee. Arby's further asserts that the Consumer Plaintiffs' claimed injuries of lost rewards, injuries from annoyance and inconvenience, and risk of identity theft, are not actionable.

The Consumer Plaintiffs alleged that they suffered a variety of injuries, including "unauthorized charges on their accounts; theft of their Customer Data; costs associated with detection and prevention of identity theft; inability to receive rewards from the loss of use of their cards; loss of use of funds and accounts . . . loss of productivity, time and effort in remediating the breach; increased risk of identity theft . . . and loss of privacy." (Consumers' Res. Opp. Mot. Dismiss at 8-9.)

The Consumer Plaintiffs' allegations that they suffered monetary losses related to fraudulent charges – unauthorized charges on their accounts, theft of their personal financial information, and costs associated with detection and prevention of identity theft – are sufficient to survive a motion to dismiss. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[Defendant] contends that Plaintiff's injuries are not cognizable under Florida law because the Complaint alleges only 'losses' not 'unreimbursed losses.' This is a specious argument."); *Smith v. Triad of Alabama, LLC*, 1:14-CV-324-WKW, 2015 WL 5793318, at *9 (M.D. Ala. Sept. 29, 2015) (following *Resnick* and finding, "[t]here is no precedent binding on this court stating that for standing purposes, a victim of identity theft must allege that he or she suffered economic damages or that he/she suffered an un-reimbursed or out-of-pocket expense, and this court will not so hold"); *see also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (finding that money customer spent protecting against future identity theft or fraudulent charges and time and effort spent monitoring both his

card statements and his other financial information as a guard against fraudulent charges and identity theft in response to theft of customer data constituted concrete and particularized injuries); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 165 (1st Cir. 2011) (holding that plaintiffs' claims for damages for identity theft insurance and replacement card fees involving actual financial losses from credit and debit card misuse are recoverable as mitigation damages where customers experienced unauthorized charges to their accounts). While Arby's is correct that a plaintiff may not recover for injuries that are purely speculative, such as the potential risk of future identity theft, Plaintiffs' Complaint alleges costs associated with actual data theft.[12] *See Torres v. Wendy's Int'l LLC*, Civil Action No. 6:16-cv-00210-PGB-DCI, Order on Mot. to Dismiss, Doc. 101 at 5 (finding plaintiffs' allegations that they suffered actual injuries, including the loss of credit card reward points and loss of cash-back rewards, sufficient at motion to dismiss stage to plead injury).

---

[12] Having found that Plaintiffs have sufficiently alleged recoverable damages to survive dismissal, the Court need not address Arby's assertion that Plaintiffs' other alleged injuries for loss of use of funds and accounts, loss of productivity, time and effort in remediating the breach, and inability to receive rewards from the loss of use of their cards are not cognizable under Georgia law. There is a dearth of authority cited by the parties as to these other "intangible" damages. However, in the Court's view, a consumer's time and effort to remediate the effects of a breach is not an abstract notion of actual damage and one that is susceptible to proof and valuation by a jury. *See Resnick v. Av.Med, Inc.* 693 F.3d at 1324. *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 139 (Ga. Ct. App. 2001), relied upon by Arby's, is not instructive as the plaintiff there put on no proof of damages whatsoever in response to the *d*efendant's motion for summary judgment.

### 6. *Economic Loss Doctrine*

Finally, Arby's argues that even if the Plaintiffs pled all of the elements for their claims of negligence and negligence per se, both claims are barred by the "economic loss doctrine." "The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005); *Hanover Ins. Co. v. Hermosa Const. Group, LLC*, 57 F. Supp. 3d 1389, 1395-96 (2014) ("The economic loss rule provides that a plaintiff may not recover in tort for purely economic damages arising from a breach of contract.").  The policy consideration underlying Georgia's economic loss rule is "to prevent a plaintiff from recovering duplicative damages for the same wrongdoing."  *Luigino's Intern., Inc. v. Miller*, 311 F. App'x 289, 292 (11th Cir. 2009); *Gen. Elec. Co.*, 608 S.E.2d at 639 (economic loss rule "avoids the unfairness to defendants that would come with duplicative liability for the same damage").

Specifically, with respect to the Financial Institution Plaintiffs, Arby's asserts that the Visa and MasterCard Rules provide issuing banks like the Plaintiffs here with specific contractual remedies for economic losses resulting from the theft of cardholder data from merchants like Arby's.  These remedies, according to Arby's, preclude the Financial Institution Plaintiffs from recovering such losses from a merchant in a negligence action.  In response, the Financial Institution Plaintiffs argue that the economic loss doctrine does not bar tort

claims that are "separate and distinct" from any breach of contract, but that "[i]n any event, no contracts are before the Court, and thus, it would be improper to consider them." (Fin. Inst. Resp., Doc. 76 at 30.) With respect to the Consumer Plaintiffs, Arby's asserts that the economic loss doctrine forbids their negligence claim because "the existence of a contract between the parties is undisputed." (Arby's Mot. to Dismiss, Doc. 52-1 at 34.) The Consumer Plaintiffs counter that their injuries flow from Arby's alleged breach of a duty independent from the parties' food purchase transaction.

Georgia law recognizes an exception to the economic loss rule for injuries that occur independently of a contract. *Luigino's Intern., Inc.*, 311 F. App'x at 292-93 (citing O.C.G.A. § 51-1-11(a), providing "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract...."); *Hanover*, 57 F. Supp. 3d at 1396 (Where "an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the [economic loss] rule."). For example, "[w]here a party to a contract suffers damage to property that is not the subject of the contract, Georgia courts allow for recovery in tort on the premise that 'the duty breached in such situations generally arises independent of the contract.'" *Silverpop Systems, Inc.*, 641 F. App'x at 853; *Unified Svcs. v. Home Ins. Co.*, 460 S.E.2d 545 (Ga. Ct.

