## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: Arby's Restaurant Group, Inc. Data Security Litigation | Case No. 1:17-cv-1035-AT |
| CONSOLIDATED CONSUMER CASE | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING

## I.  INTRODUCTION

Plaintiffs move for preliminary approval of the Settlement[1] they have reached with Defendant Arby's Restaurant Group Inc. ("Arby's"). After arms-length negotiations with an experienced mediator, the parties have reached a proposed Settlement which, if approved by the Court, will resolve Plaintiffs' claims against Arby's arising from the data breach.  In support of the proposed Settlement, Plaintiffs submit the Declaration of Roy E. Barnes, which attached as Exhibit 2.

The proposed Settlement should receive this Court's preliminary approval as it achieves the objectives of the litigation without the accompanying uncertainties.

---

[1] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, which is attached as Exhibit "1" hereto. "Settlement" as used herein means the agreement embodied in the Settlement Agreement.

First, Arby's will fund up to $2 million in benefits to provide for qualifying Settlement Class Members to receive reimbursement for monetary losses and compensation for lost time, and also to provide qualifying Settlement Class Members with the opportunity to enroll in identity theft protection services. Second, Arby's has confirmed the adoption and implementation of data security measures that protect the payment card information of its customers.[2] Third, Arby's will pay the costs of class notice, costs associated with administering the settlement, and attorneys' fees and expenses separate and independent from funding benefits to the Settlement Class Members. Further, provisional certification of the proposed Class for settlement purposes satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). *See* Part IV.D, *infra*.

For the reasons stated herein, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement, provisionally certify the Class for settlement purposes, appoint Co-Lead and Co-Liaison Counsel as Class Counsel, authorize notice to the Class of the proposed settlement in the form and manner described herein, further stay all other proceedings in the Consumer Case, and schedule a Final Approval Hearing.

---

[2] Arby's expressly denies that any given security improvement could have prevented the Data Breach and denies liability on each of the claims asserted against it.

## II.  SUMMARY OF THE LITIGATION

### A. The Data Breach

Plaintiffs brought this class action case seeking redress for Arby's alleged failures to safeguard customers' credit and debit card numbers and other payment card data that Arby's collected at the point of sale. Arby's has acknowledged that customers who used payment cards for transactions at over 950 Arby's corporate-owned restaurants located throughout the United States may have had their payment card data ("Payment Card Data") exposed at varying time frames for each location between October 8, 2016 and through January 12, 2017, based on the presence of "malware" on the point-of-sale ("POS") systems at those locations by which Arby's believes intruders may have been able to access data from the payment cards used in those customer transactions  (the "Data Breach").[3]

### B. Case Organization

After Arby's announced the Data Breach, a pair of class action lawsuits were filed by Arby's customers alleging that Arby's failed to implement adequate measures to protect "Customer Data" (alleged to include Payment Card Data and other data) from their Arby's transactions in connection with the incident.  Financial institutions also filed suit against Arby's relating to the breach. The Court consolidated the two customer class action cases into a single "Consumer Case," and consolidated the financial institution cases into a separate single "Financial

---

[3] The Data Breach is referred to in the Settlement Agreement as the "Security Incident."

Institution Case." (ECF No. 25)[4] The Court also appointed separate leadership for the Consumer Case. (ECF No. 48).

### C. Plaintiffs' Claims and Arby's Motion to Dismiss

Plaintiffs filed their Consolidated Class Action Complaint on July 21, 2017 ("Complaint") (ECF No. 47). The Complaint included five named plaintiffs ("Plaintiffs") who alleged having had Customer Data compromised in the incident and who sought to assert common law and state consumer protection claims on behalf of themselves and, on a number of the counts, all Arby's customers in the United States who were similarly situated.

