EXHIBIT 1 – SETTLEMENT AGREEMENT AND RELEASE

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement"), dated as of October 5, 2018, is made and entered into by and among the following Parties: (i) Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters ("Representative Plaintiffs"), individually and on behalf of the Class, by and through John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group; James M. Evangelista and David J. Worley of Evangelista Worley LLP; Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC; and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP ("Class Counsel"); and (ii) Arby's Restaurant Group, Inc. ("Arby's"), by and through its counsel of record, lead counsel Douglas H. Meal of Ropes & Gray LLP.

## RECITALS

1.01.  On March 22, 2017, in the United States District Court for the Northern District of Georgia (the "Court"), Jacqueline Weiss and Joseph Weiss filed an initial complaint in an action styled *Weiss v. Arby's Restaurant Group, Inc.,* Case No. 1:17-cv-1035-AT, and on April 28, 2017, in the same Court, Ashley Russell filed an initial complaint in a separate action styled *Russell v. Arby's Restaurant Group, Inc.*, Case No. 1:17-cv-1529-AT, which actions were subsequently consolidated under the caption *In re: Arby's Restaurant Group, Inc. Data Security Litigation Consolidated Consumer Case*, Case No. 1:17-CV-1035-AT (the "Litigation"). On July 21, 2017, a Consolidated Class Action Complaint was filed in the Litigation adding new plaintiffs, Brett Barnes and Burnell Rutters. On August 24, 2017, Arby's moved to dismiss the Consolidated Class Action Complaint, arguing that complaint failed to state a claim for each of the causes of action. On March 5, 2018, the Court entered an Order denying Arby's motion to dismiss the claims for negligence, negligence per se, declaratory relief, breach of implied contract, and unjust enrichment. The Court dismissed the Georgia Fair Business Practices Act ("GFBPA") claim with

-1-

leave to amend to replead to address the issue of reliance.   The Court also dismissed an accompanying claim for violation of the state consumer protection acts of Tennessee, Connecticut and Florida with leave to replead the claims in separate individual counts.

1.02.   On March 19, 2018, Representative Plaintiffs filed the First Amended Consolidated Class Action Complaint (the "Complaint"), which repleaded the GFBPA claim and the claims for violation of the state consumer protection acts of Tennessee, Connecticut and Florida.

1.03.   The Complaint asserts claims against Arby's for breach of implied contract, negligence, negligence per se, unjust enrichment, declaratory judgment, violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., violations of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq., violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., and violation of the Tennessee Consumer Protection, Tenn. Code Ann. §§ 47-18-101 et seq., arising out of the "Security Incident" (defined in ¶ 1.22 below).

1.04.   On April 5, 2018, Arby's moved to dismiss the Complaint with respect to the newly-repleaded GFBPA claims and state consumer protection act claims.   The Court denied Arby's motion to dismiss the GFBPA claim on June 28, 2018, finding that Representative Plaintiffs sufficiently pled reliance. The Court dismissed the claims for violations of the state consumer protection acts of Tennessee, Connecticut and Florida as redundant.

1.05.   Arby's denies all material allegations of the Complaint.   Arby's specifically disputes that it is liable in any way for the Security Incident and that Representative Plaintiffs and putative class members are entitled to any relief from Arby's.   Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Arby's has agreed to settle this Litigation on the terms set forth in this Agreement, subject to Court approval.

1.06.    This Agreement resulted from good faith, arm's-length settlement negotiations, including mediation sessions on two days before Ralph Levy, Esq.  Prior to this mediation, the Parties engaged in extensive discovery during which Arby's provided voluminous documents and data to Class Counsel, and the Representative Plaintiffs produced documents to Arby's counsel. The Parties also participated in numerous direct discussions about possible resolution of this Litigation.

1.07.    Class Counsel represent that they conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the putative class in the Litigation.  Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this Litigation, and the substantial benefits to be received by the Settlement Class pursuant to this Agreement, that a settlement with Arby's on the terms set forth in this Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class.

1.08.    The Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any of the Parties except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any of the Parties to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

1.09.    The settlement contemplated by this Agreement is subject to preliminary and final approval by the Court, as set forth herein.  This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all claims and causes of action asserted, or that

-3-

could have been asserted, against Arby's and the other Released Persons (as defined in ¶¶ 1.19, 1.20 and 1.29 below) arising out of or relating to the Security Incident, by and on behalf of the Representative Plaintiffs and Settlement Class Members (as defined in ¶¶ 1.21 and 1.28 below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States.

## 1.  DEFINITIONS.

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1.    "Affected Location" means a location listed in the notification posted by Arby's on April 14, 2017, on the following website (a copy of which list of locations has been provided by Arby's to Class Counsel in a letter from Douglas H. Meal to John A. Yanchunis dated October 4, 2018): http://arbys.com/security/ ("Locations" tab).

1.2.    "Approved Claim" means a Settlement Claim approved by the Settlement Administrator pursuant to ¶ 2.2 of this Settlement Agreement.

1.3.    "Arby's" means Arby's Restaurant Group, Inc.

1.4.    "Claims Administration" means the processing of Claim Forms received from Settlement Class Members and the processing of  Settlement Benefits on Approved Claims by or as directed by the Settlement Administrator.

1.5.    "Claims Deadline" means the deadline by which Settlement Class Members must submit any Settlement Claims.

1.6.    "Claim Form" shall mean the claim form attached as Exhibit A, or a claim form approved by the Court that is substantially similar to Exhibit A.

1.7.    "Claims Period" shall mean the time for Settlement Class Members to submit claims, running from the commencement of the Notice Program through the Claims Deadline.

1.8.    "Class" means all persons residing in the United States who used a debit or credit card to make a purchase at an Affected Location during its Exposure Window.  The Class specifically excludes: (i) Arby's and its officers and directors; and (ii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.

1.9.    "Class Counsel" means John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group, and James M. Evangelista and David J. Worley of Evangelista Worley LLP, together with Lead Counsel.

1.10.    "Class Member" and "Class Members" mean all persons who fall within the definition of the Class.

1.11.    "Costs of Settlement Administration" means all actual costs associated with or arising from Claims Administration and the Notice Program as set forth in ¶ 4.

1.12.    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.1 herein have occurred and been met.

1.13.    "Exposure Window" means the date range associated with each Affected Location in the notification posted by Arby's on April 14, 2017 on the following website (a copy of which list of date ranges for each Affected Location has been provided by Arby's to Class Counsel in a letter from Douglas H. Meal to John A. Yanchunis dated October 4, 2018): http://arbys.com/security/ ("Locations" tab).

1.14.    "Judgment" means a final order and judgment rendered by the Court that, among other things, finally approves the Settlement Agreement and is consistent with ¶¶ 3.2, 8.2 and 8.3 and is in the form of or materially in the form of the proposed Final Approval Order and Judgment attached as Exhibit F.

1.15.   "Lead Counsel" means Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP.

1.16.   "Parties" means, collectively, Arby's and Representative Plaintiffs, individually and on behalf of the Class.

1.17.   "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and further includes, without limitation, names, addresses, payment card numbers, expiration dates, security and service codes, and any other payment card related information.

1.18.   "Preliminary Approval Order" means an order preliminarily approving the Settlement Agreement and, among other things, ordering that notice be provided to the Class, in the form of or materially in the form of the proposed Preliminary Approval Order attached as Exhibit E.

1.19.   "Released Persons" means Arby's Restaurant Group, Inc., and its current and former parent companies, subsidiaries, affiliated individuals and entities, divisions, legal successors, predecessors (including companies they have acquired, purchased or absorbed), assigns, and joint venturers, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnitees, insurers, and reinsurers, past, present, and future, and all persons acting under, by through, or in concert with any of them.

1.20.   "Released Claims" shall mean any and all injuries, losses, damages, costs, expenses, compensation, claims, suits, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action, and liabilities of any and every kind, nature, type, description,

or character, whether known and unknown, contingent or vested, in law or in equity, based on direct or vicarious liability, and regardless of legal theory, of any Settlement Class Member that: (a) relate to, are based on, concern, or arise out of any allegation that Arby's or any of the other Released Persons has any liability for the Security Incident; or (b) were asserted or could have been asserted (whether individually or on a class-wide basis) in the Litigation, including without limitation, any claims alleging negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, and/or failure to provide adequate notice pursuant to any breach notification statute or common law duty, and any federal, state, or local statutory or regulatory claims, including, but not limited to, consumer protection laws and unfair and deceptive trade practice laws or other common laws or statutes of all fifty (50) states and the United States, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Security Incident (including but not limited to the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation and/or Complaint.  The Released Claims shall not release any Settlement Class Member's right to enforce this Settlement Agreement. The Released Claims shall be accorded the broadest preclusive scope and effect permitted by law against the Settlement

Class Members and this definition of Released Claims is a material term of this Settlement Agreement.

1.21.   "Representative Plaintiffs" means Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes, and Burnell Rutters.

1.22.   "Security Incident" means the third-party criminal cyberattack affecting certain of Arby's corporate-owned restaurants involving the placement of malware on point of sale systems targeting customers' payment card information that Arby's reported in 2017, and that is the subject of the Litigation and Complaint.

1.23.   "Settlement Administrator" means KCC Class Action Services, LLC ("KCC"), as agreed by the Parties, which is experienced in formulating and effectuating notice programs and administering class action claims, generally and specifically those of the type provided for and made in data breach litigation.

1.24.   "Settlement Agreement" or "Agreement" means this agreement.

1.25.   "Settlement Benefits" mean the amounts potentially recoverable and the protection potentially receivable by a Settlement Class Member under ¶ 2.1 of this Settlement Agreement.

1.26.   "Settlement Claim" means a claim or request by means of a Claim Form for any of the Settlement Benefits.

1.27.   "Settlement Class" means all Class Members except: (i) those who timely and validly request exclusion from the Settlement Class; and (ii) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.28.   "Settlement Class Member" and "Settlement Class Members" mean all persons who fall within the definition of the Settlement Class.

1.29.   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with and release of the Released Persons, or might have affected his or her decision not to object to this Settlement Agreement and/or to participate in the Settlement Class.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the

Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement.

1.30. "Valid Claim Form" means a Claim Form submitted by a Settlement Class Member that includes an Approved Claim.

## 2. COMPENSATORY RELIEF.

2.1. <u>Amounts Recoverable and Protection Receivable.</u>

2.1.1. Settlement Class Members who incurred a fraudulent charge on or a cancellation of their payment card subsequent to using that card at an Affected Location during its Exposure Window are eligible to receive reimbursement for documented, unreimbursed actual out-of-pocket expenses that were incurred as a result of the Security Incident and fall in one or more of the following categories: (i) costs and expenses spent addressing identity theft or fraud; (ii) losses caused by restricted access to funds (i.e., costs of taking out a loan, ATM withdrawal fees); (iii) preventative costs incurred from February 9, 2017 through the date of public announcement of the Settlement Agreement, not to exceed $150.00 per Settlement Class Member, including costs of identity theft protection services, purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review; (iv) late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees; (v) unauthorized charges on credit or debit cards that were not reimbursed; and (vi) other documented losses that are not otherwise reimbursed. In addition, Settlement Class Members qualifying for expense reimbursement under this ¶ 2.1.1 may make a claim for reimbursement of their time incurred by reason of the Security Incident as described and to the extent provided below:

(a)    <u>Self-Certified Time</u>.  Settlement Class Members eligible for expense reimbursement as described in ¶ 2.1.1 but who *cannot* separately document their time may self-certify the amount of time they actually spent remedying the out-of-pocket losses they incurred as a result of the Security Incident for which they are eligible to be reimbursed ("Self-Certified Time") and, upon submission of valid self-certification supporting the foregoing, be eligible for an amount of $15 per hour for up to two hours of such Self-Certified Time (for a total of up to $30).

(b)    <u>Documented Time</u>.  Settlement Class Members eligible for expense reimbursement as described in ¶ 2.1.1 and who *can* document their time may submit documentation of the amount of time they actually spent remedying the out-of-pocket losses they incurred as a result of the Security Incident for which they are eligible to be reimbursed ("Documented Time") and, upon submission of valid documentation supporting the foregoing, be eligible for an amount of $15 per hour for up to five hours of such Documented Time (for a total of up to $75).

(c)    No Settlement Class Member's aggregate reimbursement for any expense under ¶ 2.1.1 together with any compensation for time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b) may exceed $5,000 (the "Reimbursement Cap").

2.1.2.   Settlement Class Members who are not already enrolled in an identity theft protection service are eligible to enroll without charge to the Settlement Class Member in an identity theft protection service provided by Experian Consumer Services ("Experian") which provides periodic credit reports for review, credit report monitoring across all three credit bureaus, identity restoration assistance, and up to $1 million in identity theft insurance.  Upon enrollment, coverage for such services shall be provided to the Settlement Class Member for a period of up to

24 months, provided that the aggregate amount included in the Arby's Payment with respect to all Approved Claims for such identity theft protection service shall not exceed $300,000 (the "Identity Theft Protection Sub-Cap"), it being understood and agreed that depending on the number of such Approved Claims the period of protection provided by such service shall be reduced to less than 24 months by the Settlement Administrator in order to prevent the aggregate amount included in the Arby's Payment with respect to such services from exceeding the Identity Theft Protection Sub-Cap.