App. 1995) ("While a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law.").

The independent duty exception to the economic loss rule applies in cases where the plaintiff identified a statutory or common law duty that would have applied regardless of the existence of an underlying contract. *Id.*; *see Waldrip v. Voyles,* 411 S.E.2d 765, 768 (Ga. Ct. App. 1991) (negligence claim not barred by economic loss rule where the "requirement that the creditor honor the debtor's allocation of payments on multiple obligations arises from O.C.G.A. § 13−4−42, not from a contract provision"); *E & M Constr. Co. v. Bob*, 153 S.E.2d 641, 642-3 (Ga. Ct. App.1967) (negligence claim not barred by economic loss rule where "[i]ndependently of any duty under a contract, the law imposes upon a contractor the duty not to negligently and wrongfully injure and damage the property of another."); *Liberty Mut. Fire Ins. Co. v. Cagle's, Inc.,* No. 1:10−CV−2158−TWT, 2010 WL 5288673, at *3 (N.D. Ga. Dec. 16, 2010) (Thrash, J.) (finding that while an insurance contract does not automatically create an independent duty of reasonableness and good faith on the part of the insurer, Georgia common law had imposed such an independent duty, thereby excepting a breach of fiduciary duty claim from the economic loss rule under those narrow circumstances).

Federal district courts have extended this independent duty exception to data breach cases. *See Target Corp.*, 66 F. Supp. 3d at 1173 ("Absent Georgia authority refusing to recognize such an independent duty, Plaintiffs' allegations

are sufficient to establish that the economic loss rule does not bar their Georgia negligence claims."); *Home Depot*, 2016 WL 2897520 at *3 (finding that "an independent duty existed, barring application of the economic loss rule" even when there was "a contract between the card issuers and the Plaintiffs"). *But see SELCO Cmty. Credit Union v. Noodles & Co.*, No. 16-CV-02247-RBJ, 2017 WL 3116335, at *4 (D. Colo. July 21, 2017) (applying Colorado law, and finding that plaintiffs' data breach claims were barred by the economic loss rule because "the duties identified by plaintiffs are not independent of Noodles & Company's contractual obligation to comply with the PCI DSS").

Plaintiffs' negligence claims are not based on the breach of a duty owed under any express contract between Plaintiffs and Arby's, but are alleged to arise out of Arby's common law and statutory duty to protect its customers' cardholder data. Arby's has pointed to no provision of the Visa and MasterCard Rules that establish a contract between Plaintiffs as issuing banks and Arby's as a merchant or acquirer. To the contrary, the Visa Rules expressly provide:

> Visa has established rules that are designed to minimize risks and provide a common, convenient, secure and reliable global payment experience . . . They are set and modified by Visa to support the use and advancement of Visa products and services, and represent a binding contract between Visa and each Member. [. . .] The Visa Rules govern the relationship between Visa and its Members and their agents. The Visa Rules do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties.

(Doc. 57-2, "Introduction" at 48; § 1.1.1.5 at 53.)   Section 10.11.1.1, on which

Arby's relies as support for its argument that the Financial Plaintiffs are barred

from recovering against Arby's in tort, provides:

> **10.11.1.1    Global Compromised Account Recovery (GCAR) Program Overview (Updated)**
>
> An Issuer in Visa Inc. or the Visa Europe Territory may recover a portion of its estimated Incremental Counterfeit Fraud losses and operating expenses resulting from an Account Data Compromise Event involving a compromise of Magnetic-Stripe Data, and PIN data for events that also involve PIN compromise, under the Global Compromised Account Recovery (GCAR) program from an Acquirer(s) to whom liability for such loss has been assigned under the GCAR program.
>
> Visa has authority and discretion to determine Account Data Compromise Event qualification, as well as estimated Counterfeit Fraud Recovery and Operating Expense Recovery amounts, Issuer eligibility, and Acquirer liability under the GCAR program, in accordance with the *Visa Global Compromised Account Recovery (GCAR) Guide* and the available information regarding each event.

(Doc. 57-2 at 554.)[13]  This provision of the Visa Rules applies only to reimburse

an issuer for a "portion" of certain defined losses from an "acquirer" to whom

Visa has assigned liability under the GCAR program, and gives Visa the

"authority and discretion to determine" whether the loss event qualifies for the

program, the amounts of the loss, and the eligibility of the issuer to recover.  Even

in the event any of the economic losses the Financial Institutions allege to have

suffered fall within these parameters and are covered and paid out under the

terms of the GCAR program, the Financial Institution Plaintiffs would not be

allowed to double-dip and would be required to offset such amounts from the

---

[13] The MasterCard Rules similarly only apply to "enable[] an Issuer to partially recover costs incurred in reissuing Cards and for enhanced monitoring of comprised or potentially comprised Master Card Accounts." (Doc. 57-3 at 90-91.)  Under the MasterCard Rules, "[p]articipation in the reimbursement component of the ADC Program is optional for Issuers on a calendar year basis." (*Id.*)

damages sought in connection with the alleged negligence of Arby's.[14]  However, the Financial Institution Plaintiffs contend that they did not suffer purely economic damages but also damage to their property interest in valuable computer data and payment card information.  And the Consumer Plaintiffs contend that the only "contract" between Arby's and its customers relates to the purchase and payment for food and, does not address any allocation of risk or relevant contractual obligation or restriction.