Arby's moved to dismiss the claims on August 24, 2017 (ECF No. 52), which Plaintiffs opposed. (ECF No. 63). In its Order of March 5, 2018 (ECF No. 102), the Court denied Arby's motion to dismiss Plaintiffs' claims, except for the claims for violations of the Georgia Fair Business Practices Act ("GFBPA") and other state consumer laws. The Court granted Plaintiffs leave to replead those claims. Plaintiffs subsequently amended their Complaint (ECF No. 107), and Arby's filed a second motion to dismiss those claims (ECF No. 117). On June 28, 2017 the Court entered an order denying Arby's motion to dismiss the GFBPA claim, but dismissed the other state consumer law claims as redundant. (ECF No. 146).

---

[4] All docket references are to the Consolidated Consumer Docket: 1:17-cv-1035-AT.

## D. Discovery

The parties negotiated a preliminary scheduling order (Case Management Order No. 1, ECF No. 32). CMO No. 1 directed the parties to begin meeting and conferring regarding further case management orders. (*Id.*). Accordingly, the parties negotiated a protocol for the production of documents and ESI (ECF No. 85), an expert discovery protocol (ECF No. 99), a confidentiality agreement and protective order (ECF No. 83), and an order governing the admissibility of documents. (ECF No. 96).

The parties submitted and argued competing discovery statements regarding the length, timeline and amount of discovery, which resulted in the Court's Scheduling Order and Order Regarding Discovery Plan and Deposition Protocol. (Doc. 85). Throughout the course of the litigation the parties held numerous conferences to negotiate the scope of the requests, ESI, and Arby's document custodians. The parties addressed unresolved disputes in periodic status conferences before the Court.

The parties had begun exchanging written discovery at the time of settlement. Plaintiffs and Arby's had exchanged interrogatory responses. Additionally, Plaintiffs in the Consumer Case joined with the plaintiffs in the Financial Institution Case to propound 62 document requests on Arby's. With the help of a retained cybersecurity consultant, Plaintiffs began reviewing the documents produced by Arby's.

## E. Settlement Negotiations

During proceedings on the motions to dismiss, Plaintiffs and Arby's began to discuss a possible resolution of the Consumer Case. After resolution of the first motion to dismiss, the parties agreed to engage an experienced mediator, Ralph Levy of JAMS. The parties participated in a full-day mediation session with Mr. Levy on July 27, 2018. The parties reached agreement in principle on the terms of a settlement and executed a non-binding term sheet. No discussion of possible attorneys' fees occurred until agreement in principle on all other terms of the settlement had been reached. Rather, the parties conducted a later mediation regarding attorneys' fees on August 10, 2018, at which time the parties reached agreement in principle on attorneys' fees as well.

On August 14, 2018, the parties filed a joint motion for a thirty day stay of all proceedings in the Consumer Case to allow the parties to finalize and file a settlement agreement and motion to approve the settlement. On August 15, 2018, the Court granted the stay. At the Parties' request, the Court extended the stay until October 5, 2018. The parties have now executed a settlement agreement and a copy of that settlement agreement, with exhibits ("Settlement Agreement") is filed herewith.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A. The Class

The proposed Class for which provisional certification is now sought, solely for settlement purposes, includes all persons residing in the United States who used a debit or credit card to make a purchase at an affected Arby's restaurant during its exposure window.[5]    The exposure windows relating to each affected Arby's restaurant have varying durations ranging between October 8, 2016 and January 12, 2017.[6] The Class specifically excludes: (i) Arby's and its officers and directors; and (ii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.  (Settlement Agt., ¶ 1.8).[7]

---

[5] Pursuant to the Settlement Agreement, "'Class' means all persons residing in the United States who used a debit or credit card to make a purchase at an Affected Location during its Exposure Window."  (Settlement Agreement, ¶ 1.8).    The "Affected Locations" and their respective "Exposure Windows" are those listed in the public notification to consumers of the data breach posted by Arby's on April 14, 2017, at http://arbys.com/security ("Locations" tab).  (*Id.*, ¶¶ 1.1, 1.13).

[6] *See* http://arbys.com/security ("Locations" tab).