       2.1.3.   Settlement Class Members seeking any benefit under ¶ 2.1.1 or ¶ 2.1.2 must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or submitted electronically in accordance with the requirements for electronic submission of a Claim Form) on or before the Claims Deadline.

       (a)     Settlement Claims submitted after the Claims Deadline will not be timely and will not qualify for approval as set forth in ¶¶ 2.1-2.2 and will be rejected.  The Claims Deadline shall be set by the Court in the Preliminary Approval Order.  The parties propose a Claims Deadline that is the 180th day after the commencement of the Notice Program pursuant to ¶ 4. 6.

       (b)     The Claim Form must be verified by the Settlement Class Member with a statement that his or her Settlement Claim is true and correct, to the best of his or her knowledge and belief and is being made under penalty of perjury. Notarization of the Claim Form shall not be required. The Claim Form may be completed electronically in accordance with the requirements for electronic submission of a Claim Form.  Documentation, where required to qualify for a Settlement Benefit, may be submitted electronically in accordance with procedures for electronic Claim Form submission and failure to provide such supporting documentation as

requested on the Claim Form shall result in denial of the Settlement Claim in question to the extent it claims such Settlement Benefit.

      (c)  Without limitation as to any other requirement, condition or procedure under this Agreement:

      (i)  For any Settlement Claim that claims expense reimbursement under ¶ 2.1.1, the Settlement Class Member must submit with the Claim Form reasonable documentation to support that the out-of-pocket expenses claimed were incurred as a result of the Security Incident and fall in one or more of the categories enumerated in ¶ 2.1.1.

      (ii)  For any Settlement Claim that claims compensation for Self-Certified Time under ¶ 2.1.1(a), the Settlement Class Member must represent, on the Claim Form, that the time spent was incurred remedying the out-of-pocket losses they incurred a result of the Security Incident for which they are eligible to be reimbursed under ¶ 2.1.1.

      (iii)  For any Settlement Claim that claims compensation for Documented Time under ¶ 2.1.1(b), the Settlement Class Member must represent, on the Claim Form, that the time spent was incurred remedying the out-of-pocket losses they incurred a result of the Security Incident for which they are eligible to be reimbursed under ¶ 2.1.1, and the documentation required to be submitted to support such Settlement Claim shall be submitted with the Claim Form and shall include, but is not limited to, the following documents to the extent reasonably related to the claimed time spent:  phone records, email records, correspondence with financial institution, police departments or governmental agencies, and documents evidencing fraud.

      (iv)  For any Settlement Claim that requests enrollment in the identity theft protection service under ¶ 2.1.2, the Settlement Class Member must represent, on the Claim Form, that the Settlement Class Member is not already enrolled in an identity theft protection service.

  2.2. <u>Claims Process</u>.  A Settlement Claim as to a Settlement Benefit shall be deemed an Approved Claim, and a Claim Form shall be deemed a Valid Claim Form, only if and only to the

extent both the Settlement Claim and Claim Form in question meet all requirements of ¶ 2.1 that are applicable to such Settlement Claim as to such Settlement Benefit and such Claim Form.  The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether and if so to what extent a Settlement Claim is to be deemed an Approved Claim and a Claim Form is to be deemed a Valid Claim Form under the preceding sentence of this ¶ 2.2.

   2.2.1.   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation or information to determine whether and if so to what extent the Settlement Claim included in such Claim Form should be deemed an Approved Claim, the Settlement Administrator shall request additional information (i.e., Claim Supplementation) and give the claimant 30 days to provide the requested Claim Supplementation before rejecting the claim.  Requests for Claim Supplementation shall be made within 30 days after the Claims Deadline.  In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (*e.g.,* illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than 180 days from the Effective Date.  If the requested Claim Supplementation is not timely provided, then the Claim Form will be deemed invalid and the Settlement Claim shall not be deemed an Approved Claim.

   2.2.2.   Prior to determining that any Settlement Claim is or is not to be deemed an Approved Claim and any Claim Form is or is not to be deemed a Valid Claim Form under ¶ 2.2, the Settlement Administrator shall offer Arby's and Class Counsel an opportunity to review and comment on any or all Settlement Claims and Claim Forms and provide such relevant information to the Settlement Administrator as Arby's may wish to provide.  The Parties in any event agree

-14-

that no determination that any Settlement Claim is to be deemed an Approved Claim or any Claim Form is to be deemed a Valid Claim Form shall be deemed to constitute a finding against or in favor of any Party, or an admission or waiver by any Party, as to any matter of fact, law or evidence having any collateral effect on any claim in the Litigation or in any other proceeding before any other forum or authority, and the Parties further agree that no such determination that any Settlement Claim is to be deemed an Approved Claim or any Claim Form is to be deemed a Valid Claim Form shall be submitted to or admissible in any other proceeding or before any other forum or authority.

2.2.3.   Following expiration of the Claims Deadline and all deadlines applicable to all requests for Claim Supplementation, the Settlement Administrator shall within 30 days (which shall be the "Determination Date") determine whether and if so to what extent each Settlement Claim shall be deemed an Approved Claim.

2.2.4.   The Settlement Administrator shall provide periodic updates to Class Counsel and Arby's regarding Claim Form submissions beginning within thirty business days after the commencement of the Notice Program continuing on a monthly basis thereafter through the Claims Deadline. Within 15 days of the Determination Date, the Settlement Administrator shall determine, and shall deliver a detailed report (the "Calculation Report") to the Parties setting out the Settlement Administrator's determinations of, the following:

(a)     for those Approved Claims as to which the claimant is entitled to expense reimbursement under ¶ 2.1.1,

(i)     the amount of such reimbursement and (if applicable) compensation for time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b) to be made on each such Approved Claim, and

(ii)    the aggregate amount of such reimbursement and compensation fundable by Arby's for payments to be made on such Approved Claims,

        (iii)     in each case after giving effect to the extent necessary to both the Reimbursement Cap and the Aggregate Cap;

(b)     for those Approved Claims as to which the claimant is entitled to enroll in the identity theft protection service under ¶ 2.1.2,

        (i)     the number of months of identity theft protection service to which each claimant is entitled, and

        (ii)     the aggregate amount fundable by Arby's for the identity theft protection service,

        (iii)     in each case after giving effect to the extent necessary to both the Aggregate Cap and the Identity Theft Protection Sub-Cap; and

(c)     the total of the aggregate amounts fundable by Arby's under this ¶ 2.2.4 (the "Arby's Payment").

2.2.5.   Upon issuance of the Calculation Report, Arby's and Class Counsel shall have 14 days to challenge such calculation of the Arby's Payment by filing an appropriate motion with the Court, absent which the amount of the Arby's Payment shall be deemed final.  In the event that a motion challenging the calculation is so filed with the Court, the amount of the Arby's Payment shall not be deemed final and distribution of Settlement Benefits hereunder shall be suspended (unless expressly otherwise agreed by the Parties) until final judicial resolution of the challenge (including any appeals).

2.2.6.   <u>Aggregate Cap</u>.   Arby's shall fund payment of all Approved Claims for expense reimbursement under ¶ 2.1.1 and compensation for time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b) and payment for the cost of the identity theft protection service under ¶ 2.1.2, provided however that Arby's liability for funding such payments shall not exceed $2,000,000 (the "Aggregate Cap"), and provided further that Arby's liability for funding payment for the cost of the identity theft protection service under ¶ 2.1.2 shall not exceed the Identity Theft Protection Sub-Cap.  If the aggregate amount of the funding required of Arby's under this ¶ 2.2.6 is less than

-16-

the Aggregate Cap, Arby's shall retain any unfunded amount.  In no event shall Arby's liability to fund payments under this ¶ 2.2.6 exceed the Aggregate Cap, it being understood and agreed in this regard that in the event the sum of the aggregate amount fundable for Approved Claims for expense reimbursement under ¶ 2.1.1 and compensation for time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b), plus the aggregate amount fundable (after application of the Identity Theft Protection Sub-Cap) for the identity theft protection service under ¶ 2.1.2, equals an amount that exceeds the Aggregate Cap, the amount of each Approved Claim for expense reimbursement under ¶ 2.1.1  and compensation for time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b) shall be reduced by a pro rata percentage such that Arby's liability to fund payments under this ¶ 2.2.6 does not exceed the Aggregate Cap.

2.3.    <u>Settlement Expenses</u>.  All Costs of Settlement Administration shall be paid to the Settlement Administrator and borne alone by Arby's.

2.4.    <u>Confirmatory Discovery</u>.  On September 7, 2018, Arby's provided confirmatory discovery to Class Counsel in the form of an interview, administered under oath and transcribed, that was sufficient to verify that the following measures relating to payment card system security were then in place: (a) Arby's had designated a position within the company that is specifically responsible for overseeing information security compliance; (b) Arby's had written IT security policies addressing the security of its PCI DSS environment; (c) Arby's had hired a third-party Qualified Security Assessor to conduct an annual assessment of Arby's compliance with PCI DSS and hired a penetration testing company to conduct an annual penetration test of Arby's cardholder data environment (Qualified Security Assessor means an independent security organization that has been qualified by the PCI Security Standards Council to assess an entity's adherence to PCI DSS; penetration test means a manual process that complies with the standards set forth by PCI DSS for penetration testing); (d) Arby's had implemented annual security awareness training for its

corporate and in-restaurant employees, which includes education and training regarding payment card data security and payment card data security best practices.  Nothing in or about the provisions of this ¶ 2.4 shall create any rights, contractual or otherwise, to any present or future remedy, including injunctive, declaratory or equitable, requiring Arby's to make or maintain any particular processes or procedures in the future.

## 3.  PRELIMINARY APPROVAL AND FINAL APPROVAL

3.1.    As soon as practicable after the execution of the Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the Settlement Agreement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit E, or an order substantially similar to such form, requesting, *inter alia*:

(a)    certification of the Class for settlement purposes only;

(b)    preliminary approval of the Settlement Agreement;

(c)    appointment of Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP as Lead Counsel;

(d)    appointment of John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group, and James M. Evangelista and David J. Worley of Evangelista Worley LLP, together with Lead Counsel, as Class Counsel;

(e)    appointment of the Representative Plaintiffs as Class representatives;

(f)    approval of the Notice Program, including the Publication Plan set forth in the Declaration of Carla Peak of KCC attached hereto as Exhibit D;

-18-

(g)     approval of a publication notice form ("Publication Notice") substantially similar to the one attached hereto as Exhibit B and long form notice ("Long Notice") substantially similar to the one attached hereto as Exhibit C, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making Settlement Claims to the extent contemplated herein, and the date, time and place of the final approval hearing;

(h)     appointment of the Settlement Administrator; and

(i)     approval of a Claim Form substantially similar to that attached hereto as Exhibit A.

3.2.    The proposed Judgment that shall be filed with the motion for final approval shall be in a form as set forth in Exhibit F as agreed upon by Arby's and Class Counsel.  Such proposed Judgment shall, among other things:

(a)     Determine that the Settlement Agreement is fair, adequate, and reasonable;

(b)     Finally certify the Settlement Class for settlement purposes only;

(c)     Determine that the Notice Program satisfies due process requirements;

(d)     Dismiss all claims in the Complaint with prejudice;

(e)     Bar and enjoin the Settlement Class Members from asserting any of the Released Claims; and

(f)     Release and forever discharge Arby's and the other Released Persons from the Released Claims, as provided for in this Settlement Agreement.

**4.  NOTICE PROGRAM.**

4.1.    Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause notice to be disseminated to the Class pursuant to the Preliminary Approval Order and ¶¶ 4.1 to 4.6 of this Settlement Agreement (the "Notice Program"), and in order to comply with all applicable laws, including, but not limited to the Due Process Clause of the United States Constitution and FED. R. CIV. P. 23, and be effectuated pursuant to provisions set forth below, the costs of which shall be Costs of Settlement Administration.

4.2.    Notice shall be provided to Class Members via publication notice and notice on a dedicated settlement website.

4.2.1.   Within 45 days after the Preliminary Approval Order, Publication Notice, as set forth in Exhibit B, shall be provided to Class Members in accordance with the Publication Plan set forth in Exhibit D.

4.2.2.   Within 45 days after the Preliminary Approval Order, Arby's shall post a link to the settlement website accessible through the "Payment Card Notice" link on www.Arbys.com for the entire Claims Period.

4.2.3.   Within 45 days after the Preliminary Approval Order, the Settlement Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the Claims Period, with the Publication Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement.  A toll-free help line shall be made available to address Class Members' inquiries.  The Settlement Administrator also will provide copies of the forms of Publication Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.

4.3.    The Notice Program shall be subject to approval by the Court as meeting constitutional due process requirements.

4.4.    The Long Notice, Publication Notice, and Claim Form approved by the Court may be adjusted by the Settlement Administrator, in consultation and agreement with the Parties, as may be reasonable and necessary and not inconsistent with such approval.

4.5.    Prior to the final approval hearing, Lead Counsel and Arby's counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Court-approved Notice Program.

4.6.    The Notice Program shall be deemed to commence 45 days following entry by the Court of a Preliminary Approval Order in the form attached hereto as Exhibit E, or an order substantially similar to such form.

## 5.  OPT-OUT PROCEDURES.

5.1.    Each Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator.  The written opt-out notice must clearly manifest a person's intent to be excluded from the Settlement Class.

5.1.1.   The written opt-out notice must include the individual's name and address; a statement that he or she wants to be excluded from the Settlement Class; and the individual's signature.