Furthermore, barring these types of data breach claims under the economic loss rule would be inconsistent with the protective policy objectives of tort law, as it has evolved.  As Judge Thrash aptly stated in *Home Depot*:

> The Court declines the Defendant's invitation to hold that it had no legal duty to safeguard information even though it had warnings that its data security was inadequate and failed to heed them.  To hold that no such duty existed would allow retailers to use outdated security measures and turn a blind eye to the ever-increasing risk of cyber attacks, leaving consumers with no recourse to recover damages even though the retailer was in a superior position to safeguard the public from such a risk.

---

[14] On the current record, there is no indication how Arby's itself fits into the "Acquirer" role referenced in § Section 10.11.1.1 of Visa's Card Rules.  As the district court in *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, noted:

> it appears to the Court that the credit card industry involves a complex web of relationships involving numerous players governed by both individual contracts and exhaustive regulations promulgated by Visa and other card networks. These relationships may well create non-contractual duties between various participants in the system, just as Plaintiff alleges. In addition, this web of relationships may or may not render Plaintiff's negligence claim susceptible to the economic loss doctrine. In short, the arguments made by Defendants with regard to duty and the economic loss doctrine hinge upon issues of fact as to the nature of the relationships between the parties that the Court may not appropriately resolve via a motion to dismiss.

*Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F. Supp. 2d 283, 287 (D. Me. 2005).

*Home Depot*, 2016 WL 2897520, at *4; *see also* David W. Opderbeck, *Cybersecurity, Data Breaches, and the Economic Loss Doctrine in the Payment Card Industry*, 75 Md. L. Rev. 935, 980 (2016) (suggesting that the "economic loss doctrine should not bar tort claims in data breach cases involving the consumer credit card system" because of the negative externalities associated with data breaches and the lack of contractual remedies associated with the breach (emphasis removed)); *Sovereign Bank*, 395 F. Supp. 2d at 194 ("[W]e agree with Plaintiff's argument that the consequences of imposing a duty of care on [the defendant restaurant] is fair and just because [the restaurant] is in the best position to ensure that the cardholder information is not stolen from its computer files by simply complying with the regulation and deleting the data after Sovereign authorizes a transaction."); *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 426 (5th Cir. 2013) (declining to apply economic loss rule to as a bar to financial institutions' negligence claim following data breach where "in the absence of a tort remedy, the Issuer Banks would be left with no remedy for Heartland's alleged negligence, defying 'notions of fairness, common sense and morality'").

For these reasons, the Court finds the economic loss rule does not bar Plaintiffs' negligence claims. Accordingly, the Court **DENIES** Arby's Motions to Dismiss Plaintiffs' negligence and negligence per se claims.

## B. Declaratory Judgment

Arby's argues that the Plaintiffs' claim for declaratory judgment should be dismissed because Plaintiffs did not allege any facts about "Arby's current security posture" to show that there is a risk of future breach.  (Mem. Supp. Mot. Dismiss Consumer Compl. at 35; Mem. Supp. Mot. Dismiss Fin. Inst. Compl. at 25.)  Plaintiffs allege that Arby's still possesses their customer data and therefore they have an interest in ensuring its protection from further breaches. Plaintiffs thus seek declaratory judgment "that (a) [Arby's] existing data security measures do not comply with its contractual obligations and duties of care, and (b) to meet that compliance, Arby's must implement and maintain a list of reasonable security measures." (Mem. Opp. Mot. Dismiss Consumer Compl. at 34 n.36; Consumer Compl. at ¶197; Fin. Inst. Compl. at ¶117-119.)

A court "in a case of actual controversy…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (2012).  "The Declaratory Judgment Act 'is an all-purpose remedy designed to permit adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose.'"  *State St. Bank & Tr. Co. v. Canal Ins. Co.*, No. 1:14-CV-2080-AT, 2014 WL 12360078, at *6 (N.D. Ga. Dec. 1, 2014) (quoting *Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.* 445 F.2d 1278, 1280 (5th Cir. 1971)).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *In Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Arby's arguments are premature at this stage. Plaintiffs made specific allegations that they would be harmed without declaratory relief because Arby's has not taken steps to address their allegedly inadequate security system. This is enough to survive a motion to dismiss. *See Home Depot*, 2016 WL 2897520, at *5 (denying a motion to dismiss plaintiff's claim for declaratory relief when the plaintiffs "pleaded that the defendant's security measures continue to be inadequate and that they will suffer substantial harm" without relief).

Therefore, the Court **DENIES** Arby's Motion to Dismiss the claim for declaratory relief.

### C. Implied-In-Fact Contract

Arby's seeks dismissal of the Consumer Plaintiffs' claim for breach of implied-in-fact contract.[15]  The Consumer Plaintiffs allege breach of an implied-in-fact contract as follows:  (1) Arby's solicited and invited Plaintiffs to eat at its restaurants and make purchases using their debit and credit cards; (2) Plaintiffs accepted Arby's offers and used their credit and debit cards during the period of the data breach; (3) during the purchases, Plaintiffs provided their personal identifying information and customer data, thereby entering into mutually

---

[15] The Financial Institution Plaintiffs did not assert a claim for implied-in-fact contract.

agreed-upon implied contracts with Arby's that Arby's agreed to safeguard and protect such information and to timely and accurately notify Consumer Plaintiffs if their data had been breached and compromised; and (4) Arby's breached the implied contracts by failing to safeguard and protect Plaintiffs' personal identifying information and customer data and by failing to timely and accurately notify Plaintiffs of the data breach.   (Consumer Compl. ¶¶ 146-47, 151.)   The Consumer Plaintiffs further allege that they would not have entrusted their data to Arby's "in absence of the implied contract between them" and Arby's.   (*Id.* at ¶ 148.)