[7] Notice to the Class of the Settlement will include, inter alia, notification of the deadline by which members of the Class ("Class Members") seeking to exclude themselves from the Settlement may do so, as set out below.  At the Final Approval Hearing, the Plaintiffs will accordingly move for final certification of a *Settlement Class* consisting of all Class Members except:  (i) those who timely and validly request exclusion from the Settlement Class; and (ii) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads nolo contendere to any such charge.  (Settlement Agt. ¶ 1.27).  Members of

## B. The Settlement Benefits

### 1. Up to $2 Million in Settlement Funding

Under the terms of the Settlement Agreement, Arby's will fund up to $2 million for payment of the cost of benefits to Settlement Class Members. Specifically, Settlement Class Members who incurred a fraudulent charge on or a cancellation of their payment card subsequent to using that card at an Affected Location during its Exposure Window are eligible to receive reimbursement for documented, unreimbursed actual out-of-pocket expenses that were incurred as a result of the Security Incident and fall in one or more of the following categories:

- Costs and expenses spent addressing identity theft or fraud;

- Losses caused by restricted access to funds (i.e., costs of taking out a loan, ATM withdrawal fees);

- Preventative costs incurred from February 9, 2017 through the date of public announcement of the Settlement agreement, not to exceed $150.00 per Settlement Class Member, including cost of identity theft protection services, purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review;

- Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees;

- Unauthorized charges on credit or debit card that were not reimbursed; and

the Settlement Class are referred to in the Settlement Agreement and this memorandum as "Settlement Class Members." (*Id.*)

- Other documented losses that were not reimbursed.

In addition, those Settlement Class Members qualifying for expense reimbursement as set out above may make a claim for reimbursement of their time incurred by reason of the Data Breach as described. Those with supporting documentation may submit a claim for up to five hours, at $15 per hour, to compensate for time they spent remedying such impacts resulting from the Data Breach, and those who cannot document their time may self-certify the amount of time they spent remedying such impacts from the Data Breach, for up to two hours at $15 per hour.

Qualifying Settlement Class Members who submit valid claim forms and documentation will be eligible for reimbursement of expenses as described above, plus compensation for documented or undocumented time spent as described above, up to an aggregate maximum of $5,000.

### 2. Identity Theft Protection Services

In addition to the foregoing, any Settlement Class Member who is not already enrolled in an identity theft protection service will be eligible to enroll without charge in an identity theft protection service provided by Experian Consumer Services ("Experian") which provides periodic credit reports for review, credit report monitoring across all three credit bureaus, identity restoration assistance, and up to $1 million in identity theft insurance. Upon enrollment, coverage for such services shall be provided to the Settlement Class Member for a period of up to 24

months, provided that the aggregate amount fundable by Arby's for such identity theft protection service shall not exceed $300,000, in which case the period of protection provided by the identity theft protection service will be reduced to less than 24 months as necessary so as not to exceed that amount.

### 3. Confirmatory Discovery

Arby's has confirmed, under oath, that the following measures relating to consumer card security are currently in place:

- Arby's has designated a position within the company that is specifically responsible for overseeing information security compliance;

- Arby's has a written IT security policies addressing the security of its PCI DSS environment;

- Arby's has hired a third-party Qualified Security Assessor to conduct an annual penetration test of Arby's cardholder data environment that complies with the standards set forth by PCI DSS; and

- Arby's has implemented an annual security awareness training for its corporate and restaurant employees, which will include education and training regarding payment card data security and payment card data security best practices.

### C. Distribution Plan

Arby's shall fund payment of all approved claims for expense reimbursement and compensation for time spent, and of the cost of all approved claims for the identity theft protection service, up to an aggregate amount of $2,000,000 (the "Aggregate Cap"). Within the "Aggregate Cap," Arby's has agreed to fund the cost of identity protection services up to $300,000 (the "Identity Theft Protection Sub-

Cap"). (Settlement Agreement ¶2.1.2). In the event the aggregate amount of approved claims when added to the aggregate cost (after application of the Identity Theft Protection Sub-Cap) of the identity theft protection service exceeds the Aggregate Cap, the amount of each approved claim shall be reduced by a pro rata percentage such that Arby's liability to fund payments does not exceed the Aggregate Cap. If the total amount of funding required of Arby's under the Settlement Agreement is less than $2 million, Arby's shall retain any unfunded amount. (*Id.* ¶2.2.6).