5.1.2.   To be effective, written opt-out notice must be postmarked no later than 120 days from the date of entry of the Preliminary Approval Order.

5.1.3.   No later than 130 days from the date of entry of the Preliminary Approval Order, the  Settlement Administrator shall provide the Parties with:  (a) copies of all completed opt-out notifications, and (b) a final list of all who have timely and validly excluded themselves from the Settlement Class (the "Opt-Out Members").  No later than 10 days prior to the final

-21-

approval hearing, Class Counsel shall file this list of Opt-Out Members with the Court for purposes of being attached to the Judgment to be entered upon final approval.

5.2.    All Class Members who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any Settlement Benefits under or be bound by the terms of this Settlement Agreement.  All Class Members who submit valid and timely notices of their intent to be excluded from the Settlement Class shall also waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement. All Class Members who do not submit valid and timely notices of their intent to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Judgment entered thereon.

## 6.  OBJECTION PROCEDURES.

6.1.    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection.  Such notice shall state:  (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal, factual and evidentiary support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector (if any), including any former or current counsel who may be entitled to compensation for any reason related to the objection; (v) the identity of all counsel representing the objector who will appear at the final approval hearing; (vi) a list of all persons who will be called to testify at the final approval hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the final approval hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative; (ix) a list, by case name, court, and docket

-22-

number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative; and (xii) any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity.

6.1.1.   To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court, as follows:

(a)      For an Objection to the Settlement (except as to the request for costs, expenses, service awards, and/or attorneys' fees), no later than 120 days from the date of entry of the Preliminary Approval Order,

(b)      For an Objection to the request for costs, expenses, service awards, and/or attorneys' fees, no later than 14 days after the motion making the request for costs, expenses, service awards, and/or attorneys' fees, and

(c)      In each case the Objection must be served concurrently therewith upon Class Counsel John A. Yanchunis, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, FL 33602; and counsel for Arby's, Douglas H. Meal, Ropes & Gray LLP, 800 Boylston Street, Boston, MA 02199.

6.1.2.   The Parties will have the right to depose any objector in his or her district of residence prior to the Settlement Hearing as to the basis and circumstances of his or her objection, and to assess the objector's standing.

6.2.    Except upon a showing of good cause, any Settlement Class Member who fails to substantially comply with the requirements for objecting in ¶ 6.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.   The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 6.1.  Without limiting the foregoing, any challenge to the Settlement Agreement or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## 7.  RELEASES.

7.1.    Upon the Effective Date, each Settlement Class Member, including each Representative Plaintiff, hereby expressly is deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged all Released Persons from the Released Claims, and further may not then or thereafter institute, maintain, or assert against any of the Released Persons, either directly, indirectly, on their own behalf or on behalf of any class or other person or entity, any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands, rights, or remedies against the Released Persons (including, without limitation, claims for injunctive relief, declaratory relief, damages, mental anguish, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, disgorgement, or equitable relief against the Released Persons), whether based on federal, state, or local law, statute, ordinance, regulation, the Constitution, contract, common law, or any other source, that relate to any of the Released Claims, and the Settlement Class Members by operation of the Judgment shall be permanently barred and

enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum in which any of the Released Claims is asserted.

7.2.    As of the Effective Date, Arby's will be deemed to have completely released and forever discharged the Representative Plaintiffs, members of the Settlement Class, and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation.

## 8.  PROPOSED CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES; AND SERVICE AWARD TO REPRESENTATIVE PLAINTIFFS.

8.1.    The Parties did not negotiate the payment of the Representative Plaintiffs' attorneys' fees, costs, expenses and/or service awards, as provided for in ¶¶ 8.2 and 8.3, until after the substantive material terms of the settlement had been agreed upon, other than that Arby's would discuss and negotiate a maximum amount of reasonable attorneys' fees, costs and expenses, and an incentive service award to Representative Plaintiffs, to be separately paid by Arby's to the extent ordered by the Court. Arby's and Class Counsel then negotiated and agreed as follows:

8.2.    Class Counsel will request from the Court, and Arby's has agreed to pay (subject to Court approval to the extent approved) and has agreed not to object to Class Counsel's request for, an award of reasonable attorneys' fees up to the amount of $980,000 and reasonable costs and expenses up to the amount of $35,000.  Class Counsel agree to waive and hereby forgo seeking attorneys' fees and costs and expenses except as provided for in this Settlement Agreement.  Lead

Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees and costs and expenses awarded by the Court among Class Counsel.

8.3.    Class Counsel will request from the Court a service award for Representative Plaintiffs in the amount of $4,500 per person.  Arby's agrees not to object to this request, and to pay the amount the Court awards to Representative Plaintiffs as a service award up to and including $4,500 per person.

8.4.    Within 30 business days after the Effective Date, Arby's shall pay the aggregate amount of attorneys' fees, costs, expenses, and service awards to Representative Plaintiffs for which Arby's is liable as set forth above in ¶¶ 8.2 and 8.3 to an account established by Lead Counsel.  Lead Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Class Counsel and service awards to Representative Plaintiffs. The finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of attorneys' fees, costs, expenses, or service awards.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs and expenses, and/or service awards ordered by the Court to Class Counsel or Representative Plaintiffs shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement, as long as the amount(s) in question do not exceed the maximum amounts specified in ¶¶ 8.2 and 8.3.

9.  **ADMINISTRATION OF CLAIMS.**

9.1.    The Settlement Administrator shall administer the process of reviewing and determining the validity of the Claim Forms and Settlement Claims submitted by Settlement Class Members and give reports as to such administration to Class Counsel and Arby's.  Class Counsel and Arby's have the right to review and obtain supporting documentation, and request corrections

of, any of those reports (including, without limitation, the Calculation Report) if they believe them to be incorrect, inaccurate or inadequate.

9.2.     Payment of the Arby's Payment to the Settlement Administrator shall be made by check and shall be mailed and postmarked within 60 days after the Effective Date or 30 days after the amount of the Arby's Payment becomes final pursuant to ¶ 2.2.5, whichever is latest.  Payments of Approved Claims for amounts recoverable under ¶ 2.1.1 shall be distributed by mail or email to the Settlement Class Members entitled to such payments within 60 days after the Settlement Administrator's receipt of the Arby's Payment.  Enrollment codes on Approved Claims for identity theft protection services under ¶ 2.1.2 shall similarly be distributed by mail or email to the Settlement Class Members entitled to such enrollment codes within 60 days after the Settlement Administrator's receipt of the Arby's Payment.

9.3.     All Settlement Class Members who fail to timely submit a Settlement Claim for any Settlement Benefits hereunder within the time frames set forth herein shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

9.4.     No person shall have any claim against the Settlement Administrator, Released Persons, Lead Counsel, Class Counsel, Arby's counsel, and/or Representative Plaintiffs based on distributions of Settlement Benefits to Settlement Class Members.

## 10. CONDITIONS OF SETTLEMENT, CANCELLATION, OR TERMINATION.

10.1.     The Effective Date shall be the date on which all of the following events has occurred:

(a)     the Court has entered the Preliminary Approval Order with notice of a final approval hearing, as required by ¶ 3.1;

(b)     no petition seeking interlocutory appeal of the Preliminary Approval Order under Federal Rule of Civil Procedure 23(f) has been filed and granted, or, if any such petition has been filed and granted, the Preliminary Approval Order has been upheld without any material modification of the terms of this Agreement;

(c)     the Court has entered the Judgment granting final approval to the Settlement Agreement (among other things) as set forth herein; and

(d)     Either (i) sixty (60) days have passed after entry of the final Judgment (i.e., the Judgment is entered as a final judgment) and no appeal is taken after the Judgment's entry and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, obtain reconsideration of, or in any way alter the Judgment or to toll or extend the time for appeal of the Judgment; or (ii) all appeals, requests for reconsideration or rehearing, or other forms of review and potential review of the Judgment are exhausted, and the Judgment is upheld without any material modification of the terms of this Agreement.

10.2.   If the Effective Date does not occur on or before October 1, 2021, the Settlement Agreement shall be deemed terminated and/or canceled unless Class Counsel and Arby's counsel mutually agree in writing to set a later deadline for the occurrence of the Effective Date.

10.3.   The Parties agree, for purposes of this settlement only, to the certification of the Class and the Settlement Class.  If the Settlement Agreement is not approved by the Court or the Settlement Agreement is terminated and/or cancelled in accordance with its terms (including without limitation in accordance with ¶ 10.2 or ¶ 10.4), then (a) the Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue), and (b) the terms and provisions of the Settlement Agreement and statements

-28-

made in connection with seeking approval of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. The Parties' agreement to the certification of the Class and the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Arby's shall be obligated to pay amounts already billed or incurred for Costs of Settlement Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

10.4.  The Settlement Agreement may be terminated and/or cancelled by any of the Parties if (i) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily approve or finally approve the Settlement Agreement; (ii) an appellate court reverses the Preliminary Approval Order and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, the Preliminary Approval Order, the proposed Judgment, the Judgment, or the Settlement Agreement.

10.5.  Notwithstanding any provision of this Settlement Agreement to the contrary, including but not limited to ¶ 10.4, and for the avoidance of any doubt, the finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular amount of attorneys' fees, costs, expenses, or service awards. No order of the Court, or modification or

reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs and expenses, and/or service awards ordered by the Court to Class Counsel or Representative Plaintiffs shall affect whether the Judgment is final or constitute grounds for cancellation and/or termination of this Settlement Agreement, as long as such amount(s) do not exceed the maximum amounts specified in ¶¶ 8.2 and 8.3.

10.6.   Arby's shall have the sole discretion to terminate the Settlement Agreement if a certain number of Class Members submit valid requests to opt out as separately agreed to by the Parties and, if requested, to submit such separate agreement to the Court for *in camera* review.

## 11. MISCELLANEOUS PROVISIONS.

11.1.   The Parties, their successors and assigns, and their attorneys (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to use reasonable efforts to cooperate with one another in seeking Court approval of this Settlement Agreement; (iii) agree to cooperate in the Claims Administration process and implementation of the Settlement Agreement and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration and implementation of the Settlement Agreement; and (iv) agree to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2.   Each of the Representative Plaintiffs and Class Counsel agrees that he, she, or they will not disparage Arby's or any of the other Released Persons in any manner potentially harmful to them or their business, business reputation, or personal reputation.  This agreement not to disparage includes, but is not limited to, publishing disparaging statements (whether anonymously or for ascription) on the web, in blogs, in chat rooms, in emails, or in any other electronic means of transmitting information.  Notwithstanding the above, it is expressly agreed that nothing herein

restricts Class Counsel from meeting any ethical obligation in communicating with Class Members or Settlement Class Members who contact Class Counsel.

11.3.    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Litigation.  If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, it shall be deemed a negotiation for settlement purposes only and will not be admissible in evidence or usable for any purposes whatsoever in the Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Persons.  The Settlement Agreement compromises claims that are contested and shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.  The Parties each agree that the Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.  Nothing in this Agreement may constitute, may be construed as, or may be used as an admission by Arby's of any fault, wrongdoing, or liability whatsoever or that class certification is appropriate.  Arby's continues to affirmatively deny all liability and all of the claims, contentions, Released Claims, and each and every allegation made by the Representative Plaintiffs in the Litigation.

11.4.    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.  The Parties agree that nonmaterial amendments or modifications to this Agreement may be made in writing after entry of the Preliminary Approval Order without the need to seek the Court's approval. Without further order of the Court, the Parties may agree in writing to reasonable

extensions of time to carry out any of the provisions of this Agreement or the Preliminary Approval Order.

11.5.   If the Court indicates, prior to entry of the Preliminary Approval Order or the Judgment, that the Settlement Agreement will not be approved unless certain changes are made, the Parties will attempt in good faith to reach an agreement as to any such changes prior to withdrawing from this Agreement.  However, if no such agreement can be reached within thirty (30) days after the Court indicates that the Settlement Agreement will not be approved unless certain changes are made, then the Representative Plaintiffs or Arby's may terminate and withdraw from this Agreement. If this Agreement is terminated under such circumstances, the Representative Plaintiffs and Arby's shall be deemed to be in the same position as existed prior to its execution, with the same *status quo ante* rights and interests as they may have had absent the entry by Arby's and the Representative Plaintiffs into this Agreement and any and all other understandings and agreements between the Parties and their respective counsel relating to the Settlement Agreement shall be deemed to be null and void and of no force and effect.

11.6.   The Settlement Agreement, together with the exhibits attached hereto, as well as the list of Affected Locations and Exposure Windows pursuant to ¶¶ 1.1 and 1.13, and the agreement pursuant to ¶ 10.6, constitute the entire agreement among the Parties hereto with respect to the matters discussed herein and supersede all prior or contemporaneous oral or written understandings, negotiations, agreements, statements, or promises. In executing this Agreement, the Parties acknowledge that they have not relied upon any oral or written representations, warranties, understandings, negotiations, agreements, statements, promises, or inducements concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in this Agreement.  The Parties also acknowledge and agree that each

has been represented by its own counsel with respect to the negotiating and drafting of this Settlement Agreement. Except as otherwise provided herein, each party shall bear its own costs.   This Agreement supersedes all previous agreements made by the Parties.  All exhibits to this Agreement as set forth herein are integrated herein and are to be considered terms of this Agreement as if fully set forth herein.  To the extent that there are any inconsistencies between the Settlement Agreement and its exhibits, the terms of the Settlement Agreement control.