Arby's advances a number of reasons why this claim is subject to dismissal. First, Arby's asserts that the Consumer Plaintiffs may not unilaterally impose on Arby's an implied contractual obligation to safeguard data.  Second, Arby's argues that Georgia law will not imply a term into a contract where a party received some form of consideration or benefit from the contract and the additional terms are not "absolutely necessary" to effectuate the contract.  Third, Arby's contends that the claim fails because Arby's received no additional consideration for the obligation to protect Plaintiffs' data beyond the price of the food.  Finally, Arby's repeats its argument that Plaintiffs did not allege any cognizable injuries.[16]

Where no express written contract exists, Georgia recognizes the theory of a contract implied in fact. *Dawes Min. Co. v. Callahan*, 267 S.E.2d 830, 832 (Ga. Ct. App. 1980), *aff'd sub nom.* S.E.2d 267 (Ga. 1980).  The common law claim of

---

[16] For the reasons set forth in the preceding section, the Court rejects this specific argument as grounds for dismissal.

implied-in-fact contract is based on O.C.G.A. § 9-2-7, which provides that "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." *See* John K. Larkins, Jr., Ga. Contracts: Law and Litigation, § 5:8, p. 137 (2nd ed., 2011 and Supp. 2016-17). "Contracts implied-in-fact are inferred from the facts and circumstances of the case, and are not formally or explicitly stated in words." *Dawes Min. Co.*, 267 S.E.2d at 832. The "difference between an express contract and a contract implied-in-fact is that in the former the parties arrive at their agreement by words, whether oral or written, while in the latter their agreement is arrived at by a consideration of their acts and conduct." *Id.* "In other words, in an express contract all the terms and conditions are expressed between the parties, while in an implied contract some one or more of the terms and conditions are implied from the conduct of the parties." *Id.* (citing 17 Am. Jur .2d 334, 335, Contracts, § 3).

In support of dismissal, Arby's relies on *WirelessMD, Inc. v. Healthcare.com Corp.*, and other similar cases, holding that the introduction of an implied term into a contract is only warranted when the additional term "is not inconsistent with some express term of the contract" and where it is "absolutely necessary to introduce the term to effectuate the intention of the parties." *See WirelessMD, Inc. v. Healthcare.com Corp.*, 610 S.E.2d 352, 356 (Ga. App. Ct. 2005) (quoting *Higginbottom v. Thiele Kaolin Co.*, 304 S.E.2d 365 (Ga. 1983)) (rejecting plaintiff's contention that written Purchase Agreement for

software contained an implied obligation on the part of purchaser to market the software as source of revenue that would then be payable to seller as royalty payments owed under contract). However, "[a]n express contract and an implied contract for the same subject matter cannot exist at the same time between the same parties." *See* John K. Larkins, Jr., Ga. Contracts: Law and Litigation, § 5–8, p. 139 (citing cases); *see also Davidson v. Maraj*, 609 F. App'x. 994, 997–98 (11th Cir. 2015) (citing *Cochran v. Ogletree*, 536 S.E.2d 194, 196-97 (Ga. Ct. App. 2000) and noting that implied contract theory is not available when an express contract exists governing all the claimed rights and responsibilities of the parties). Therefore, cases governing when a court may imply additional terms into a written contract are inapplicable.

Arby's next asserts that because "one party's expectations alone, even if reasonable, can never suffice to impose contractual terms on another terms on another," Plaintiffs' failure to allege in the Compliant "any act or statement by Arby's" that would suggest Arby's "intent to take on a contractual data security obligation" is fatal to their claim. (Mot. at 4.) Such allegations, Arby's contends are necessary to plead "the requisite 'meeting of the minds' for an implied data security term." (*Id.*) Plaintiffs counter that data security is at the core of the modern commercial transaction, as understood by both the consumers and retailers. Thus, Plaintiffs assert that the promise and expectation that Arby's would adequately safeguard customer data and timely notify customers of any breach is implicit in the act of Arby's inviting its customers to use their payment

cards at the point of sale.  The Court agrees that it is reasonable to infer from the facts and circumstances of the case that both Arby's and the Consumer Plaintiffs have an understanding that every sale of an Arby's "Beef and Cheddar" is not accompanied by unauthorized fraudulent charges on the customer's bank statement.  The lack of an express statement by Arby's is not fatal to the Consumer Plaintiffs' claim based on an implied in fact contract for data security. *See Tatum v. Moss*, 198 S.E. 814, 815 (Ga. Ct. App. 1938) (The question of whether there is an implied contract is generally a "question of fact" that "must generally be left to the jury for determination.").

Several federal courts have recognized implied-in-fact contract claims in data breach cases.  *Badish v. RBS Worldpay, Inc.*, No. 1:09-CV-0033-CAP, 2010 U.S. Dist. LEXIS 145301 at *21 (N.D. Ga. Feb. 5, 2010) (denying motion to dismiss plaintiff's implied contract claim based on allegations that plaintiff would not have provided his personal financial information without defendant's agreement to protect plaintiff's information and prevent improper access to defendant's computer systems); *In re Target*, 66 F. Supp. 3d at 1176 (holding that the plaintiffs had sufficiently pleaded "an implied contract in which Plaintiffs agreed to use their credit or debit cards to purchase goods at Target and Target agreed to safeguard Plaintiffs' personal and financial information."); *Hannaford Bros. Co.*, 659 F.3d at 159 (affirming district court's conclusion on motion to dismiss "that a jury could reasonably find an implied contract between Hannaford and its customers that Hannaford would not use the credit card data