Arby's will pay the costs of providing Class notice and administering the Settlement benefits. Arby's will pay these costs separate and apart from the up to $2 million in funding for the Settlement benefits. (Settlement Agt. ¶¶ 2.2.6, 2.3, 10.3).

### D. Proposed Notice Plan

Subject to the Court's approval, the parties propose a Notice Program consisting of publication notice and a settlement website. Advertisements will be placed in selected print magazines and on websites via internet banner ads. The plan for notice by publication is contained within the Peak Declaration. (Ex. 1-D). First, the Publication Notice will appear as an approximate one-third page ad unit once in Country Living and People. The Publication Notice will appear in both the print publications and their online digital replicas. Country Living has a circulation of 1,380,879 with approximately 11,934,000 readers. It is a monthly home magazine covering design, food, pets, gardening, and how-to projects focusing on "small-town

community" living. People magazine has a circulation of 3,411,860 with approximately 41,353,000 readers. It is a weekly entertainment magazine that features celebrity news, biographies and gossip.

Second, the Administrator will also publish notice via online internet banners on Facebook and the Google Display Network. Facebook is the largest social media platform in terms of both audience size and engagement, providing the capability of reaching millions of users daily. The Google Display Network is a vast ad network that reaches over 90% of Internet users. It creates advertising opportunities to over two million websites, including some of the most-visited websites on the internet. The Administrator's digital specialists will routinely monitor the campaign to analyze key campaign performance indicators (KPIs), such as click-through rates and costs per action. The Administrator will allocate placements to sites that have demonstrated successful KPIs throughout the duration of the campaign.

The Publication Plan is expected to generate approximately 185 million impressions. (*See* Peak Declaration ¶15 (Exhibit 1-D)). The impressions will be targeted to likely Class Members and delivered on both desktop and mobile devices. The online ads will include an embedded link to the Settlement Website.

The Publication Plan has been developed to reach approximately 70% of Class Members an average of 1.6 times. (*See id.* ¶ 23). A similar notice and publication plan was approved in the proposed consumer class action settlement stemming from the Wendy's data breach. (*See* Order Preliminarily Approving Settlement, *Jackson,*

*et al v. Wendy's International, LLC*, No. 6:16-cv-210-PGB-DCI (M.D. Fl. Aug. 23, 2018), ECF No. 146, attached as Exhibit 3).

The Settlement Administrator will also establish a settlement website in the form agreed to by the parties and the Court. In addition to the notices, the website will include information about the Settlement, related case documents, and the Settlement Agreement. (Settlement Agt. ¶ 4.2.3). Settlement Class Members will be able to submit claims electronically. (*Id.* ¶2.1.3(b)).

### E. Attorneys' Fees and Costs

Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees, costs, and expenses of up to $980,000 and reimbursement of costs and expenses of up to $35,000. Arby's will not oppose either request. As with costs of notice and administration, Arby's has agreed to pay any attorneys' fees, costs, and expenses awarded by the Court, up to the maximum amounts specified above, separate from the $2 million fundable for the cost of valid claims for benefits. (Settlement Agt. ¶8.2).

### F. Service Awards

Plaintiffs' Counsel will apply for, and Arby's has agreed not to oppose, service awards of up to $4,500 for each Representative Plaintiff[8] in recognition of their commitment to this case on behalf of the Settlement Class as set forth in the Settlement Agreement. (Settlement Agt. ¶8.3).

---

[8] Representative Plaintiffs are defined in Paragraph 1.21 of the Settlement Agreement.

### G. Release

As part of the Settlement, the parties have negotiated full mutual releases. (Settlement Agt. ¶7.2).