11.7.    Class Counsel, on behalf of the Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Class.

11.8.    Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that (s)he has the authority to execute this Agreement and thereby bind the respective Party.  The Representative Plaintiffs each warrant and represent that (s)he is the sole and lawful owner of all rights, title, and interest in and to all of his or her Released Claims and that (s)he has not heretofore voluntarily, by operation of law or otherwise, sold, assigned, or transferred or purported to sell, assign, or transfer to any other person or entity any of his or her Released Claims or any part or portion thereof.

11.9.    Any failure by any Party to insist upon the strict performance by any other Party of any provision of this Agreement shall not be deemed a waiver of any provision of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement.

11.10. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

11.11. The Settlement Agreement shall be binding upon, and inure to the benefit of, the respective current and future heirs, legal representatives, executors, administrators, successors and assigns of the Parties hereto.

11.12. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

11.13. The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Georgia, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Georgia without giving effect to choice of law principles.

11.14. The final approval hearing shall be scheduled no earlier than 90 days after the notices are made in order to comply with the Class Action Fairness Act ("CAFA"), 28 U.S.C.§ 1715.

11.15. As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

11.16. All dollar amounts are in United States dollars.

11.17. Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive payment for any Approved Claim. All settlement checks shall be void

90 days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until 120 days after the issuance to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of such Settlement Benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, Arby's shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1.1 or time spent under ¶ 2.1.1(a) or ¶ 2.1.1(b), and the portion of the Arby's Payment paid by Arby's to the Settlement Administrator to fund such payment to the Settlement Class Member shall be returned to Arby's. The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

    11.18.  Actual enrollment with Experian for identity theft services using the enrollment code distributed to Settlement Class Members on Approved Claims for identity theft services is a condition precedent to any Settlement Class Member's right to enrollment in identity theft services for any Approved Claim under ¶ 2.1.2.   All enrollment codes for Approved Claims for identity theft services shall be valid for 90 days from the date of distribution to the Settlement Class Member, following which, if the Settlement Class Member has failed to so enroll within this period, the Settlement Class Member's right to so enroll at no cost shall be extinguished, Arby's shall have no obligation to the Settlement Class Member for any benefit under ¶ 2.1.2, and the portion of the Arby's payment paid by Arby's to the Settlement Administrator (and/or paid to Experian, as the case may be) to fund the cost of such enrollment by the Settlement Class Member shall be returned to Arby's.

11.19. The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the motion for entry of the Preliminary Approval Order is filed; provided, however, that this Paragraph shall not prevent the disclosure of such information prior to the filing of such motion to (1) regulators, rating agencies, independent accountants, advisors, financial analysts, agents, existing or potential insurers or reinsurers, Representative Plaintiffs, Settlement Class Members requesting information, experts, courts, co-counsel, any existing or potential investor of or any existing or potential lender to any of the Released Persons, the Settlement Administrator and/or other service providers retained or under consideration for being retained to provide services in connection with this Agreement, and/or as otherwise may reasonably be required to effectuate the terms and conditions of this Agreement, and/or as otherwise required to comply with any applicable law or regulation, (2) any person or entity to whom the Parties agree in writing disclosure must be made to effectuate the terms of this Agreement, and/or (3) by Arby's or any of the other Released Persons as necessary for any reasonable commercial purpose.

11.20. Any information and documentation provided to Class Counsel, the Settlement Administrator, or the Class by Arby's, including discussions and the information exchanged in the course of negotiating this Settlement Agreement, is confidential and cannot be provided to third parties (other than experts or consultants retained by the Class Counsel in connection with the Litigation) or used for any purpose other than effectuating the terms of this Agreement absent Arby's prior express written consent obtained in each instance, and such information and documentation may not be publicly disclosed or used by the Representative Plaintiffs or Class Counsel in any way in the Litigation should it not settle or in any other proceeding.

11.21.  Neither Class Counsel nor Arby's counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder nor shall it be relied upon as such.

11.22.  All of the Parties agree to cooperate and to work with one another to protect any confidential materials produced in discovery in the Litigation.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.  The Parties further stipulate that any confidential information submitted, whether in the past or in the future, to any court in the Litigation will be sealed.

11.23.  The Settlement Agreement may be executed by facsimile or electronic signature by any Party and such signature shall be deemed binding for all purposes hereof without delivery of an original signature being thereafter required.


IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

| Representative Plaintiffs,  by and through Class Counsel, by and through their Duly Authorized Signatories: | Arby's Restaurant Group, Inc., by and through its Duly Authorized Signatories: |
|---|---|
| John A. Yanchunis of Morgan & Morgan Complex Litigation Group | Douglas H. Meal of Ropes & Gray  LLP |
| | |
| Roy E. Barnes of the Barnes Law Group, LLC | Robert B. Remar of Rogers & Hardin LLP |

11.21. Neither Class Counsel nor Arby's counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder nor shall it be relied upon as such.

11.22. All of the Parties agree to cooperate and to work with one another to protect any confidential materials produced in discovery in the Litigation. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement. The Parties further stipulate that any confidential information submitted, whether in the past or in the future, to any court in the Litigation will be sealed.

11.23. The Settlement Agreement may be executed by facsimile or electronic signature by any Party and such signature shall be deemed binding for all purposes hereof without delivery of an original signature being thereafter required.


IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

| | |
|---|---|
| Representative Plaintiffs, by and through Class Counsel, by and through their Duly Authorized Signatories: | Arby's Restaurant Group, Inc., by and through its Duly Authorized Signatories: |
| John A. Yanchunis of Morgan & Morgan Complex Litigation Group | Douglas H. Meal of Ropes & Gray LLP |
| Roy E. Barnes of the Barnes Law Group, LLC | Robert B. Remar of Rogers & Hardin LLP |

-37-

11.21.  Neither Class Counsel nor Arby's counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder nor shall it be relied upon as such.

11.22.  All of the Parties agree to cooperate and to work with one another to protect any confidential materials produced in discovery in the Litigation.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.  The Parties further stipulate that any confidential information submitted, whether in the past or in the future, to any court in the Litigation will be sealed.

11.23.  The Settlement Agreement may be executed by facsimile or electronic signature by any Party and such signature shall be deemed binding for all purposes hereof without delivery of an original signature being thereafter required.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Representative Plaintiffs,  by and through Class Counsel by and through their Duly Authorized Signatories:

Arby's Restaurant Group, Inc., by and through its Duly Authorized Signatories:

John A. Yanchunis of Morgan & Morgan Complex Litigation Group

Douglas H. Meal of Ropes & Gray  LLP

_____

_____

Roy E. Barnes of the Barnes Law Group, LLC

Robert B. Remar of Rogers & Hardin LLP

_____

_____

-37-

11.21. Neither Class Counsel nor Arby's counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder nor shall it be relied upon as such.

11.22. All of the Parties agree to cooperate and to work with one another to protect any confidential materials produced in discovery in the Litigation.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.  The Parties further stipulate that any confidential information submitted, whether in the past or in the future, to any court in the Litigation will be sealed.

11.23.  The Settlement Agreement may be executed by facsimile or electronic signature by any Party and such signature shall be deemed binding for all purposes hereof without delivery of an original signature being thereafter required.


IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

| Representative Plaintiffs,  by and through Class Counsel, by and through their Duly Authorized Signatories: | Arby's Restaurant Group, Inc., by and through its Duly Authorized Signatories: |
|---|---|
| John A. Yanchunis of Morgan & Morgan Complex Litigation Group | Douglas H. Meal of Ropes & Gray  LLP |
| | |
| Roy E. Barnes of the Barnes Law Group, LLC | Robert B. Remar of Rogers & Hardin LLP |
| | |

EXHIBIT A – CLAIM FORM

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

---

COMPLETE AND SIGN THIS FORM AND
FILE ONLINE NO LATER THAN
**[due date]**
at www.settlementwebsite.com
or file by mail postmarked by **[due date]**

---

## CLAIM FORM

## CLAIMANT INFORMATION

Full Name: _____

Mailing Address: _____

City:_____State:_____ZIP: _____

Telephone Number: _____

Email Address (if you have one): _____
(if provided, we will communicate primarily by email about your claim)

## ARE YOU A CLASS MEMBER?

1. Did you use a credit or debit card at an affected Arby's location during the exposure window for that particular location (click here for locations and exposure windows)?

| Yes ___ (Proceed to the next question) | No ___ (You are not eligible to submit a claim and should not submit this form) |
|---|---|

2. What is the Arby's location where you made your purchase (list up to three), and on what date(s) did you make your purchase? (click here to see a list of locations and restaurant number)

1

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

| Restaurant Number | State | City | Address | Date(s) of Purchase: |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | __/__/__ |
| _____ | _____ | _____ | _____ | __/__/__ |
| _____ | _____ | _____ | _____ | __/__/__ |

3.  Do you have proof of your purchase using a credit or debit card at an affected Arby's location during its exposure window? (Examples:  purchase receipt, credit card statement, bank statement.  You must submit a copy of your proof with this claim form.)

| Yes ___ (submit a copy of your proof) (Proceed to the questions below) | No ___ (You are not eligible to submit a claim and should not submit this form) |
|---|---|

**CLAIMS FOR CASH PAYMENT**

4.  After your purchase, did you incur a fraudulent charge on that credit or debit card, or was that credit or debit card cancelled, as a result of the Arby's data breach?

| Yes ___ (Proceed to the next question) | No ____ (You are not eligible for a payment.  Proceed to Question 7) |
|---|---|

2

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

5.  Do you have documents supporting that you incurred the fraudulent charge on that card, or that it was cancelled, and that the fraud or cancellation occurred after your purchase, as a result of the Arby's data breach?

| Yes ___ (submit a copy of your documents) (Proceed to the next question) | No ____ (You are not eligible for a payment.  Proceed to Question 7) |
|---|---|

6.  Do you have documents supporting that you experienced out-of-pocket losses remedying issues relating to that fraudulent charge or card cancellation, as a result of the Arby's data breach?

| Yes ___ (submit a copy of your documentation) (Proceed to the chart below and provide all information requested for the losses you are claiming) | No ____ (You are not eligible for a payment.  Proceed to Question 7) |
|---|---|

| Loss Type (Check all that apply) | Date of Loss | Amount of Loss | Description of Supporting Documentation |
|---|---|---|---|
| ___ Costs and expenses spent addressing identity theft or fraud resulting from that fraudulent charge or card cancellation | | | *Examples: Receipt or account statement reflecting fuel costs for driving to bank or filing police report; Postage charges, long distance phone charges, cell phone charges, or data charges directly related to addressing the impacts of the Arby's data breach; Receipt for hiring service to assist you in addressing identity theft.  Describe your supporting documentation here and submit a copy with this claim form.* |

3

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

| | | | |
|---|---|---|---|
| ___ Losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees) resulting from that fraudulent charge or card cancellation | | | *Examples: Account statement with ATM withdrawal fee highlighted; Loan agreement or bank statement with additional interest paid highlighted.  Describe your supporting documentation here and submit a copy with this claim form.* |
| ___ Preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review resulting from that fraudulent charge or card cancellation<br><br>*Note that losses in this category (a) must have been incurred between Feb. 9, 2017 and Sept. 14, 2018, and (b) cannot exceed $150 per person* | | | *Example: Receipts or account statements reflecting purchases made for credit monitoring services or to place a credit freeze.  Describe your supporting documentation here and submit a copy with this claim form.* |

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

| | | | |
|---|---|---|---|
| ___ Late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees resulting from that fraudulent charge or card cancellation | | | *Example: Account statements reflecting overdraft fees. Describe your supporting documentation here and submit a copy with this claim form.* |
| ___ Unauthorized charges on credit or debit card reasonably caused by the Arby's data breach that were not reimbursed or other fraud losses reasonably caused resulting from that fraudulent charge or card cancellation | | | *The following is required to recover for this category of loses: (1) a copy of the statements that show the fraudulent charges, and (2) correspondence from financial institution declining to reimburse you the charges.* |
| ___ Other documented losses that are not otherwise reimbursed (provide detailed description) | | | *Please provide detailed description and supporting documentation* |

5

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

| ___ Time spent remedying issues resulting from that fraudulent charge or card cancellation (you must choose between documented time or self-certified time) | ___ **Documented**: I am submitting documents supporting the time I spent remedying issues resulting from that fraudulent charge or card cancellation. | **Number of Hours Spent** _____ (max = 5 hours) | *Example: Phone bill reflecting time spent on phone with bank. You may make a claim for up to 5 hours of documented time at $15 per hour. Describe your supporting documentation here and submit a copy with this claim form.* |
|---|---|---|---|
| | ___ **Self-Certified**: I spent time remedying issues resulting from that fraudulent charge or card cancellation but do not have supporting documentation | **Number of Hours Spent** _____ (max = 2 hours) | *No documentation required, but you must fill out and sign the statement below. You may make a claim for up to 2 hours of undocumented time at $15 per hour.* I certify that I spent (up to two) ____ hours remedying issues resulting from the fraudulent charge or card cancellation that I incurred after using the card for a purchase at an affected Arby's location during its exposure window. SIGNED:_____ |

## IDENTITY THEFT PROTECTION SERVICE

7. Are you already enrolled in an identity theft protection service, which is any service that, for example, provides you with a periodic copy of your credit report, monitors credit bureau files for indicators of fraud, helps to address credit fraud, and/or gives you identity theft insurance coverage?

| Yes___ (No enrollment code for the identity theft protection benefit under this settlement will be provided. Do not proceed to Question 8.) | No ____ (Proceed to Question 8.) |
|---|---|

*In re: Arby's Restaurant Group, Inc. Data Security Litigation*
CONSOLIDATED CONSUMER CASE
Case No. 1:17-cv-1035-AT (N.D. Ga.)