for other people's purchases, would not sell the data to others, and would take reasonable measures to protect the information"); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp.2d 518, 528 (N.D. Ill. 2011) (finding reasoning of *Hannaford* persuasive and holding that the allegations demonstrate the existence of an implicit contractual relationship between plaintiffs and Michaels, which obligated Michaels to take reasonable measures to protect plaintiffs' financial information); *Castillo v. Seagate Tech., LLC*, 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016) (rejecting defendant's argument that the plaintiffs failed to alleged any conduct evincing mutual assent or offer and acceptance in support of implied in fact contract claim, finding that "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently").  These decisions are grounded in the recognition that "[w]hen a customer uses a credit card in a commercial transaction, she intends to provide that data to the merchant only. Ordinarily, a customer does not expect – and certainly does not intend – the merchant to allow unauthorized third parties to access that data."  *Hannaford Bros. Co.*, 659 F.3d at 159 ("A jury could reasonably conclude [ ] that an implicit agreement [by a store] to safeguard [its customers'] data is necessary to effectuate the contract" that exists between them.)  To the extent courts have found that it is not a

reasonable expectation, this Court is not persuaded and disagrees with those nonbinding decisions.[17]

Accordingly, the Court **DENIES** Arby's Motion to Dismiss the Consumer Plaintiffs' claim for breach of implied-in-fact contract.

### D. Unjust Enrichment

Arby's next seeks to dismiss the Consumer Plaintiffs' claim of unjust enrichment.[18]  Arby's argues that because the Consumer Plaintiffs confirmed "the existence of a contract — to purchase food for a specified price," their unjust enrichment is precluded.  (Mem. Supp. Mot. Dismiss Consumer Compl. at 28.) Under Georgia law, "'[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated."  *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) (quoting *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001)).  A party can only recover for a claim of unjust

---

[17] *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (dismissing implied-in-fact contract claim, where express contract existed, based on customer's belief that Scottrade would protect customer's personal identifying information); *In re Zappos.com, Inc.*, 3:12-CV-00325-RCJ, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (dismissing implied contract claim based on allegation that customers agreed to pay money for goods and that statements on Zappos's website indicated that its servers were protected by a secure firewall and that customers' data was safe because "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations); *Dittman v. UPMC*, No. GD-14-003285, 2015 WL 4945713, *at 6 (Pa. Com. Pl. Civil Div. May 28, 2015) (dismissing implied-in-fact contract claim by employees against employers following data breach where "Plaintiffs do not describe any exchanges between plaintiffs and UPMC in which UPMC made any promises . . . There is no apparent reason why UPMC would enter into an agreement with its employees to allow its employees to sue UPMC in the event of a data breach. To the contrary, UPMC would anticipate that it is likely to experience data breaches, and common sense requires a finding that it would not agree to allow others to bring private actions against UPMC.")

[18] The Financial Institution Plaintiffs do not assert a claim of unjust enrichment.

enrichment if there is not an express contract that governs the dispute.  *See Fed. Ins. Co. v. Westside Supply Co.*, 590 S.E.2d 224, 232 (Ga. Ct. App. 2003) ("Recovery under [the theory of unjust enrichment] presupposes the absence of a contractual agreement.").  "While a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative."  *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d at 1309; *Westside Supply Co.*, 590 S.E.2d at 232.  Therefore, the Consumer Plaintiffs are entitled to assert a claim for unjust enrichment in the alternative to their claim for breach of an implied-in-fact contract.

Accordingly, the Court **DENIES** Arby's Motion to Dismiss the Consumer Plaintiffs' claim for unjust enrichment.

### E. Georgia Fair Business Practices Act

The Court next considers Arby's Motion to Dismiss the Consumer Plaintiffs' claim under the Georgia Fair Business Practices Act (GFBPA).[19] Consumer Plaintiffs allege that Arby's violated several provisions of the GFBPA – O.C.G.A. §§ 10-1-393 (a), (b)(2), (b)(3), & (b)(5) – by "engaging in unfair and deceptive acts and practices in the credit and debit card processing services," by "misrepresenting" that its services had sponsorship, approval, or certification with Payment Card Industry Standards, and by "misrepresenting" that its services complied with the PCI DSS standards.  (Consumer Plaintiffs' Compl. at ¶ 204.)  Arby's argues that the Consumer Plaintiffs lack standing to bring the claim,

---

[19] The Financial Institution Plaintiffs did not make a claim under the Georgia Fair Business Practices Act.

and failed to plead misrepresentation, reliance, or injury.  The Court addresses each argument separately.

   a. *Standing*

  Arby's contends that the Consumer Plaintiffs do not have standing because "[e]ach plaintiff may assert only his or her home state's statutory consumer claims" and the one Georgia resident in the complaint did not make the required pre-suit demand under O.C.G.A. §§ 10-1-399(b).  (Mem. Supp. Mot. Dismiss Consumer's Compl. at 29-30.)  Arby's relies exclusively on the choice of law analysis[20] in *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010) (applying Georgia choice of law principles to find that law of non-Georgia resident plaintiffs' home states applied to their claim for violation of the Uniform Deceptive Trade Practices Act).   Arby's has not cited any authority to support its assertion that a non-Georgia resident lacks standing to sue for violations of the Georgia Fair Business Practices Act by a Georgia corporation. Rather, Arby's conflates questions of standing[21] and choice of law.

---

[20] Under Georgia's choice of law principles, the application of another jurisdiction's laws is limited to its statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law. *Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (citing *White v. Borders*, 123 S.E.2d 170 (Ga. Ct. App. 1961) and *Budget Rent-A-Car Corp. v. Fein*, 342 F.2d 509 (5th Cir. 1965)).