## IV.  <u>ARGUMENT</u>

### A.  The Proposed Settlement Warrants Preliminary Approval

Class settlement approval under Rule 23 is a two-step process. The Court must first determine whether the proposed settlement warrants preliminary approval. *See Melanie K. v. Horton*, No. 1:14-cv-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2015). After notice, the Court may more fully weigh the settlement's strengths and weaknesses at the final approval hearing. *Id.*

Both "strong judicial policy" and an "overriding public interest" favor settlements. *Meyer v. Citizens and Southern Nat'l Bank*, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988) (citation and internal quotations omitted). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court has broad discretion in approving a settlement; indeed, Rule 23(e) "provides no standard for the district judge to apply in considering a proposed settlement." *Id.*

A "district court may rely upon the judgment of experienced counsel for the parties . . . [and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007).

Courts within the Eleventh Circuit have used two different standards when considering whether to preliminarily approve a proposed class action settlement. Some courts have found that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts have applied the factors used at the final approval stage, known as the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The proposed Settlement warrants preliminary approval under both standards.

**B.     The Proposed Settlement Is the Result of Good Faith Negotiations Is Not Obviously Deficient, and Falls Within the Range of Reasonableness**

Preliminary approval is appropriate because the proposed Settlement is the product of good faith negotiations between informed counsel. *See In re Checking Account Overdraft*, 275 F.R.D. at 661. A mediator experienced in complex litigation assisted in the parties' settlement negotiations. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (experienced mediator diminishes possibility of collusion). The parties began discussing settlement after they had fully briefed Arby's initial motion to dismiss, and agreed to mediation only after the Court had ruled on the motion. The parties obtained further information about the merits of their case through discovery and throughout the course of settlement negotiations. Thus, the parties were able to closely evaluate the respective merits of their case and determine the appropriateness of a settlement.

The proposed Settlement is reasonable. The Settlement confers significant monetary benefits to qualifying Settlement Class Members, and it provides Class Members who are not already enrolled in identity theft protection services with the opportunity to enroll in preventative relief in the form of identity theft protection services from Experian.  In addition, Arby's agreed to confirmatory discovery to verify certain of its data security practices although it expressly denies that any given

security measure could have prevented the Data Breach. These benefits compare favorably with those of other settlements in data breach class actions. *See generally In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016). For instance, the Target databreach compromised the personal information of "nearly 100 million American consumers." *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL 14-2522 (PAM), 2017 WL 2178306, at *1 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018). There, Target agreed to pay a fund of $10 million to, among other things, reimburse consumers for all of their documented losses up to $10,000. *Id.* The district court reasoned that "[a]ll class members' fears of future harm are remedied both by the compensation available for purchase of credit-monitoring/identity-theft protection and by the steps Target agreed to take to secure its customers' data in the future." *See also In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048-1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses but no monitoring services); *see Bray v. GameStop Corp.*, No. 1:17-cv-01365-JEJ (D. Del.), Mot. for Preliminary Approval (ECF 41, at 3) (discussing confirmatory discovery taken to verify post-breach security measures) (motion granted on July 23, 2018) (ECF 42).

Additionally, the *Wendy's* settlement provides a useful comparison as the structure of the funds are similar, though not identical. One important difference is that this settlement provides a benefit lacking in *Wendy's*: qualifying Settlement

17

Class Members have the option to enroll in identity theft protection services for up to 24 months. *See generally Wendy's*, *supra* (*see also* Mot. for Prelim. Approval, attached as Exhibit 4).

**C.    The *Bennett* Factors Support Preliminary Approval**

**1.    The Settlement Benefits Outweigh the Uncertainty of Success at Trial**

The first *Bennett* factor is the likelihood of success at trial, weighed "against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Arby's denies any liability for Plaintiffs' claims. Although the Court largely denied Arby's two motions to dismiss, Arby's would surely argue that Georgia law has changed and, even if a duty were owed under Georgia law, would dispute whether it breached such a duty. *See generally McConnell v. Georgia Dep't of Labor*, 345 Ga. App. 669 (2018). Class certification is challenging in any case, and, as Arby's repeatedly argued, there is a paucity of data breach cases where certification of a consumer class outside the settlement context has been granted. *See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Even

supposing Plaintiffs achieved certification, "the trial process is always fraught with uncertainty." *See In re Motorsports*, 112 F. Supp. 2d at 1334. The proposed Settlement avoids all these uncertainties and provides the Settlement Class with timely, meaningful, and certain relief.