8. Do you want to enroll in the identity theft protection service under this settlement at no expense to you for a period of up to 24 months?

| | |
|---|---|
| Yes___ (Enrollment codes will be distributed if and after the settlement is approved and becomes effective.  Please be patient.) | No ____   (No enrollment code will be provided). |

**ATTESTATION AND SIGNATURE (required for all claims)**

I do hereby swear (or affirm), under penalty of perjury, that the information provided above and submitted herewith is true and accurate to the best of my knowledge.

Name: _____

Signature: _____

Date: _____

**EXHIBIT B – PUBLICATION NOTICE**

LEGAL NOTICE

# If you used a credit, debit, or other payment card at certain Arby's restaurants between October 8, 2016 and January 12, 2017, you may be eligible for benefits from a data breach class action settlement.

A settlement ("Settlement") has been reached with Arby's Restaurant Group, Inc. ("Arby's") in a class action lawsuit about a data breach that affected certain of Arby's corporate-owned restaurants between October 8, 2016 and January 12, 2017 ("Data Breach").

The lawsuit claims that Arby's was responsible for the Data Breach. Arby's denies all of the claims and says it did not do anything wrong. The Court did not decide in favor of either side. Instead, both sides agreed to the Settlement.

### Who Is Included?

You area "Settlement Class Member" if you reside in the United States and you used a debit or credit card to make a purchase at an affected Arby's restaurant during its exposure window. Go to www.XXXXX.com for a list of affected Arby's restaurants and their exposure windows.

### What Does The Settlement Provide?

Cash Payment: If you made your purchase at an affected Arby's location during its exposure window, and later had a fraudulent charge on your card or your card was cancelled, you are eligible for reimbursement of actual documented unreimbursed out-of-pocket expenses caused by the Data Breach, as well as compensation for the time spent addressing such expenses or the circumstances giving rise to issues relating to the Data Breach, up to $5,000.

Identity Theft Protection Services: If you are a member of the Settlement Class and you are not already enrolled in an identity theft protection service, you are eligible to enroll in up to 24 months of free identity protection services from Experian.

You may make claims for *both* a Cash Payment and Identity Theft Protection Services. Arby's will fund these benefits on approved claims in a total amount of up $2 million.

### How Do You Get A Cash Payment or Identity Theft Protection Services?

You must submit a Claim Form by **Month Day, Year**. Claim Forms are available at www.XXXXX.com or by calling XXXXXXX.

### What Are Your Options?

If you do not want to be legally bound by the Settlement, you must exclude yourself from it by **Month Day, Year**, or you will not be able to sue, or continue to sue, Arby's about the legal claims this Settlement resolves. If you exclude yourself, you cannot get benefits from the Settlement.

If you stay in the Settlement, you can tell the Court that you do not agree with the Settlement or some part of it by objecting to it by **Month Day, Year**, except that you will have an additional opportunity to object to the award of attorneys' fees, costs, expenses, and service awards that will be requested as described below.

The Long Notice, available at www.XXXXX.com, explains how to exclude yourself or object and describes the released claims in detail.

### Who Represents You?

The Court appointed Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP as Lead Counsel, and John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group, and James M. Evangelista and David J. Worley of Evangelista Worley LLP, together with Lead Counsel, as counsel to represent the Settlement Class ("Class Counsel"). Class Counsel will ask the Court for an award of reasonable attorneys' fees up to $980,000, plus reasonable costs and expenses up to $35,000, and service awards up to $4,500 each for the Representative Plaintiffs Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters. If you want to be represented by your own lawyer, you may hire one at your own expense.

### When Will The Settlement Be Approved?

The U.S. District Court for the Northern District of Georgia will hold a hearing in this case (*In re: Arby's Restaurant Group, Inc. Data Security Litigation, Consolidated Consumer Case,* Case No. 1:17-cv-1035) on **Month Day, Year**, at **TIME** to consider whether to approve the Settlement, and Class Counsel's request for attorneys' fees, costs and expenses, and service awards. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you do not have to.

www.XXXXX.com XXXXXXX

**EXHIBIT C – LONG FORM NOTICE**

**NOTICE OF CLASS ACTION SETTLEMENT**

NORTHERN DISTRICT OF GEORGIA

*In re: Arby's Restaurant Group, Inc. Data Security Litigation, Consolidated Consumer Case,*
Case No. 1:17-cv-1035 (N.D. Ga.)

**If you used a credit, debit, or other payment card at certain
Arby's restaurants between October 8, 2016 and January 12, 2017, you may be eligible for
benefits from a data breach class action settlement.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- A settlement (the "Settlement") has been proposed with Arby's Restaurant Group, Inc. ("Arby's") in lawsuits asserting claims against Arby's relating to a data security incident that occurred between October 8, 2016 and January 12, 2017, arising from third-party criminal cyberattack affecting certain of Arby's corporate-owned restaurants involving the placement of malware on point of sale systems targeting customers' payment card information (the "Data Breach").  Arby's denies all of the claims.  The Settlement does not establish who is correct and is not an admission of fault, but rather is a compromise to end the lawsuit.

- The Settlement includes, subject to certain limitations, all residents of the United States who used a debit or credit card to make a purchase at an affected Arby's restaurant during its exposure window ("Settlement Class").    For a list of impacted Arby's restaurants and the exposure window of the Data Breach for each affected location, go to www.XXXXXXX.com [LINK].  Not all Arby's corporate-owned restaurant locations were affected by the Data Breach; only certain restaurants were affected and at various times.

- The Settlement makes certain members of the Settlement Class who submit valid claims eligible to receive cash payment for certain documented unreimbursed out-of-pocket expenses and time spent that resulted from the Data Breach.  The Settlement also provides to all members of the Settlement Class who are not already enrolled in an identity theft protection service the eligibility to enroll in up to 24 months of free identity theft protection services from Experian.

**Your legal rights are affected even if you do nothing.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim** | This is the only way to get benefits under this Settlement. |
| **Ask to be Excluded** | Get no benefits.    This is the only option that allows you to bring your own lawsuit against Arby's related to the Data Breach. |
| **Object** | Write to the Court about why you do not think the Settlement is fair, reasonable, or adequate. |
| **Go to the Hearing** | Ask to speak in Court about the fairness of the Settlement. |
| **Do Nothing** | Get no benefits from the Settlement.  Give up rights to submit a claim for the Settlement benefits or to bring a different lawsuit against Arby's related to the Data Breach. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.  No cash payments will be made and no enrollment for identity theft protection services will be effective until after the Court grants final approval of the Settlement and all appeals, if any, are resolved.

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

- 2 -

# BASIC INFORMATION

## 1.     Why is there a Notice?

The Court authorized this notice because you have a right to know about the Settlement, and all of your options, before the Court decides whether to give "final approval" to the Settlement.  This notice explains the nature of the lawsuit that is the subject of the Settlement, the general terms of the Settlement, and your legal rights and options.

Judge Amy M. Totenberg of the United States District Court for the Northern District of Georgia is overseeing this case known as *In re: Arby's Restaurant Group, Inc. Data Security Litigation, Consolidated Consumer Case,* Case No. 1:17-cv-1035.  The people who sued are called the Plaintiffs.  Arby's is called the Defendant.

## 2.     What is this lawsuit about?

The lawsuit claims that Arby's was responsible for the Data Breach and asserts claims such as: breach of implied contract, negligence, negligence per se, unjust enrichment, declaratory judgment, violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., violations of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq., violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., and violation of the Tennessee Consumer Protection, Tenn. Code Ann. §§ 47-18-101 et seq.

Arby's denies these claims and says it did not do anything wrong.  No court or other judicial entity has made any judgment or other determination that Arby's has any liability on these claims or did anything wrong.

## 3.     Why is this lawsuit a class action?

In a class action, one or more people called class representatives or representative plaintiffs sue on behalf of all people who have similar claims.  Together, all of these people are called a class and the individuals are called class members.  One court resolves the issues for all class members, except for those who exclude themselves from the class.

## 4.     Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or Arby's.  Instead, both sides agreed to the Settlement.  The Settlement avoids the cost and risk of a trial and related appeals, while providing benefits to members of the Settlement Class ("Settlement Class Members").  The "Settlement Class Representatives" appointed to represent the Settlement Class, and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question XX) think the Settlement is best for all Settlement Class Members.

# WHO IS IN THE SETTLEMENT?

## 5.     How do I know if I am part of the Settlement?

You are affected by the Settlement and potentially a member of the Settlement Class if you reside in the United States and you used a debit or credit card to make a purchase at an affected Arby's

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

- 3 -

restaurant during its exposure window.   For a list of affected Arby's restaurants and the exposure window of the Data Breach for each affected restaurant, go to www.XXXXXXX.com [LINK].

Only Settlement Class Members are eligible to receive benefits under the Settlement.  Specifically excluded from the Settlement Class are:

(i) Arby's and its officers and directors; (ii) the Judge or Magistrate Judge to whom the Action is assigned and, any member of those Judges' staffs or immediate family members; (iii) any persons who timely and validly request exclusion from the Settlement; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge.

| 6. | What if I am not sure whether I am included in the Settlement? |
|---|---|

The Settlement website at [LINK] provides a list of affected Arby's locations, and also provides the exposure window for each affected location.  If you are not sure whether you are included in the Settlement, you may call 1-XXX-XXX-XXXX with questions.  You may also write with questions to Arby's Settlement Administrator, PO Box XXXX, [City], [State] XXXXX-XXXX.

### THE SETTLEMENT BENEFITS–WHAT YOU GET IF YOU QUALIFY

| 7. | What does the Settlement provide? |
|---|---|

The Settlement provides that Arby's will fund up to a total of $2,000,000 in payments for (a) reimbursement of Settlement Class Members whose payment cards subsequently incurred fraud or were cancelled for actual documented unreimbursed out-of-pocket expenses incurred as a result of the Data Breach and, for such qualifying Settlement Class Members, compensation for time spent remedying such impacts from the Data Breach (see Question XX), and (b) the cost (up to $300,000) of free identity theft protection services for those Settlement Class Members who do not already have it (see Question XX).  Such benefits are subject to pro-rata reduction as needed to prevent exceeding these caps, and Arby's shall retain any amounts not required for payment of these benefits to those eligible to receive them whose claims are approved.  Arby's has also agreed to pay attorney's fees, costs and expenses (see Question XX) and the costs of notifying the Settlement Class and administering the Settlement.

| 8. | What payments are available for reimbursement of documented out-of-pocket expenses and time spent? |
|---|---|

Settlement Class Members who used a debit or credit card at an affected Arby's location during the exposure window for that location, and later had a fraudulent charge on or cancellation of the card, are eligible to receive up to $5,000 (in total) for:

   a) Reimbursement of actual documented, unreimbursed out-of-pocket expenses resulting from the Data Breach, such as:

- costs and expenses spent addressing identity theft or fraud;
- losses caused by restricted access to funds (*i.e.,* costs of taking out a loan, ATM withdrawal fees);

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

- preventative costs incurred from February 9, 2017 through September 14, 2018, not to exceed $150.00 per Settlement Class Member, including purchasing credit monitoring placing security freezes on credit reports, or requesting copies of credit reports for review;

- late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees;

- unauthorized charges on credit or debit cards that were not reimbursed; and

- other documented losses that were not reimbursed.

b) If the Settlement Class Member qualifies for such documented expense reimbursement, the Settlement Class Member may also be compensated for time spent remedying such impacts resulting from the Data Breach, in the amount of up to two hours of <u>undocumented</u> time spent, or up to five hours of <u>documented</u> time spent, calculated at the rate of $15 per hour.

## 9.   What identity theft protection services are available?

Regardless of whether a Settlement Class Member is eligible to recover for documented out-of-pocket expenses or for time spent in addressing such expenses (see Question 8), each Settlement Class Member who is not already enrolled in an identity theft protection service is eligible to enroll in up to 24 months of identity theft protection service provided by Experian which provides periodic credit reports for review, credit report monitoring across all three credit bureaus, identity restoration assistance, and up to $1 million in identity theft insurance.

## HOW DO YOU SUBMIT A CLAIM?

## 10.   How do I get a benefit?

To receive any benefit under the Settlement, you must complete and submit a claim for that benefit (a "Claim"). Every Claim must be made on a form ("Claim Form") available at [LINK] or by calling 1-XXX-XXX-XXXX. Read the instructions carefully, fill out the Claim Form, provide the required documentation, and submit it online or mail it postmarked no later than **Month Day, Year** to:

Arby's Data Breach Claim Forms
PO Box XXXXX
[City], [State] XXXXX-XXXX

If you submit a valid Claim Form and are eligible to enroll in identity theft protection services under the settlement, you will receive instructions on how to enroll in those services.

## 11.   How will claims be decided?

The Settlement Administrator will decide whether and to what extent any Claim made on each Claim Form is valid. The Settlement Administrator may require additional information. If you do not provide the additional information in a timely manner the Claim will be considered invalid and will not be paid.