[21] In order to establish standing, a plaintiff must show: (i) an injury that is "concrete, particularized, and actual or imminent," (ii) fairly traceable to the challenged action, and (iii) redressable by a favorable ruling.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether to apply Georgia law to the claims of non-Georgia plaintiffs, courts must consider whether Georgia has a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [Georgia] law is not arbitrary or unfair." *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 821–22 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)).

The purpose of the GFBPA is "to protect consumers . . . from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10-1-391(a). The GFBPA declares unlawful "[u]nfair or deceptive acts or practices in the conduct of consumer transactions," including "[r]representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade." O.C.G.A. §§ 10-1-393(b)(5)&(7). It further provides a right of action to "[a]ny person who suffers injury or damages as a result of . . . consumer acts or practices in violation of this part.) O.C.G.A. § 10-1-399(a). Georgia courts have therefore held that the GFBPA creates a separate and distinct cause of action under its provisions for consumers who are damaged by its violations. *Attaway v. Tom's Auto Sales, Inc.*, 242 S.E.2d 740, 742 (Ga. Ct. App. 1978); *Zeeman v. Black*, 273 S.E.2d 910,916 (Ga. Ct. App. 1980). O.C.G.A. § 10-1-399(a) "requires that the consumer 'suffer injury or damages' by the commission of an unfair or deceptive act, which would necessarily be attended by some reprehensible conduct on the part of the defendant." *Tiismann v. Linda Martin Homes Corp.*, 610 S.E.2d 68, 70 (Ga. 2005) (citing *Standish v. Hub Motor Co.*, 254 S.E.2d 416 (Ga. Ct. App. 1979)). The Court of Appeals "has consistently held that in accordance with the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of actual injury suffered." *Id.* (citations omitted).

45

While an aggrieved party is afforded a private remedy under the GFBPA, "the stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." *Zeeman*, 273 S.E.2d at 913–14.   And, "not only is the FBPA itself couched in terms of protecting the public interest, . . . the Federal Trade Commission Act, 15 U.S.C. 45, is expressly made the appropriate standard by which the purpose and intent of the Georgia Act is to be effectuated, implemented and construed." *Zeeman*, 273 S.E.2d at 913–14 (citing *Fed. Trade Comm'n. v. Cinderella Career etc. Schools*, 404 F.2d 1308 (D.C. Cir. 1968) (noting the basic purpose of the Act is to protect the public).

There is no statutory provision in the GFBPA that restricts the private right of action to Georgia citizens.   To the contrary, the Georgia legislature intended the Act to "be liberally construed and applied to promote its underlying purposes and policies."  O.C.G.A.   § 10-1-391(a).   And while no Georgia court has directly addressed this question, similar consumer protection statutes in other states have been liberally construed to apply to non-resident consumer plaintiffs.   *See Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999); *Jacobs Mfg. Co. v. Sam Brown Co.*, 1986 WL 7815, *5 (W.D. Mo. June 30, 1986); *Kugler v. Haitian Tours, Inc.*, 293 A.2d 706, 711 (N.J. Super. Ct. 1972).   As Arby's has failed to point to any case or statutory law that explicitly restricts the application of the

46

GFBPA to Georgia citizens, Arby's has not shown that the Consumer Plaintiffs do not have standing to assert violations of the GFBPA.

According to the Consumer Plaintiffs' Complaint, Arby's principal place of business is in Atlanta, Georgia and the "acts, practices, and omissions at issue in this matter were directed and emanated from its headquarters in Georgia." (Consumer Compl. ¶¶ 126-129, 201.)   Specifically, Plaintiffs allege that Arby's "corporate point-of-sale system and IT personnel operate out of and are located" at its Georgia headquarters, its "PCI-DSS assessments" and other data security duties occur at its Georgia headquarters, and that Arby's corporate decisions relating to the data breach were made from its Georgia headquarters.   (*Id.* ¶¶ 126-129.)   "Georgia has a significant interest in regulating the conduct of businesses operating within its borders, particularly those whose principal place of business is in Georgia . . . That interest includes extending legal remedies to [Arby's] customers." *Terrill*, 753 F. Supp. 2d at 1282.

Arby's second argument is that one of the Plaintiffs – Georgia resident Brett Barnes – does not have standing because he did not make the required pre-suit demand under O.C.G.A. § 10-1-399(b).   Arby's asserts that Plaintiff Barnes may not piggyback on the pre-suit demand sent on behalf of Plaintiffs Jacqueline and Joseph Weiss and Ashley Russell "individually and on behalf of all others similarly situated" because the GFBPA does not permit representative claims. *See* O.C.G.A. § 10-1-399(a) (providing that an injured person "may bring an

action individually, but not in a representative capacity"); O.C.G.A. § 10-1-399 (b)
(requiring pre-suit written demand to identify "claimant").

"The notice requirement of O.C.G.A. § 10-1-399(b) is to be liberally
construed, and the sufficiency of notice is a question for the court." *Lynas v.
Williams*, 454 S.E.2d 570, 573 (Ga. Ct. App. 1995). State statutes, like the
GFBPA, "precluding class actions for specific kinds of claims conflicts with Rule
23 and so is displaced for claims in federal court so long as applying Rule 23 does
not 'abridge, enlarge or modify any substantive right.'" *Lisk v. Lumber One
Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) (holding that Rule 23
applied rather than Alabama Deceptive Trade Practices Act's prohibition on class
actions). Federal Rule 23 does not "abridge, enlarge or modify any substantive
right" of the parties under the GFBPA. *Id.* ("The disputed issue is not whether
Mr. Lisk and other buyers are entitled to redress for any misrepresentation; they
are. The disputed issue is only whether they may seek redress in one action or
must instead bring separate actions—whether any representative action may be
brought by a consumer or must be brought by the Attorney General or a district
attorney. Because Rule 23 does not 'abridge, enlarge or modify any substantive
right,' Rule 23 is valid and applies in this action") (citation omitted). Because
Federal Rule 23 trumps the representative prohibition of the GFBPA for claims
brought in federal court, Plaintiff Barnes may rely on the pre-suit demand sent by
Plaintiffs Weiss and Russell on behalf of "all other on behalf of all others similarly
situated" to satisfy the requirements of O.C.G.A. § 10-1-399(b). *See Schorr v.*