### 2. The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable

The second and third *Bennett* factors—whether the settlement falls within the range of possible recoveries and is fair, adequate and reasonable—can be considered together. *Burrows*, 2013 WL 10167232, at *6. In considering these factors, "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323; *see also Burrows*, 2013 WL 10167232, at *6 (noting that "even a settlement point below the range of possible recovery may qualify as fair, adequate, and reasonable"). Aside from fees and notice and administration costs, the proposed Settlement provides up to $2 million in benefits for qualifying Settlement Class Members to reimburse monetary losses and compensate for lost time, and to provide Settlement Class Members not already enrolled in an identity theft protection service with the opportunity to enroll in identity theft protection services provided by Experian for up to 24 months. The proposed Settlement also provides for confirmation of specified Arby data protection practices. As discussed above, these benefits compare favorably to settlements in other data breach cases that received court approval.

### 3. Continued Litigation Would Be Complex, Expensive, and Lengthy

A "[s]ettlement [that] will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits preliminary approval. *Lipuma*, 406 F. Supp. 2d at 1324 (quoting *Woodward v. NOR-AM Chemical Co.*, No. Civ. 94-0780-CB-C, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996)). Without settlement, Plaintiffs would have to successfully move for class certification. To that end, Plaintiffs would need to engage in substantial additional fact and expert discovery, and Plaintiffs would need to combat additional dispositive motions before trial. The necessary investment of time and resources in a trial and appeals would be significant, all without the guarantee of any relief. The proposed Settlement, on the other hand, provides the Settlement Class with guaranteed and immediate recovery. This factor therefore weighs in favor of preliminary approval. *See Columbus Drywall*, 258 F.R.D. at 559-560 ("Plaintiffs [would] not have any guarantee that they will receive a larger recovery from the Settling Defendants were they to forego the settlement offer").

### 4. The Substance and Degree of Opposition to the Settlement

Courts do not consider this factor until notice has not been provided to Class Members. *See Columbus Drywall*, 258 F.R.D. at 560.

**5. The Stage of Proceedings Allowed Plaintiffs to Evaluate the Merits of the Case and the Settlement Relief**

The purpose of this factor is "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Before filing the Consolidated Complaint, Plaintiffs' Counsel devoted significant time to investigate the facts related to the data breach and to research possible claims. After filing the Complaint, Plaintiffs' Counsel opposed two motions to dismiss. The parties had engaged in protracted negotiations and argument over the scope and length of discovery. At the time of settlement, the parties had exchanged interrogatory responses, and Arby's had begun producing a substantial number of documents. This work, combined with their experience in successfully prosecuting similar data breach cases, gave Plaintiffs' Counsel the opportunity to sufficiently evaluate the merits of the case and weigh the potential relief.

**D.    The Court Should Certify the Proposed Class**

When a settlement is reached before class certification, the court must determine whether the proposed class is appropriate for certification for purposes of settlement. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2014); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997). Certification of a settlement class is appropriate when the four requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See Columbus Drywall*, 258 F.R.D. at 553; *see also* MANUAL FOR COMPLEX LITIGATION § 21.632.

District courts have "broad discretion" to determine whether to certify a settlement class. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). As set forth above, courts routinely find that similar data breach class action settlements are appropriate, and certification for settlement purposes is appropriate in this case as well.

## 1. The Class Satisfies the Requirements of Rule 23(a)

### i. Numerosity

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class," not "that joinder is impossible." *Columbus Drywall*, 258 F.R.D. at 554 (quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997)). "Practicability of joinder depends on factors such as the size of the class, ease of identifying its members and determining their addresses, ease of making service on them if joined, and their geographic dispersion." *Id.* Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Insurance*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Through discovery, Plaintiffs learned that the Class consists of several million U.S. Arby's customers whose payment card data may have been exposed. Numerosity for purposes of a certifying a class for settlement is easily satisfied.