**Questions?  Go to <u>www._____.com</u> or call 1-XXX-XXX-XXXX**

Approved Claims are those submitted in a timely manner and found to be valid by and for such benefits as are approved by the Settlement Administrator.

| **12.   When will I get my payment?** |
| :--- |

The Court will hold a hearing on **Month Day, Year** to decide whether to approve the Settlement. If the Court approves the Settlement, after that there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time for all the Claim Forms to be processed.  Please be patient.

## WHAT DOES ARBY'S GET?

| **13.   What am I giving up as part of the Settlement?** |
| :--- |

If the Settlement becomes final and you do not exclude yourself from the Settlement, you will be a Settlement Class Member and you will give up your right to sue Arby's and other persons ("Released Persons") as to all claims ("Released Claims") arising out of or relating to the Data Breach.   This release is described in the Settlement Agreement, which is available at www._____.com.  In the Settlement Agreement, the Data Breach is referred to as the Security Incident.  If you have any questions you can talk to the law firms listed in Question 19 for free or you can, of course, talk to your own lawyer.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this Settlement, but you want to keep the right to sue Arby's about the legal issues in this case, then you must take steps to exclude yourself from the Settlement Class. This is sometimes referred to as "opting out" of the Settlement Class.

| **14.   If I exclude myself, can I get a payment from this Settlement?** |
| :--- |

No.  If you exclude yourself you will not be entitled to receive any benefits from the Settlement, but you will not be bound by any judgment in this case.

| **15.   If I do not exclude myself, can I sue Arby's for the same thing later?** |
| :--- |

No.  Unless you exclude yourself, you give up any right to sue Arby's (and the other Released Persons) for the claims that this Settlement resolves.  You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case.  If you exclude yourself, do not submit a Claim Form to ask for any benefit under the Settlement.

If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this class action, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitations or repose.

| **16.   How do I exclude myself from the Settlement?** |
| :--- |

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *In re: Arby's Restaurant Group, Inc. Data Security Litigation, Consolidated Consumer Case,* Case No. 1:17-cv-1035.  Include your name, address, and signature.  You must mail your exclusion request postmarked by **Month Day, Year,** to:

Arby's Data Breach Settlement Exclusions
PO Box XXXXX
City, State XXXXX

**OBJECTING TO THE SETTLEMENT**

**17.   How do I tell the Court that I do not like the Settlement?**

You can tell the Court that you do not agree with the Settlement or some part of it by objecting to the Settlement.   The Court will consider your views in its decision whether to approve the Settlement.   To object, you must file a written objection in this case, *In re: Arby's Restaurant Group, Inc. Data Security Litigation, Consolidated Consumer Case,* Case No. 1:17-cv-1035, with the Clerk of the Court, and mail copies to Class Counsel and Defense Counsel at the addresses below.

Your objection must state: (1) your full name, address, telephone number, and e-mail address (if any); (2) information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable; (4) the identity of all counsel representing you (if any); (5) the identity of all counsel representing you who will appear at the final fairness hearing; (6) a list of all persons who will be called to testify at the final fairness hearing in support of the objection; (7) a statement confirming whether you intend to personally appear and/or testify at the final fairness hearing; (8) your signature and the signature of your duly authorized attorney or other duly authorized representative, if applicable; (9) a list, by case name, court, and docket number, of all other cases in which you (directly or through counsel) have filed an objection to any proposed class action settlement within the last 3 years; (10) a list, by case name, court, and docket number, of all other cases in which your counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (11) a list, by case name, court, and docket number, of all other cases in which you have been a named plaintiff in any class action or served as a lead plaintiff or class representative.

To be considered, your objection must be **<u>filed</u>** with the Clerk of the Court for the United States District Court for the Northern District of Georgia no later than **Month Day, Year**, except that you will have an additional opportunity to object to the award of attorneys' fees, costs, expenses, and service awards that will be requested as described below.  In addition, you must **<u>mail</u>** a copy of your objection to both Class Counsel and Defense Counsel, postmarked no later than **Month Day, Year:**

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>75 Ted Turner Drive<br>Atlanta, GA 30303 | John A. Yanchunis<br>Morgan & Morgan Complex<br>Litigation Group<br>One Tampa City Center<br>201 N. Franklin Street<br>7th Floor<br>Tampa, FL 33602 | Douglas H. Meal<br>Ropes & Gray LLP<br>800 Boylston Street<br>Boston, MA 02199 |

## 18.   What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved.  You can object only if you are a member of the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and do not want to receive any payment from the Settlement.  If you exclude yourself you have no basis to object because you are no longer a member of the Settlement Class and the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

## 19.   Do I have a lawyer in this case?

Yes.  The Court appointed Roy E. Barnes, John R. Bevis and J. Cameron Tribble of The Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP as Lead Counsel.  The Court also appointed the following attorneys as Class Counsel to represent the Settlement Class: John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group, and James M. Evangelista and David J. Worley of Evangelista Worley LLP, together with Lead Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 20.   How will the lawyers be paid?

Class Counsel will ask the Court for an award for attorneys' fees in the amount up to $980,000, plus reasonable costs and expenses in an amount up to $35,000.  Any award for attorneys' fees, plus reasonable costs and expenses, would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement and will be the only payment to them for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Class Counsel will also ask the Court for a service awards up to $4,500 each for the Settlement Class Representatives Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters.

Any award for attorneys' fees, costs and expenses for Class Counsel, and of service awards to the Representative Plaintiffs, must be approved by the Court.  The Court may award less than the amounts requested.  Class Counsel's papers in support of final approval of the Settlement and their application for attorneys' fees, costs and expenses, and service awards will be filed no later than **Month Day, Year** and will be posted on the settlement website.  Objections to the request for attorneys' fees, costs, expenses, and service awards must be filed within 14 days after the application.

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

## THE COURT'S FAIRNESS HEARING

**21.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a final fairness hearing at __:__ _.m. on **Month Day, Year,** at the Richard B. Russell Federal Building and United States Courthouse, Courtroom 2308, 75 Ted Turner Drive, Atlanta, GA 30303.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made.  The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Representative Plaintiffs.  After the hearing the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX.

**22.  Do I have to attend the hearing?**

No.  Class Counsel will present the Settlement Agreement to the Court.  You or your own lawyer are welcome to attend at your expense, but you are not required to do so.  If you send an objection, you do not have to come to the Court to talk about it.  As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 17, the Court will consider it.

**23.  May I speak at the hearing?**

You may ask the Court for permission to speak at the final fairness hearing.  To do so, you must file an objection according to the instructions in Question 17, including all the information required.  Your objection must be **filed** with the Clerk of the Court for the United States District Court for the Northern District of Georgia no later than **Month Day, Year.**  In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel listed in Question 17, postmarked no later than **Month Day, Year.**

## IF YOU DO NOTHING

**24.  What happens if I do nothing?**

If you do nothing you will not get any money from this Settlement and if the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Arby's and the other Released Persons based on any of the Released Claims, ever again.

## GETTING MORE INFORMATION

**25.  How do I get more information?**

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement itself.  A copy of the Settlement Agreement is available at [LINK]. You may also call the Settlement Administrator with questions or to get a Claim Form at 1-XXX-XXX-XXXX.

**Questions?  Go to www._____.com or call 1-XXX-XXX-XXXX**

EXHIBIT D – DECLARATION OF CARLA PEAK

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Arby's Restaurant Group, Inc.<br>Data Security Litigation<br><br>CONSOLIDATED CONSUMER CASE | Case No. 1:17-cv-1035-AT |

**DECLARATION OF CARLA PEAK REGARDING
SETTLEMENT NOTICE PLAN**

I, Carla Peak, declare as follows:

1.      I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

**INTRODUCTION**

2.      I am the Vice President of Legal Notification Services at KCC, LLC ("KCC"). KCC is a leading class action administration firm that provides comprehensive class action services, including legal notification, email and postal mailing, campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements.

3.      With more than thirty years of industry experience, KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

4.      KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of consumer product and data matters. Some consumer case examples which KCC has been involved with include: *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-01364 (N.D. Ill.); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.); *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, No. 1:06-cv-07023 (N.D. Ill.); *Edwards v. National Milk Producers Federation*, No. 11-cv-04766 (N.D. Cal.); *Lerma v. Schiff Nutrition International, Inc.*, No. 1:13-CV-07747 (N.D. Ill.); *Cobb v. BSH Home Appliances Corp*., No. 8:10-CV-00711 (C.D. Cal.); *Roberts v. Electrolux Home Products, Inc.*, No. 8:12-CV-01644 (C.D. Cal.); *Cappalli v. BJ's Wholesale Club, Inc.*, No. 1:10-CV-00407 (D. R.I.); *Stroud v. eMachines, Inc.*, No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.); *Shames v. The Hertz Corporation*, No. 07cv2174-MMA (S.D. Cal.); *Poertner et al. v. The Gillette Co. et al*., No. 6:12-cv-00803-GAP-DAB (M.D. Fl.); *Beck-Ellman et al. v. Kaz USA Inc. et al*., No. 3:10-cv-02134-H-DHB (S.D. Cal.); and *Mullins v. Direct Digital LLC*, No. 1:13-cv-01829 (N.D. Ill.).

## CLASS TARGET

5.      The Class consists of all persons residing in the United States who used a debit or credit card to make a purchase at an Affected Location during its Exposure Window.  The Class specifically excludes: (i) Arby's and its officers and directors; and (ii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.

6.      To verify the notice program's effectiveness, GfK MediaMark Research & Intelligence, LLC (MRI)[1] data was studied among adults who use Arby's restaurants and have used any credit/debit card in the last 12 months ("likely Class members").

7.      Knowing the characteristics, demographics, interests, and media habits of a target group aids in the media planning and selection process. Demographic highlights of likely Class members include: 99.4% speak English most often; 93.4% have graduated from high school and 65.8% have attended college; 88.7% are white; 88.1% are 25 years of age or older, 72.4% are 25-64 years of age, and 68.3% are 35 years of age or older; 86.8% have a household income of $30,000 or more, 79.8% have a household income of $40,000 or more, and 71.7% have a household income of $50,000 or more; and 83.1% live in a Metropolitan CBSA.[2]

8.      On average, likely Class members: are 46 years of age; have a household income of $89,650; and own a home valued at $235,548.[3]

---

[1] GfK MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

[2] Core Based Statistical Areas (CBSAs) consist of the county or counties or equivalent entities associated with at least one core (urbanized area or urban cluster) of at least 10,000 population, plus adjacent counties having a high degree of social and economic integration with the core as measured through commuting ties with the counties associated with the core. The general concept of a CBSA is that of a core area containing a substantial population nucleus, together with adjacent communities having a high degree of economic and social integration with that core. CBSAs are defined by the U.S. Office of Management and Budget to provide a nationally consistent set of geographic entities for the United States and Puerto Rico for use in tabulating and presenting statistical data. Metropolitan Statistical Areas are CBSAs associated with at least one urbanized area that has a population of at least 50,000. The metropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting. Micropolitan Statistical Areas are CBSAs associated with at least one urban cluster that has a population of at least 10,000 but less than 50,000. The micropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting.

[3] The average age for U.S. adults is 47, the average household income is $81,761, and the average home value is $268,528.

3

9.      Compared to the general adult population, likely Class members are: 70.7% more likely to live in the Midwest Census Region; 26.6% more likely to have a household income between $60,000-$74,999, 25.7% more likely to have a household income between $100,000-$149,999, and 23.7% more likely to have a household income between $75,000-$99,999;  17.9% more likely to be white; 15.7% more likely to have graduated from college; and 11.1% more likely to be 25-34 years of age, 7.6% more likely to be 45-54 years of age, and 6.5% more likely to be 35-44 years of age.

10.     Media usage among likely Class members includes: 64.7% are considered to be moderate to heavy consumers of internet media; and 64.2% are considered to be moderate to heavy consumers of magazine media.

11.     Additionally, 93.2% of likely Class members have access to the internet at home using a computer, 91.6% have looked at or used the internet in the last 30 days, 86.9% have used Google.com in the last 30 days, 80.2% have used their cellphone or smartphone to look at or use the internet in the last 30 days, and 68.8% have visited Facebook in the last 30 days.

## NOTICE PLAN ELEMENTS

12.     The proposed Notice Plan utilizes a combination of paid notice in leading consumer magazines and paid online advertising, as well as a notice on Arby's website.

13.     A Summary Notice will appear as an approximate third-page ad unit once in *Country Living* and *People*. The Notice will appear in both the print publications, as well as their online digital replicas.

14.     According to MRI data, *Country Living* reaches approximately 6.5% of likely Class members and likely Class members are 33.4% more likely to be readers of the magazine, as compared to the general adult population. The magazine has a circulation of 1,380,879 with approximately 11,934,000 readers. It is a monthly home magazine covering design, food, pets, gardening, and how-tos focusing on "small-town community" living. *People* magazine reaches approximately 18.7% of likely Class members and likely Class

4

members are 10.3% more likely to be readers of the magazine, as compared to the general adult population. The magazine has a circulation of 3,411,860 with approximately 41,353,000 readers. It is a weekly entertainment magazine that features celebrity news, biographies, and gossip.