*Countrywide Home Loans, Inc.*, 697 S.E.2d 827, 827 (Ga. 2010) (answering in the affirmative the certified question of district court whether named plaintiffs in a class action may satisfy statutory pre-suit written demand requirement for liquidated damages on behalf of putative class action members, and finding no reason not to apply in this case the general rule allowing the named plaintiffs in a class action to satisfy preconditions for suit on behalf of the entire class); *see also Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (finding that pre-suit notice requirement in Georgia Fair Business Practices Act, O.C.G.A. § 10-1-399(b), "do[es] not appear to require pre-suit notice by individual plaintiffs.").[22]

### b.  *Misrepresentation, Reliance, and Injury*

Arby's argues that because the Consumer Plaintiffs' GFBPA claim sounds in fraud, Plaintiffs are required to plead the alleged misrepresentations with particularity under Federal Rule of Civil Procedure 9(b).  Arby's further asserts that Plaintiffs failed to allege that Plaintiffs relied on any representations at the time of purchase.[23]

As discussed above, the Georgia legislature intended the GFBPA to "be liberally construed and applied to promote its underlying purposes and policies." O.C.G.A.  § 10-1-391(a).  And, "the Federal Trade Commission Act, 15 U.S.C. 45, is

---

[22] The Court's ruling here is not dispositive of other Rule 23 class certification issues that may be later raised.

[23] Arby's again asserts that Plaintiffs' failure to allege any out-of-pocket losses requires dismissal of their GFBPA claim.  This is the same argument that Arby's raised for the negligence and implied-in-fact claims.  For the same reasons discussed above, the Consumer Plaintiffs properly plead an injury based on the actual damage alleged.

expressly made the appropriate standard by which the purpose and intent of the Georgia Act is to be effectuated, implemented and construed." *Zeeman*, 273 S.E.2d at 913–14 (citing *Fed. Trade Comm'n. v. Cinderella Career etc. Schools*, 404 F.2d 1308 (D.C. Cir. 1968) (noting the basic purpose of the Act is to protect the public)).   Accordingly, the GFBPA must be interpreted and construed consistently with federal case law and the FTCA.  Section 5 of the FTCA makes "unfair or deceptive acts or practices in or affecting commerce" unlawful. 15 U.S.C. § 45(a) (1).

To establish liability under section 5 of the FTCA, the FTC "must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances; and (3) the representation was material." *Fed. Trade Comm'n v. USA Fin., LLC*, 415 F. App'x 970, 973 (11th Cir.2011) (quoting *Fed. Trade Comm'n v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)).[24]  District courts in the Eleventh Circuit have held that the heightened particularity requirement of Rule 9(b) does not apply to claims under the FTCA. *Fed. Trade Comm'n v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324 (S.D. Fla. 2016) (holding that Rule 9(b) does not apply to claims based on statutory violations under federal law that are distinct from common law claims based on fraud or mistake); *F.T.C. v. Sterling Precious Metals, LLC*, 12-80597-CIV, 2013 WL 595713, at *3 (S.D. Fla. Feb. 15, 2013) (following rationale of the Tenth Circuit that "[u]nlike the elements of common law fraud, the FTC need not prove

---

[24] The statute does not require an intent to deceive. *Id.* at 974 n. 2.

scienter, reliance, or injury to establish a § 5 violation"); *see also Fed. Trade Comm'n v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n. 7 (10th Cir. 2005) (same). *But see Fed. Trade Comm'n v. Lights of Am., Inc.*, 760 F.Supp.2d 848, 854 (C.D. Cal. 2010) (finding that "Rule 9(b) applies to claims for violations of the FTC Act").

Arby's has cited no binding authority that Plaintiffs must comply with Fed. Rule Civ. P. 9(b) in alleging claims based on violations of the GFBPA, and the Court has found none. *See Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1381 (N.D. Ga. 2012) (applying the Rule 9(b) particularity requirement to claims of fraud but not to claims under the FBPA). *But see Edwards-Astin v. Medtronic Minimed, Inc.*, No. 1:08-CV-103-CAP, 2008 WL 11319723, at *4 (N.D. Ga. June 4, 2008) ("The court finds that the plaintiff's FBPA allegations, in their current form, fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and do not include the allegation of justifiable reliance required by Georgia law.")[25]. As the GFBPA must be liberally construed and interpreted consistently with the parallel FTCA case law, the Court finds that Rule 9(b) does not apply to Plaintiffs' GFBPA claim.