## ii. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Id. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury," such that "all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 350 (2011). The common questions must "generate common answers apt to drive the resolution of the litigation." Id. (internal quotations omitted). "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Thus, the commonality element is generally satisfied where, as here "a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Products, Inc.*, 295 F.R.D. 671, 685 (S.D. Ga. 2013) (internal quotations omitted).

The common questions of law and fact that arise from the Data Breach include: (1) whether Arby's failed to adequately protect Class Members' Customer Data; (2) whether Arby's conduct constituted unfair methods of competition and unfair, deceptive, or unlawful acts actionable under the GFBPA; (3) whether Arby's had a legal duty to adequately protect Class Members' Customer Data; (4) whether Arby's breached that legal duty; and (5) whether Arby's knew or should have known that Customer Data was vulnerable to attack. "These common issues all center on [Arby's] conduct, satisfying the commonality requirement." *Home Depot*, 2016 WL

6902351, at *2; *see also In re Countrywide*, 2009 WL 5184352, at *3; *In re Heartland Payment Systems*, 851 F. Supp. 2d at 1059 ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

Plaintiffs thus submit that commonality for purposes of a certifying a class for settlement is satisfied as well.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *Id*. This requirement "measure[s] whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). "[F]actual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal quotations omitted). Rather, typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Terrill*, 295 F.R.D. at 686). The Plaintiffs' claims are typical of those of the Class because they arise from the same data breach, and because they are also based on the same legal theory that Arby's failed to protect Customer Data. *See Home Depot*, 2016 WL 6902351, at *2.[9]

---

[9] In the Consolidated Amended Complaint, Plaintiff Rutters alleged that he made purchases at an Arby's restaurant located at 2600 S. Orange Avenue, Orlando, Florida 32806 (store number 5927) on October 27, 2016 and January 14, 2017. (*Id.* ¶41). The exposure window for this location was November 17, 2016 through

Plaintiffs thus submit that typicality for purposes of a certifying a class for settlement is satisfied as well.

### iv. Adequacy of Representation

The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other the class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. "The fact that the named plaintiffs may have suffered greater damages does not indicate that named plaintiffs possess interests antagonistic to other plaintiffs." *Id.*

The Plaintiffs have fulfilled their responsibilities by working with their counsel to prepare and file complaints against Arby's, producing documents related to the breach, responding to written discovery, and otherwise assisting in the prosecution of the litigation. They do not have any interests adverse to the interests of the other Class Members as their claims arise out of the same Data Breach. In addition, this Court previously appointed Plaintiffs' Counsel based on their qualifications and experience. The adequacy requirement is satisfied.

### 2. The Class Satisfies the Requirements of Rule 23(b)(3)

---

January 12, 2017. During the course of discovery, the Parties confirmed via bank records that Plaintiff Rutters made another purchase at this location inside its exposure window on December 22, 2017.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Where, as here, a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

### i. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Terrill*, 295 F.R.D. at 688. Predominance does not require that all questions of law or fact be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted).

Common questions of fact and law described above predominate over any individualized issues for purposes of settlement. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues in similar settlement contexts. *See, e.g., Home Depot*, 2016

WL 6902351, at *2; *In re Countrywide*, 2009 WL 5184352, at *6-7; *In re Heartland Payment Systems.*, 851 F. Supp. 2d at 1059.

### ii. Superiority

Because of the common issues that predominate in this case, a class action is superior to other methods for adjudicating these claims. *See In re Anthem, Inc. Data Breach Litigation*, 15-MD-02617-LHK, 2018 WL 3872788, at *11 (N.D. Cal. Aug. 15, 2018) (citing *Home Depot* and *Target* in finding superiority). Judicial economy is best served for purposes of settlement by resolving Plaintiffs' claims as a class. See Terrill, 295 F.R.D. at 697 ("A single, coordinated proceeding is superior to hundreds of discrete and disjointed suits addressing the same facts and legal issues.").