15.     KCC will implement a paid nationwide online advertising campaign consisting of internet banners on the Google Display Network, as well as the social media site Facebook. Approximately 185 million impressions[4] will be generated. The impressions will be targeted to likely Class members and will be delivered on both desktop and mobile devices, including tablets and smartphones. The online ads will include an embedded link to the case website. Conversion tracking will be used to monitor online behavior, as well as track and retarget likely Class members who file a claim or stop midway through the process.

16.     The Google Display Network is a vast ad network that reaches over 90% of Internet users and harnesses the power of advertising opportunities to over two million websites, including some of the most-visited websites and most recognizable properties on the entire internet.

17.     Facebook is the largest social media platform in terms of both audience size and engagement, with the capability of reaching millions of users daily.

18.     The digital media campaign will be routinely monitored by KCC's digital specialists to analyze key campaign performance indicators (KPIs), such as click-through rates (CTRs) and costs per action (CPAs). This knowledge will be leveraged to allocate placements to sites that have demonstrated successful KPIs throughout the duration of the campaign.

19.     Arby's will post a link to the settlement website accessible through the "Payment Card Notice" link on its website, www.Arbys.com, for the entire Claims Period.

---

[4] "Impressions" are the total number of opportunities to be exposed to a media vehicle or vehicles containing a notice.

20.     KCC will create and maintain an informational case website that will allow Class members to obtain additional information and documents about the litigation, as well as file a claim online.

21.     The website address will be accessible through a hyperlink embedded in the online notices, as well as displayed in the magazine notices.

22.     KCC will host and maintain an automated toll-free number that will allow Class members to learn more about the litigation in the form of frequently asked questions and answers, as well as request to have additional information mailed directly to them.  The toll-free number will be displayed in the magazine notices.

## CONCLUSION

23.     The Notice Plan is expected to reach approximately 70% of likely Class members on average 1.6 times each via the paid notification methods described above. Exposure with be further enhanced by the website link posted on Arby's website. The reach of the Notice Program is consistent with other effective court-approved notice programs[5] and ensures that a high percentage of the Class will be exposed to the notice in accordance with Federal Judicial Center guidance for effective class notification.[6]

24.     At the conclusion of the Notice Plan, KCC will provide a final report verifying its adequacy and effective implementation.

---

[5]   *See, e.g., Poertner et al. v. The Gillette Co. et al.*, No. 6:12-cv-00803-GAP-DAB (M.D. Fla. Oct. 25, 2013), Declaration of Gina Intrepido-Bowden on Adequacy of Proposed Settlement Notice Program ¶ 3, Dkt. 114-4 (70.4% reach); *Beck-Ellman et al. v. Kaz USA Inc. et al.*, No. 3:10-cv-02134-H-DHB (S.D. Cal. Dec. 24, 2012), Declaration of Gina Intrepido-Bowden in Support of Preliminary Approval of Class Settlement ¶ 4, Dkt. 83-7 (71.4% reach); *In re: Rust-Oleum Restore Mktg., Sales Practices and Products Liab. Litig*, No. 1:15-cv-01364 (N.D. Ill. Oct. 19, 2016), Declaration of Carla A. Peak on Settlement Notice Plan ¶ 4, Dkt. 105-3 (70% reach); *Mullins v. Direct Digital LLC*, No. 1:13-cv-01829 (N.D. Ill. Mar. 3, 2017), Declaration of Gina Intrepido-Bowden on Settlement Notice Plan ¶ 4, Dkt. 128-11 (70-75% reach).
[6]   *See* Fed. Judicial Center, *Judges' Class Action Notice and Claims Process Checklist* 1 (2010) (describing 70-95% as a "high percentage" of class members reached for effective notice); Fed. Judicial Center, *Managing Class Action Litig.: A Pocket Guide for Judges* 27 (3d ed. 2010) (same).

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of October, 2018.

_____
Carla Peak

**EXHIBIT E – PROPOSED ORDER ON PRELIMINARY APPROVAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Arby's Restaurant Group, Inc. Data Security Litigation<br><br>CONSOLIDATED CONSUMER CASE | Case No. 1:17-cv-1035 |

**[PROPOSED] ORDER CERTIFYING A SETTLEMENT CLASS,
PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
<u>AND DIRECTING NOTICE TO THE CLASS</u>**

This matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Class for Settlement.

Plaintiffs filed a Consumer Plaintiffs' First Amended Consolidated Class Action Complaint against Arby's Restaurant Group, Inc. ("Arby's") on  March 19, 2018, in which Plaintiffs asserted claims for breach of implied contract, negligence, negligence per se, unjust enrichment, declaratory judgment, violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., violations of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq., violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., and violation of the Tennessee Consumer Protection, Tenn. Code Ann. §§ 47-18-101 et seq.

The Parties, through their counsel, have entered into a Settlement Agreement following good faith, arm's-length negotiations and a mediation overseen by Ralph Levy and ensuing settlement negotiations between the Parties.  The Parties have agreed to settle this action, pursuant to the terms of the Settlement Agreement, and subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy of the settlement ("Settlement"), which, if approved, will result in dismissal of this action with prejudice.

Having reviewed the Settlement Agreement (ECF __), including the exhibits attached thereto, and all prior proceedings herein, and for good cause shown, it is hereby ordered that Plaintiff's Motion for Preliminary Approval is granted as set forth herein.[1]

1.     **<u>Class Certification for Settlement Purposes Only</u>.**  For settlement purposes only and pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e), the Court provisionally certifies a class in this matter (the "Class") defined as follows:

> All persons residing in the United States who used a debit or credit card to make a purchase at an Affected Location during its Exposure Window.  The Class specifically excludes: (i) Arby's and its officers and directors; and (ii) the Judge or Magistrate Judge to whom the action is

---

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

assigned and, any member of those Judges' staffs or immediate family members. [2]

The Court provisionally finds, for settlement purposes only, that: (a) the Class is so numerous that joinder of all Class Members would be impracticable; (b) there are issues of law and fact common to the Class; (c) the claims of the Representative Plaintiffs are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members; (d) the Representative Plaintiffs and Lead Counsel and Class Counsel will fairly and adequately protect the interests of the Class as the Representative Plaintiffs have no interest antagonistic to or in conflict with the Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Class; (e) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

2.    **Representative Plaintiffs and Class Counsel.**

Plaintiffs Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters are hereby provisionally designated and appointed as the

---

[2] The exposure windows relating to each affected Arby's restaurant have varying durations ranging between October 8, 2016 and January 12, 2017. The "Affected Locations" and their respective "Exposure Windows" are those listed in the public notification to consumers of the data breach posted by Arby's on April 14, 2017, at http://arbys.com/security ("Locations" tab).

Representative Plaintiffs.  The Court provisionally finds that the Representative Plaintiffs are similarly situated to absent Class Members and therefore typical of the Class and that they are adequate representative plaintiffs.

The Court finds that the following counsel are experienced and adequate counsel and are hereby provisionally designated as "Class Counsel" pursuant to Federal Rule of Civil Procedure 23(g): Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP as Lead Counsel and John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group,  and James M. Evangelista and David J. Worley of Evangelista Worley LLP, together with Lead Counsel, as Class Counsel.

3.	**Preliminary Settlement Approval.**  Upon preliminary review, the Court finds that the proposed Settlement is fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class and accordingly is preliminarily approved.

4.	**Jurisdiction.**  The Court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the Parties before it for the purposes of the Settlement.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

5.    **Final Approval Hearing.**  A Final Approval Hearing shall be held on

_____ at _____ in Courtroom 2308 of the Richard B. Russell Federal Building

and United States Courthouse, 75 Ted Turner Drive, Atlanta, GA 30303, to

determine, among other things, whether: (a) this matter should be finally certified as

a class action for settlement purposes pursuant to Federal Rule of Civil Procedure

23(b)(3) and (e); (b) the Settlement should be finally approved as fair, reasonable,

and adequate pursuant to Federal Rule of Civil Procedure 23(e); (c) the action should

be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d)

Settlement Class Members should be bound by the releases set forth in the

Settlement Agreement; (e) the motion of Class Counsel for an award of attorneys'

fees and costs and expenses should be approved pursuant to Federal Rule of Civil

Procedure 23(h); and (f) the motion of Representative Plaintiffs for service awards

should be approved.

The Representative Plaintiffs will cause to be filed with the Court their briefs

in support of final approval, attorneys' fees, costs, and expenses, and service awards,

including responses to any objections, no later than twenty-one (21) days before the

Final Approval Hearing.

6.    **Administration.**  The Court appoints KCC Class Action Services,

LLC as the Settlement Administrator, with responsibility for class notice and claims

administration.  Defendant shall pay all the Costs of Settlement Administration.

5

These payments to the Settlement Administrator shall be made separate and apart from the relief being made available to Settlement Class Members under the Settlement.

7.     **Notice to the Class.**  The proposed Notice Program set forth in the Settlement Agreement, and the Claim Form, Publication Notice, and Long Form Notice attached to the Settlement Agreement as Exhibits A, B, and C, respectively, satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and (e)(1) and are hereby approved.  Non-material modifications to these Exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement Agreement.

By 45 days from the date of entry of this Order, the Settlement Administrator shall initiate the Notice Program, which shall be completed in the manner set forth in the Settlement Agreement.

8.     **Findings and Conclusions Concerning Notice.**  The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 7 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Class; (b) are reasonably calculated to apprise Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and

6

other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and the Court concludes that the Notice Program meets all applicable requirements of law, including Federal Rule of Civil Procedure 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.

10.     **Class Action Fairness Act Notice.**  Defendant shall provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1715.  No later than fourteen (14) Days before the Final Approval Hearing, Defendant shall file with the Court a certification that it complied with the CAFA Notice requirements and stating the date of such compliance.

11.     **Exclusion from Class.**  Any Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written opt out notice must clearly manifest a person's intent to be excluded from the Settlement Class.  The written opt out notice must include the individual's name and address; a statement that he or she wants to be excluded from the Settlement Class; and the individual's signature.  To be effective, written opt out

7

notice must be postmarked no later than 120 days after the date of entry of this Order. No later than 130 days from the date of entry of this Order, the  Settlement Administrator shall provide the Parties with:  (a) copies of all completed opt-out notifications, and (b) a final list of all who have timely and validly excluded themselves from the Settlement Class (the "Opt-Out Members").  No later than 10 days prior to the final approval hearing, Class Counsel shall file this list of Opt-Out List Members with the Court for purposes of being attached to the Judgment to be entered upon final approval.

All Class Members who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the terms of this Settlement Agreement.  All Class Members who submit valid and timely notices of their intent to be excluded from the Settlement Class shall also waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement.  All Class Members who do not submit valid and timely notices of their intent to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Judgment entered thereon.

12.    **Objections and Appearances.**  A Settlement Class Member who complies with the requirements of this paragraph may object to the Settlement, and the request for costs, expenses, service awards, and/or attorneys' fees.

Any Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection ("Objection").  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal, factual, and evidentiary support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector (if any), including any former or current counsel who may be entitled to compensation for any reason related to the objection; (v) the identity of all counsel representing the objector who will appear at the final fairness hearing; (vi) a list of all persons who will be called to testify at the final fairness hearing in support of the Objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the final fairness hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative; (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; (xi) a list, by case

9

name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative; and (xii) any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity.

To be timely, written notice of the Objection in the appropriate form must be filed with the Clerk of the Court, as follows:

a)      For an Objection to the Settlement (except as to the request for costs, expenses, service awards, and/or attorneys' fees), no later than 120 days from the date of entry of this Order,

b)      For an Objection to the request for costs, expenses, service awards, and/or attorneys' fees, no later than 14 days after the motion making the request for costs, expenses, service awards, and/or attorneys' fees, and

c)      In each case the Objection must be served concurrently therewith upon Class Counsel, John A. Yanchunis, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, FL 33602; and counsel for Arby's, Douglas H. Meal, Ropes & Gray LLP, 800 Boylston Street, Boston, MA 02199.

The Parties will have the right to depose any objector in his or her district of residence prior to the Settlement Hearing as to the basis and circumstances of his or her objection, and to assess the objector's standing.

Any Settlement Class Member who fails to timely file and serve a written Objection and notice of his or her intent to appear at the Final Approval Hearing pursuant to the Settlement Agreement, as detailed in the Long-Form Notice, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means.   Any objecting Settlement Class Member who appeals a grant of the final Judgment will be required to post an appeal bond.

Any Settlement Class Member who does not submit a timely Objection in complete accordance with the Settlement Agreement and this Order shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

13.     **Claims Process and Distribution Plan.**  Representative Plaintiffs and Arby's have created a process for assessing and determining the validity and value of claims and a methodology for distribution of benefits to Settlement Class Members on Approved Claims ("Claims Process and Distribution Plan"), as set out in the Settlement Agreement.  The Court preliminarily approves the Claims Process and Distribution Plan described in the Settlement Agreement (including the exhibits thereto), and directs that the Settlement Administrator implement the Claims Process and Distribution Plan and effectuate the distribution of settlement benefits to

Settlement Class Members according to the terms of the Settlement Agreement, should the Settlement be finally approved.

Settlement Class Members who qualify for and wish to submit a claim shall do so in accordance with the requirements and procedures specified in the notice and the Claim Form.  If final Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement Agreement, the releases included in that Agreement, and the final Judgment.