Nonetheless, the liberal construction afforded to the GFBPA may not operate to "override the express provisions of the statute," which requires an allegation and showing of reliance. *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006). A claim under the GFBPA "has three elements: a

---

[25] The court in *Edwards* found that the plaintiff's GFBPA claims sounded in fraud without any discussion of its rationale in applying Rule 9(b)'s heightened pleading standard.

violation of the Act, causation, and injury." *Id.* Georgia courts have construed the GFBPA "as incorporating the 'reliance' element of the common law tort of misrepresentation into the causation element of an individual claim." *Id.* (quoting *Zeeman*, 273 S.E.2d 910). The Georgia Supreme Court in *Tissmann* relied on the fact that since these cases were decided, the legislature has amended § 10–1–399 of the GFPBA several times, "but never so as to alter the interpretation given the statute" as requiring reliance as an element of the claim. *Id.* Thus, under O.C.G.A. § 10–1–399, "a claimant who alleges the FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation." *Id.*

The Consumer Plaintiffs allege that Arby's violated the FBPA based on both affirmative misrepresentation and misrepresentation by omission. More specifically, Plaintiffs allege that Arby's violated the FBPA by misrepresenting that its services and data systems complied with the Payment Card Industry Security Standards Council certifications. (Consumer Compl. ¶¶ 204(b)-(d).) They further allege that Arby's violated the GFBPA by failing to disclose that its computer systems and data security practices were inadequate to safeguard against third party theft and by failing to timely and accurately disclose the breach to customers. (*Id.*) Plaintiffs allege that they would not have made purchases at Arby's using their debit or credit cards had they known of Arby's failure to employ adequate data security protections. (*Id.* ¶ 47.)

Consistent with the reasoning of *Tiisman*, the Consumer Plaintiffs must show their actual reliance on Defendant's alleged representations or omissions and resulting injury. They cannot simply rely on the alleged (or actual) falsity of Defendant's representations to establish reliance and injury. As the Consumer Plaintiffs do not expressly or specifically address reliance in Count VI, their allegations are insufficient to state a claim under the GFBPA.

Accordingly, the Court **GRANTS** Arby's Motion to Dismiss the Consumer Plaintiffs' claim for violation of the GFBPA. The claim is **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are **GRANTED LEAVE TO AMEND** to replead their GFBPA claim **WITHIN 14 DAYS**, with more clarity and specificity consistent with the requirements of the Georgia Supreme Court's decision in *Tiisman*.

### F. Violation of State Consumer Laws

In the alternative to their claim under the Georgia Fair Business Practices Act, Count VII of the Consumer Complaint asserts a claim for "Violations of State Consumer Laws" alleging that Arby's conduct also violates the Connecticut Unfair Trade Practices Act, the Florida Deceptive and Unfair Trade Practices Act, and the Tennessee Consumer Protection Act. Arby's seeks the dismissal of Count VII as insufficiently pled and as an improper shotgun count.

Unlike the Georgia Fair Business Practices Act, claims under the Connecticut Unfair Trade Practices Act and the Tennessee Consumer Protection Act based on alleged misrepresentations are subject to a heightened pleading

standard and must be pled with particularity.  *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08-cv-1958 (CFD), 2010 WL 1882316, at *9 (D. Conn. May 10, 2010) (citing *Tatum v. Oberg*, 650 F.Supp.2d 185, 195 (D. Conn. 2009) and *Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.*, 479 F.Supp.2d 292, 298 n. 2 (D. Conn. 2007)); *Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) (citing *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999)).[26]  Plaintiffs have failed to plead the alleged violations of the Connecticut Unfair Trade Practices Act and the Tennessee Consumer Protection Act with the required particularity.

Plaintiffs have lumped their allegations under these various statutory provisions together in a single count, without setting out the individual elements of a cause of action under each statute separately.  By doing so, Plaintiffs have failed to satisfy the basic pleading standards of Federal Rule of Civil Procedure 8(a).  *See Torres v. Wendy's Int'l, LLC,* Civil Action No. 6:16-cv-00210-PGB-DCI, Ord on Mot. to Dismiss, Doc. 101 at 9–11 (M.D. Fla. March 31, 2017) (finding that plaintiffs' complaint raising claims under six different state consumer protection laws in a single count required Wendy's and the court to engage in "the onerous task of sifting through the Amended Complaint to determine whether the facts alleged sufficiently state a claim for relief under the six different state consumer

---

[26] Contrary to Arby's assertion, "the particularity requirements of Rule 9(b) do not apply to [Florida] DUTPA claims."  *Fed. Trade Comm'n v. Student Aid Ctr., Inc.*, --- F. Supp. 3d ---, 16-21843-CIV, 2016 WL 10719950, at *5 (S.D. Fla. Dec. 30, 2016).

protection laws" in contravention of Rule 8(a)'s mandate and dismissing count without prejudice).

Accordingly, the Court **GRANTS** Arby's Motion to Dismiss Count VII for "Violations of State Consumer Laws" which is **DISMISSED WITHOUT PREJUDICE**. In the event Plaintiffs wish to proceed with their claims under these statutes, the Court will require Plaintiffs to replead the claims in separate individual counts and include the pleading standards set forth under each state law **WITHIN 14 DAYS** of the date of this Order.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Arby's Motion to Dismiss the Financial Institution Plaintiffs' Consolidated Complaint [Docs. 57, 178] and **GRANTS IN PART** and **DENIES IN PART** Arby's Motion to Dismiss the Consumer Plaintiffs' Consolidated Complaint [Docs.52, 217]. Discovery shall proceed upon entry of this Order and will not be stayed pending the Consumer Plaintiffs' filing of the repleaded GFBPA claim. Any subsequent motion to dismiss the GFBPA claim may only address the reliance element and may not exceed 7 pages.

The Parties are **DIRECTED** to confer about an agenda for the March 7, 2018 status conference in light of this Order and notify the Court whether they seek a brief delay in the commencement time of the 10:30 AM status conference that morning to allow additional time to confer in person prior to the start of the

conference.  If the Parties have a topical agenda, they are **DIRECTED** to provide one as soon as possible to the Court.

**IT IS SO ORDERED** this 5th day of March, 2018.

**Amy Totenberg**
**United States District Judge**