### E. The Court Should Appoint Lead and Liaison Counsel as Class Counsel

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court appointed Co-Lead and Co-Liaison Counsel based on their qualifications and experience. *See* ECF No. 48. Since then, Co-Lead and Co-Liaison Counsel have committed substantial time and resources to obtain a favorable result in a timely fashion. Co-Lead and Co-Liaison Counsel have worked to demonstrate satisfaction

of Rule 23(g)'s requirements, and they respectfully request that the Court appoint them to serve as Class Counsel.

**F.     The Court Should Approve the Proposed Notice Program**

Rule 23(e)(1)(B) requires that the court direct notice in a reasonable manner to all class members who would be bound by the proposed settlement. *Id.* Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." *Id.* "[W]hat amounts to reasonable efforts under the circumstances is for the Court to determine after evaluation of the available information and the possible methods of identification." *In re Domestic Air*, 141 F.R.D. 535, 539 (N.D. Ga. 1992). The best notice practicable must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id.* at 553 (internal quotations omitted).

Here, individual notice is not practicable because the data identifying the names and addresses for class members does not exist in Arby's business records, and it would be cumbersome and cost-prohibitive to obtain from other sources. "Neither due process nor Rule 23 requires that class members receive actual notice, and publication notice is appropriate where class members' names and addresses

cannot be determined with reasonable efforts." *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)).

Nonetheless, the Administrator developed the proposed digital Notice Program to reach approximately 70% of Class Members an average of 1.6 times. (*See* Peak Declaration ¶ 23). Finally, Defendant will provide the notification required by the Class Action Fairness Act, 28 U.S.C. § 1715. As designed, the Notice Program constitutes the best notice practicable and will satisfy due process.

The Notice will concisely and clearly state in plain, easily understood language the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses, (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notice also provide further details about the Settlement, its benefits, and how to obtain further assistance.

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the settlement, provisionally certify the Class for purposes of settlement, appoint Co-Lead and Co-Liaison Counsel as Class Counsel, authorize notice to the Class of the

proposed settlement in the form and manner described in this motion, further stay

all other proceedings in the Consumer Case, and schedule a Final Approval Hearing.

Dated: October 5, 2018

Respectfully Submitted,

/s/ J. Cameron Tribble
**BARNES LAW GROUP, LLC**
Roy E. Barnes
Ga. Bar No. 039000
John R. Bevis
Ga. Bar No. 056100
J. Cameron Tribble
Ga. Bar No. 754759
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
Fax: (770) 227-6373
roy@barneslawgroup.com
bevis@barneslawgroup.com
ctribble@barneslawgroup.com

/s/ Timothy J. Peter
**FARUQI & FARUQI, LLP**
Robert W. Killorin
Ga. Bar No. 417775
Stuart J. Guber
Ga. Bar No. 141879
Timothy J. Peter *

101 Greenwood Avenue
Jenkintown, Pennsylvania 19046
Tel:  (215) 277-5770
Fax:  (215) 277-5771
rkillorin@faruqilaw.com
sguber@faruqilaw.com
tpeter@faruqilaw.com

*Co-Lead Counsel*
*for Plaintiffs and the Proposed Class*
*\*Pro Hac Vice*

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John Yanchunis *
Marisa Glassman*
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com
mglassman@forthepeople.com

**EVANGELISTA WORLEY, LLC**
David J. Worley
Ga. Bar No. 776665
James M. Evangelista
Ga. Bar No. 707807
8100A Roswell Road, Suite 100
Atlanta, Georgia 30350
Tel: (404) 205-8400
Fax: (404) 205-8395
jim@ewlawllc.com
david@ewlawllc.com

*Co-Liaison Counsel*
*for Plaintiffs and the Proposed Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING** was prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(C).

This 5th day of October, 2018.

*/s/ J. Cameron Tribble*
J. Cameron Tribble

*Co-Liaison Counsel*
*for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2018, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

BARNES LAW GROUP, LLC


*/s/ J. CAMERON TRIBBLE*
J. Cameron Tribble
Ga. Bar No. 754759
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
Fax: (770) 227-6373
ctribble@barneslawgroup.com