14.  **Termination of Settlement.**  This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement.  In such event, the Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

15.  **Use of Order.**  This Order shall be of no force or effect if final Judgment is not entered or there is no Effective Date and shall not be construed or

used as an admission, concession, or declaration by or against Arby's of any fault, wrongdoing, breach, liability, or the certifiability of any class.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Representative Plaintiffs or any other Settlement Class Member that his or her claim lacks merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claim he, she, or it may have in this Litigation or in any other lawsuit.

16.  **Stay of Proceedings.**  Except as necessary to effectuate this Order, all proceedings and deadlines in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the final Judgment, or until further order of this Court.

17.  **Continuance of Hearing.**  The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

18.  **Summary of Deadlines.**  The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing.  The "Preliminary Approval Date" below is the date of entry of this Order.  Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

| | | |
|---|---|---|
| **Notice Commences:** | 45 Days from the Preliminary Approval Date | |
| **Opt-Out Deadline:** | 120 Days from the Preliminary Approval Date | |
| **Objection Deadline (except as to Service Awards, Attorneys' Fees and Costs):** | 120 Days from the Preliminary Approval Date | |
| **Motion for Final Approval:** | 21 Days before the Final Approval Hearing | |
| **Claims Deadline:** | 180 Days after Commencement of the Notice Program | |
| **Motion for Service Awards, Attorneys' Fees and Costs:** | 21 Days before the Final Approval Hearing | |
| **Responses to Objections (except as to Service Awards, Attorneys' Fees and Costs):** | 21 Days before the Final Approval Hearing | |
| **Objections to the Motion for Service Awards, Attorneys' Fees and Costs:** | 14 Days after Filing of the Motion for Service Awards, Attorneys' Fees and Costs | |
| **Final Approval Hearing:** | 180 Days after the Preliminary Approval Date | |

IT IS SO ORDERED this _____ day of _____, 2018.


_____
The Honorable Amy M. Totenberg
United States District Court Judge

**EXHIBIT F – PROPOSED FINAL APPROVAL ORDER AND
JUDGMENT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

In re: Arby's Restaurant Group, Inc.
Data Security Litigation

CONSOLIDATED CONSUMER CASE

Case No. 1:17-cv-1035

## [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

On _____[**DATE**], this Court entered an order granting

preliminary approval (the "Preliminary Approval Order") (Doc. ____) of the

settlement (the "Settlement") between Plaintiffs Jacqueline Weiss, Joseph Weiss,

Ashley Russell, Brett Barnes and Burnell Rutters, ("Plaintiffs"), on their own behalf

and on behalf of the Settlement Class (as defined below), and Defendant Arby's

Restaurant Group, Inc. ("Arby's"), as memorialized in the Settlement Agreement,

which is Exhibit ___ (Doc. ___) to Plaintiff's Motion for Preliminary Approval of

Class Action Settlement and Certification of Settlement Class;[1]

On _____[**DATE**], pursuant to the notice requirements

set forth in the Settlement Agreement and in the Preliminary Approval Order, the

Class was notified of the terms of the proposed Settlement Agreement, of the right

---

[1]The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be indicated.

1

of Class Members to opt-out, and the right of Settlement Class Members to object to the Settlement Agreement and to be heard at a final approval hearing;

On _____[**DATE**], the Court held a final approval hearing to determine, inter alia: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether judgment should be entered dismissing this action with prejudice.  Prior to the final approving hearing, a declaration of compliance with the provisions of the Settlement Agreement and Preliminary Approval Order relating to notice was filed with the Court as required by the Preliminary Approval Order.  Therefore, the Court is satisfied that Class Members were properly notified of their right to appear at the final approval hearing in support of or in opposition to the proposed Settlement Agreement, the award of attorneys' fees and costs and expenses to Class Counsel, and the payment of service awards to the Representative Plaintiffs.

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for Arby's, having reviewed all of the submissions presented with respect to the proposed Settlement Agreement, having determined that the Settlement Agreement is fair, adequate, and reasonable, having considered the application made by Class Counsel for attorneys' fees and costs and expenses,

and the application for service awards to the Representative Plaintiffs, and having reviewed the materials in support thereof, and good cause appearing:

**IT IS HEREBY ORDERED THAT:**

1.      The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class.

2.      The Settlement Agreement was entered into in good faith following arm's length negotiations and is non-collusive.

3.      The Settlement Agreement is, in all respects, fair, reasonable, and adequate, is in the best interests of the Settlement Class, and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays and uncertainties, including as to the outcome, including on appeal, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class Members.  The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the settlement reflected in the Settlement Agreement.

4.      This Court grants final approval of the Settlement Agreement, including but not limited to the releases in the Settlement Agreement including all Released Claims, and the plans for implementation and distribution of the settlement

benefits.  The Court finds that the Settlement Agreement is in all respects fair, reasonable, and in the best interest of the Settlement Class.  Therefore, all Class Members who have not opted out of the Settlement Class are bound by this Final Approval Order and Judgment, approving the Settlement Agreement.

5.     The Parties shall effectuate the Settlement Agreement in accordance with its terms.  The Settlement Agreement and every term and provision thereof shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force of an Order of this Court.

## OBJECTIONS AND OPT-OUTS

6.     _____ objections were filed by Settlement Class Members.  The Court has considered all objections and finds the objections do not counsel against Settlement Agreement approval, and the objections are hereby overruled in all respects.

7.     All Settlement Class Members who have not objected to the Settlement Agreement in the manner provided in the Settlement Agreement are deemed to have waived any objections by appeal, collateral attack, or otherwise.

8.     A list of those putative Class Members who have timely and validly elected to opt out of the Settlement Agreement and the Settlement Class (the "Opt-Out Members"), and who therefore are not bound by the Settlement Agreement and this Final Approval Order and Judgment has been submitted to the Court in the

Declaration of _____, filed in advance of the final approval hearing.  That

list is attached as Exhibit A to this Order.  The Opt-Out Members listed in Exhibit

A are not bound by the Settlement Agreement and this Final Approval Order and

Judgment and shall not be entitled to any of the benefits afforded to the Settlement

Class Members under the Settlement Agreement.

## CLASS CERTIFICATION

9.     For purposes of the Settlement Agreement and this Final Approval

Order and Judgment only, the Court hereby finally certifies the following class (the

"Settlement Class"):

> All persons residing in the United States who used a debit
> or credit card to make a purchase at an Affected Location
> during its Exposure Window.  The Settlement Class
> specifically excludes: (i) Arby's and its officers and
> directors; (ii) the Judge or Magistrate Judge to whom the
> action is assigned and, any member of those Judges' staffs
> or immediate family members; (iii) all Opt-Out Members;
> and (iv) any other person found by a court of competent
> jurisdiction to be guilty under criminal law of initiating,
> causing, aiding or abetting the criminal activity or
> occurrence of the Security Incident or who pleads *nolo
> contendere* to any such charge.

10.    The Court readopts and incorporates herein by reference its preliminary

conclusions as to the satisfaction of Federal Rule of Civil Procedure 23(a) and (b)(3)

set forth in the Preliminary Approval Order and notes again that because this

certification of the Settlement Class is in connection with the Settlement Agreement

rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

11.    The Court grants final approval to the appointment of Plaintiffs Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters as Representative Plaintiffs.  The Court concludes that the Representative Plaintiffs have fairly and adequately represented the Settlement Class and will continue to do so.

12.    The Court grants final approval to the appointment of Roy E. Barnes, John R. Bevis and J. Cameron Tribble of Barnes Law Group, LLC and Stuart J. Guber and Timothy J. Peter of Faruqi & Faruqi, LLP as Lead Counsel and John A. Yanchunis and Marisa Glassman of Morgan & Morgan Complex Litigation Group, and James M. Evangelista and David J. Worley of Evangelista Worley LLP as Class Counsel.  The Court concludes that Lead Counsel and Class Counsel have adequately represented the Settlement Class and will continue to do so.

## NOTICE TO THE CLASS

13.    The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Class of the pendency of the Litigation, certification of the Class for settlement purposes only, the existence and terms of the

Settlement Agreement, and of their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.

14.    The Court finds that Arby's has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS

15.    The Court has considered Class Counsel's Motion for service awards and for attorneys' fees and costs and expenses.  The Court awards Class Counsel the sum of $_____ as an award of attorneys' fees and $_____ as an award of costs and expenses to be paid in accordance with the Settlement Agreement, and the Court finds this amount of fees and costs and expenses to be fair and reasonable. The Court will set forth the reasoning for this award in a separate memorandum.

16.    The Court grants Class Counsel's request for service awards to the Representative Plaintiffs and awards $_____ each to Plaintiffs Jacqueline Weiss, Joseph Weiss, Ashley Russell, Brett Barnes and Burnell Rutters.  The Court finds that this payment is justified by their service to the Settlement Class.  This payment shall be paid in accordance with the Settlement Agreement.

## <u>OTHER PROVISIONS</u>

17.    The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

18.    Within the time period set forth in the Settlement Agreement, the benefits provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim Forms, on Approved Claims, pursuant to the terms and conditions of the Settlement Agreement.

19.    As of the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, (i) Representative Plaintiffs and each Settlement Class Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, personal representatives, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as parens patriae or on behalf of creditors or estates of the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns, will be deemed to have completely, fully, finally, irrevocably, and forever released, relinquished, and

8

discharged Arby's Restaurant Group, Inc. and the other Released Persons from the Released Claims:  namely, any and all injuries, losses, damages, costs, expenses, compensation, claims, suits, rights, rights of set-off and recoupment, demands, actions, obligations, and causes of action, and liabilities of any and every kind, nature, type, description, or character, whether known and unknown, contingent or vested, in law or in equity, based on direct or vicarious liability, and regardless of legal theory, of any Settlement Class Member that: (a) relate to, are based on, concern, or arise out of any allegation that Arby's or any of the other Released Persons has any liability for the Security Incident; or (b) were asserted or could have been asserted (whether individually or on a class-wide basis) in the Litigation, including without limitation, any claims alleging negligence, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of confidence, invasion of privacy, misrepresentation (whether fraudulent, negligent, or innocent), unjust enrichment, bailment, wantonness, and/or failure to provide adequate notice pursuant to any breach notification statute or common law duty, and any federal, state, or local statutory or regulatory claims, including, but not limited to, consumer protection laws and unfair and deceptive trade practice laws or other common laws or statutes of all fifty (50) states and the United States, and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, expenses,

pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that any Settlement Class Member has, has asserted, could have asserted, or could assert against any of the Released Persons based on, relating to, concerning, or arising out of the Security Incident (including but not limited to the theft or compromise of Personal Information) or the allegations, facts, or circumstances described in the Litigation and/or Complaint.  In addition, upon the Effective Date, Representative Plaintiffs and each of the other Settlement Class Members shall be deemed to have waived (a) the provisions of California Civil Code § 1542, which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, must have materially affected his or her settlement with the debtor and (b) any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

20.    The terms of the Settlement Agreement and this Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts,

agreements, obligations, promises, attorney's fees, costs, interest or expenses that arise out of or relate to the allegations or subject matter of the Litigation and/or Complaint.  Further each Settlement Class Member, including each Representative Plaintiff, may not now or hereafter institute, maintain or assert against any of the Released Persons, either directly, indirectly, on their own behalf or on behalf of any class or other person or entity, any action, regulatory action, arbitration, or court or other proceeding of any kind asserting causes of action, claims, damages, equitable, legal and administrative relief, interest, demands, rights, or remedies against the Released Persons (including, without limitation, claims for injunctive relief, declaratory relief, damages, mental anguish, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, disgorgement, or equitable relief against the Released Persons), whether based on federal, state, or local law, statute, ordinance, regulation, the Constitution, contract, common law, or any other source, that relate to any of the Released Claims, and the Settlement Class Members by operation of the Judgment are hereby permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum in which any of the Released Claims is asserted.

21.    This Final Approval Order and Judgment and the Settlement Agreement, and all acts, statements, documents or proceedings relating to the

Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Arby's of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Arby's or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the Litigation.  This Final Approval Order and Judgment, the Settlement Agreement, all acts, statements, documents or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Representative Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; *provided, however,* that the Settlement Agreement and this Final Approval Order and Judgment may be filed in any action by Arby's or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order and Judgment (including but not limited to enforce the releases contained herein).  The Settlement Agreement and Final Approval Order and Judgment shall not be construed or admissible as an admission by Arby's that Representative Plaintiffs' claims or any similar claims are suitable for class treatment.  The Settlement Agreement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this

Final Approval Order and Judgment that are maintained by, or on behalf of, any Settlement Class Member or any other person subject to the provisions of this Final Approval Order and Judgment.

22.     The Court hereby dismisses the Complaint and the Litigation and all claims therein on the merits and with prejudice and without fees or costs to any Party except as provided in this Final Approval Order and Judgment.

23.     Consistent with Paragraph 10.1 of the Settlement Agreement, if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Approval Order and Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties' obligations under the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order and Judgment shall cease to be of any force and effect; and the Parties shall return to the status quo ante in the Litigation as if the Parties had not entered into the Settlement Agreement.  In such an event, the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).

13

24.     The Parties shall move  the appropriate court to file under seal any confidential information previously submitted or to be submitted in the future to that court.

25.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

26.     Without affecting the finality of this Final Approval Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**ENTERED:**

DATED: _____, 2018    By:_____
                                                        The Honorable Amy M. Totenberg
                                                        United States District Judge