**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: Arby's Restaurant Group, Inc. Data Security Litigation | Case No. 1:17-cv-1035-WMR |
| CONSOLIDATED CONSUMER CASE | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNCONTESTED MOTION FOR ATTORNEYS' FEES, COSTS\
EXPENSES, AND SERVICE AWARDS</u>**

Class Counsel, on behalf of the Representative Plaintiffs ("Plaintiffs")[1] and the Settlement Class Members, respectfully request this Court consider and approve their request for Class Representative incentive fee awards, attorneys' fees, costs and litigation expenses.

## I.   INTRODUCTION

Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC") (ECF No. 107) against Arby's on March 19, 2018, seeking redress from the injuries caused by the breach of Arby's point-of-sale systems at over 950 corporate-owned locations between October 8, 2016 and January 12, 2017 (the "Data Breach").   On October 5, 2018, Plaintiffs announced that a proposed settlement had been reached and requested this Court to, *inter alia*, grant preliminary approval of the settlement and to provisionally certify a class for purposes of the settlement. *See* ECF No. 169-1 (Plaintiffs' Unopposed Motion For Preliminary Approval Of Settlement, Preliminary Certification Of Class For Settlement Purposes) ("Motion for Preliminary Approval"). On November 30, 2018, this Court

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning as defined in the settlement agreement, *see* ECF No. 169-2, and the Amendment to Settlement Agreement. *See* ECF No. 175-1 (together, the "Settlement Agreement").

preliminarily approved the settlement and provisionally certified the Class[2] ("Preliminary Approval Order"). ECF No. 177.

Plaintiffs respectfully request that, pursuant to Federal Rule of Civil Procedure 23(h), the Court approve the agreed-upon attorneys' fees totaling $980,000; reasonable costs and expenses in the amount of $35,000; and incentive awards of $4,500 for each Plaintiff in recognition of their services as Class Representatives. Because Arby's will pay for the Settlement Agreement's relief separate and apart from Class Counsels' fees, costs and expenses, approving Class Counsels' awards will not detract from the payments or relief to any Settlement Class Member.

As explained below, Arby's has agreed to provide a total benefit to the Class up to $3,306,000.00. Accordingly, the agreed-upon attorneys' fees, costs and expenses represents approximately 29.64% of the Class' recovery, a percentage regularly approved for class ligation in this Circuit. *See* Section III.B, *infra*; *see also Muransky v. Godiva Chocolatier, Inc.*, --- F.3d ---, 2019 WL 1760292, at *13 (11th

---

[2] The Class is defined as:

> All persons residing in the United States who used a debit or credit card to make a purchase at an Affected Location during its Exposure Window. The Class specifically excludes: (i) Arby's and its officers and directors; and (ii) the Judge or Magistrate Judge to whom the action is assigned and, any member of those Judges' staffs or immediate family members.
>
> Preliminary Approval Order at 3.

2

Cir. Apr. 22, 2019) (affirming award of 33.33%); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292- 98 (11th Circ. 1999) (same); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in [the Eleventh] Circuit."). Furthermore, the agreed-upon attorneys' fees, costs and expenses represent a *negative* multiplier on Class Counsel's lodestar, further reinforcing the reasonableness of Class Counsel's fee request.

For these reasons, and as explained below, this Court should approve the agreed-upon attorneys' fees, costs and expenses, and service awards.

## II.    SETTLEMENT BENEFITS TO THE CLASS

### A. $2 Million Reimbursement Fund for Financial Losses and Lost Time

Arby's has agreed to establish a $2 million cash fund for Settlement Class Members who incurred financial losses and lost time resulting from the Data Breach, in addition to the opportunity to enroll in identify theft protection services for 24 months. (Settlement Agt. ¶ 2.2.6). Qualifying Settlement Class Members who submit timely and valid claim forms and documentation are qualified to receive up to $5,000 in reimbursement funds. *Id.* at ¶ 2.1.1(c). Specifically, Settlement Class Members who have documented, unreimbursed actual out-of-pocket expenses that fall within any of the enumerated categories listed in Paragraph 2.1.1 (e.g.,

3

unauthorized charges, losses incurred from lack of access to funds, and costs and expenses spent addressing identity theft or fraud) are eligible for reimbursement. *Id.* at ¶ 2.1.1.

Further, Settlement Class Members who are able to document time spent remedying out-of-pocket losses resulting from the Data Breach are eligible for reimbursement at $15 per hour for up to five hours. *Id.* at 2.1.1(b). Even Settlement Class Members who cannot separately document their time spent remedying out-of-pocket losses resulting from the Data Breach are eligible for reimbursement at $15 per hour for up to two hours if they submit self-certification for such time spent. *Id.* at ¶ 2.1.1(a).

### B. Identity Theft Protection Enrollment

In addition to reimbursement for their out-of-pocket expenses and time spent remedying out-of-pocket losses resulting from the Data Breach, Arby's has committed $300,000 to funding identity theft protection services for Settlement Class Members for up to 24 months without charge. *Id.* at ¶ 2.1.2. If the claims exceed $300,000, the period of protection provided by the identity theft protection service will be reduced on a pro rata basis. *Id.*

These services are provided by Experian Consumer Services and will include periodic credit reports, credit reporting monitoring across all three credit bureaus, identity restoration assistance, and up to $1 million in identity theft insurance. *Id.*

## C. Non-Monetary Relief

Through confirmatory discovery, Class Counsel also established that Arby's has implemented and will maintain adequate data security features in the future. (Settlement Agt. ¶ 2.4; Declaration of Roy E. Barnes in Support of Consumer Plaintiffs' Motion for Final Approval of Class Settlement [hereinafter "Barnes Dec."], attached hereto as Exhibit 2 to that Motion, ECF 187-3, ¶ 25). Class Counsel has verified under oath that Arby's has, among other things: implemented annual security awareness training to ensure payment card data security, designated a position specifically to oversee information security compliance, and hired third-party assessors to ensure Arby's compliance with payment card security standards. (Barnes Dec., ¶ 25).

## D. The Claims Process

The Settlement's claim process is convenient for Settlement Class Members, as they may easily submit claims for processing online directly through Arby's main website, www.Arbys.com, and the website dedicated to this Settlement Agreement, www.ArbysSettlement.com, at any time during the entire Claims Period. Settlement

Agt. at ¶ 4.2.2. In addition to these websites, the Settlement Administrator has also maintained a toll-free help line to address Settlement Class Members' inquiries. *Id.* at ¶ 4.2.3. Settlement Class Members may also submit their claim forms by mailing their claim forms to the Settlement Administrator. *Id.*

### E. Costs of Notice and Attorneys' Fees Paid by Arby's

In addition to the monetary reimbursements to Settlement Class Members, Arby's has agreed to pay all costs of providing notice to Settlement Class Members, the Settlement Administrator's Fees, and attorneys' fees, costs and expenses. (Settlement Agt. ¶¶ 2.2.6, 2.3., 8.4). Arby's has disseminated these notices via banner ads on Facebook and the Google Display Network and through two print magazines with readership numbers in the tens of millions. (*See* generally, Peak Declaration attached as Exhibit 1 to the Mot. for Final Approval of Settlement, ECF 187-2). In total, the publication plan has generated more than 185 million impressions, reaching approximately 70% of Settlement Class Members an average of 1.6 times. (*Id.* ¶10, 19). KCC estimates the total costs for administration of the Settlement will be approximately $291,000. (*Id.* ¶6).

Because the attorneys' fees, costs and expenses and the expenses associated with notice and administration of the claims of the class that will be paid by Arby's are separate and independent from funding benefits to the Settlement Class

Members, the payment of costs and fees will not reduce the amounts of monetary benefits distributed to any Settlement Class Member.

### F. Mediated Settlement Negotiations

This Settlement Agreement is the result of continuous, good faith, and arms-length settlement negotiations, including two days of meditation sessions before an experienced mediator, Ralph Levy of JAMS. (Barnes Dec. ¶ 13). At the conclusion of the first session on July 27, 2018, the Parties agreed upon the relief to the Class. *Id.* at ¶ 14. Only after that initial session did the parties negotiate the attorneys' fees due to Plaintiff's Counsel, and the Parties agreed upon an amount at a subsequent mediation session, on August 10, 2018. *Id.*

## II. THE REQUESTED SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE REASONABLE AND APPROPRIATE

As discussed above, Arby's has agreed to pay for all Class Representatives' service awards authorized by this Court. (Settlement Agt. ¶ 8.3). Class Counsel seeks service awards in the amount of $4,500 for each of the five plaintiffs this Court designated and appointed as class representatives in its order granting preliminary approval of the settlement. (Preliminary Approval Order at 4; Settlement Agt. ¶ 8.3).

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga.

2001) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997));
*CHIS, LLC v. Peerless Indem. Ins. Co.*, No. 5:14-CV-277-MTT, 2016 WL 9185305,
at *9 (M.D. Ga. Nov. 17, 2016) ("Courts have consistently found incentive awards
to be an efficient and productive way to encourage members of a class to become
class representatives."); *Hillis v. Equifax Consumer Servs.*, Inc., No. 104-CV-3400-
TCB, 2007 WL 1953464, at *17 (N.D. Ga. June 12, 2007) ("Incentive awards to
class representatives are an accepted element of class action cases.").

Courts in the Eleventh Circuit have consistently awarded similar service
awards when, as here, plaintiffs have spent time and effort reviewing pleadings,
conferring with counsel, responding to discovery, and reviewing and consenting to
the settlement. *See e.g., CHIS*, 2016 WL 9185305, at *9 ("requested incentive award
of $5,000 is reasonable and justified" when plaintiff responded to discovery
requests, reviewed filings, and approved of settlement); *Barkwell v. Sprint
Commc'ns Co.*, L.P., No. 4:09-CV-56 (CDL), 2014 WL 12704984, at *9 (M.D. Ga.
Apr. 18, 2014) (same, approving $5,000 service awards for each named plaintiff).
Plaintiffs have further continued to monitor this litigation through their continued
contact with Class Counsel. Given Plaintiffs' commitment and diligence, Plaintiffs
respectfully request this Court find that service awards of $4,500 to each Plaintiff
are fair and reasonable.

## III.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES, COSTS AND  EXPENSES IS REASONABLE AND SHOULD BE APPROVED

Class Counsel seeks an agreed-upon fee award totaling $980,000, in addition to reasonable costs and expenses in the amount of $35,000. (Settlement Agt. ¶ 8.2). Plaintiffs respectfully request this Court grant this request for the reasons discussed below.

### A. The Fee Agreement Should Be Afforded Substantial Weight Because It Was Negotiated At Arms-Length And Independent From Other Terms

A "district court has wide discretion in exercising its judgment on the appropriate fee based on its own expertise." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). Within this discretion, courts may give deference to a parties' mutual agreement on attorneys' fees, costs, and expenses resulting from an arm's length negotiation. *See e.g., In re BellSouth Corp. ERISA Litig.*, No. 1:02-CV-2440-JOF, 2006 WL 8431178, at *8 (N.D. Ga. Dec. 5, 2006) ("The fact that the attorney's fees and costs were negotiated at arm's-length underscores the fact that the fees are reasonable and should be approved."); *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Further, the parties' agreement is entitled to considerable weight because the fee negotiations were not conducted until *after* an agreement in principle was reached on the substantive terms of the Settlement Agreement. *See Champs Sports Bar & Grill Co. v. Mercury Payment Sys.*, LLC, 275 F. Supp. 3d 1350, 1356 (N.D. Ga. 2017) ("[T]he amount of attorneys' fees and expenses to be paid was negotiated only after the other terms of the Settlement Agreement had been agreed upon. As a result, the parties' agreement as to payment of fees and expenses is entitled to substantial weight."); *Strube v. Am. Equity Inv. Life Ins. Co.*, No. 6:01-CV-1236-ORL-19DAB, 2006 WL 1232816, at *1 (M.D. Fla. May 5, 2006) (finding that "great weight should be given to the negotiated fee in considering whether the fee is appropriate" when "the fee-negotiations were conducted at arms-length and only after all material terms of the settlement had been agreed upon."); *Fladell v. Wells Fargo Bank*, N.A., No. 0:13-cv-60721, 2014 WL 5488167, at *4 (S.D. Fla. Oct. 29, 2014) ("[A]lthough the Settlement Agreement includes a 'clear-sailing' provision, that is immaterial. There was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself.").

**B. The Requested Fee Is Clearly Reasonable Under the *Camden I* Factor Guide**

The Eleventh Circuit has set forth a twelve-factor guide courts should consider when determining whether an attorneys' fee request is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3 (11th Cir. 1991) (citing

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[3]

These factors are not exhaustive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-

---

[3] Not every *Camden I* factor will apply to this action. Indeed, "rarely are all of the [*Camden I*] factors applicable[.]" *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir.1993). Here, Plaintiffs will discuss all the factors except for numbers seven and eleven: the time limitations imposed by the client and the nature and length of the professional relationship with the client. *See e.g., In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) (holding that "nature/length of professional relationship with the client" and "time limitations imposed by the client" factors have no application in class actions).

monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden* I, 964 F.2d at 775.

Plaintiffs present two bases for the Court to award the requested fee: the "percentage-of-the-fund" and "lodestar" approach. "Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve [*Camden I*] factors . . . to determine the appropriate statutory fee or the percentage to be utilized." *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. App'x 168, 172 (11th Cir. 2008).

First, where class action settlements involve a common fund, courts typically base an award of attorneys' fees on the percentage of the common benefit recovered. *See Camden I*, 946 F. 2d at 774. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Id.* However, the majority of common fund settlements both within and outside the Eleventh Circuit award between 25% and 33% of the common fund as fees. *See Allapattah Svcs., Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1210-1213 (S.D. Fla. 2006) (analyzing other settlements, applying "market approach," and concluding 31 1/3% of the common fund was appropriate); *George v. Acad. Mortg. Corp. (UT)*, --- F.Supp. 3d ---, 2019 WL 1324023, at *17 (N.D. Ga. Mar. 20, 2019) (reviewing

other Eleventh Circuit common fund settlements and concluding 33% of the common fund was appropriate); *Kreher v. City of Atlanta, Georgia*, 1:04-CV-2651-WSD, 2008 WL 11399561, at *5 (N.D. Ga. Sept. 30, 2008).

In calculating the size of the fund, the Eleventh Circuit considers that the amount of the total fund determined the amount of each person's claim, regardless of the actual number of claims filed. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d at 1297; *see also Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 629–30, n.2 (11th Cir. 2015) (finding that "no principled reason counsels against" in applying "*Camden I*'s percentage-of-recovery rule to claims-made settlements"). Additionally, attorneys' fees and expense, as well as costs of notice and administration, are generally included in the calculation of the amount of the common fund.  *See*, *e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993) (holding that defendant's "payment of administrative expenses and attorney's fees" should be "included in the Court's calculation of the amount of the common fund" because it "inures to the benefit of the class."). Accordingly, as described below, the requested fee here constitutes 29.64% of the total available monetary relief, well within the traditional range of awards.

Second, the award is also appropriate based upon the "lodestar" calculation of counsels' reasonable hourly rates multiplied by the number of hours reasonably

expended in prosecuting the claim. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Plaintiffs have asserted a violation of the Georgia Fair Business Practices Act, which provides for an award of reasonable attorneys' fees, costs and expenses of litigation incurred in connection with the case. *See* O.C.G.A. §10-1-399(d); *see also Dikeman*, 312 Fed. Appx. at 172 (noting that due to Fair Credit Reporting Act's fee-shifting provision, court may use lodestar analysis to calculate fee award, or at least "double-check the result of the percentage-of-the-common-fund method," after settlement). This fee-shifting provision applies "irrespective of the amount in controversy." *Compare* O.C.G.A. §10-1-399(d) *with In re Porter*, 10-13553, 2014 WL 585962, at *4 (Bankr. E.D. La. Feb. 14, 2014) ("the starting point should be the lodestar approach" for determining reasonable attorneys' fee pursuant to analogous fee-shifting provision in the Massachusetts Unfair Trade Practices Act). At a minimum, the Court may consider the lodestar to assess or "cross-check" the reasonableness of the fees. *See Cox v. Cmty. Loans of Am.*, File No. 4:11-CV-177-CDL., 2016 WL 9130979, at *3 ("[W]hile a lodestar analysis is not required, it is helpful to assessing the reasonableness of the fees.");

14

*see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) ("Some courts use the lodestar method as a cross-check of the percentage of the fund approach."). The lodestar of Plaintiffs' Counsel greatly exceeds the requested fee.

Under either the percentage-of-the-fund or lodestar approach, a consideration of the *Camden* factors show the reasonableness of the requested fee.

### 1.  Time and Labor Required

Class Counsel invested considerable time and resources into prosecuting these claims against Arby's and achieving this settlement for Settlement Class Members. Indeed, the Settlement Agreement was only reached after substantial time and labor were expended in, *inter alia*, investigating Plaintiffs' claims and drafting a comprehensive amended complaint, negotiation of numerous case management orders, briefing two motions to dismiss, propounding and responding to discovery, reviewing discovery responses and document production, substantive legal research, and two days of hard-fought, arms-length negotiation sessions. *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *12 (N.D. Ga. May 19, 2014) (finding that fees were reasonable when class counsel spent time "developing the legal theories and claims presented in the complaint and the opposition to the motion to dismiss […] served written discovery requests[.]");

*Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959222, at *4 (N.D. Ala. Apr. 27, 2010) (holding that class counsel's time and labor spent "weighs in favor of an increase in the fee percentage from the benchmark" when "Class Counsel spent significant time conducting necessary discovery and conducting settlement negotiations."); *Amason v. Pantry, Inc.*, No. 7:09-CV-02117-RDP, 2014 WL 12600263, at *3 (N.D. Ala. July 3, 2014) (same).

Class Counsels' efforts – all made without any assurance of recovery – is reflected in the lodestar calculation.  As of May 6, 2019, the total amount is $1,889,024.30, which is far in excess of the requested fee amount.[4] The fee request results in a "negative multiplier" of 0.52. *C.f. In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").[5] Of

---

[4] Declarations from attorneys in each of Class Counsels' firms setting forth their reasonable hourly rates and their reasonable expenditure of time are attached as Exhibits 1-4 hereto.

[5] Courts routinely apply *positive* multipliers to the lodestar amounts. Normally, "in large and complicated class actions," multipliers "range from 2.26 to 4.5," with "three appear[ing] to be the average." *Cox*, 2016 WL 9130979, at *3 (citing *Pinto*, 513 F. Supp. 2d at 1344); *see also Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *15 (N.D. Ala. Feb. 5, 2015) (finding that the "average multiplier found to be reasonable" in "common fund class actions" was "3.89");*see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying four times

course, this lodestar figure excludes time that will be spent during the final approval and hearing, continued settlement administration, and on any potential appeals. For these reasons, Class Counsel's considerable time and effort expended on obtaining this positive recovery for Settlement Class Members should be rewarded.

### 2. Novelty and Difficulty of Issues Involved Great Risk And Required Skilled Attorneys

The novelty and difficulty of the legal issues involved in this nationwide data breach class action further justify the reasonableness of Class Counsel's fee request. Indeed, "[c]lass actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008); *In re: Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, MLD No. 8:11-mn-02000-JMC, 2015 WL 12844448, at *2 (D.S.C. Apr. 23, 2015) ("Consumer class actions are complex and involve risk.").

This litigation has unique risks. Setting aside difficult choice-of-law and standing issues found in most nationwide data breach class actions, Georgia law is unsettled regarding the duty owed to protect personal information, causation and the

---

multiplier in a class action when the case was taken on a "contingent nature," the "result achieved" was "favorabl[e]," the case was risky, and both class and defense counsel were highly skilled and experienced).

availability of damages flowing from such a breach. *See generally McConnell v. Georgia Dep't of Labor*, 345 Ga. App. 669, 678 (2018), *cert. granted* (Nov. 15, 2018); *Collins v. Athens Orthopedic Clinic*, 347 Ga. App. 13, 16 (2018) (physical precedent only), *cert. granted* (Apr. 29, 2019). And although data breach litigation is a common, unfortunate occurrence in our modern age, Arby's has continuously pointed out that very few consumer classes have been certified when contested.

Arby's was represented by highly-skilled attorneys, another factor weighing in favor of the fee request. *Lunsford*, 2014 WL 12740375, at *13 ("In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel.") (citing *Camden I*, 946 F.2d at 772 n.3); *George v. Acad. Mortg. Corp. (UT)*, --- F.Supp. 3d ---, 2019 WL 1324023, at *14 (N.D. Ga. Mar. 20, 2019) ("'Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.'") (quoting *Walco Invs. V. Thenen*, 975 F.Supp. 1468, 1472 (S.D. Fla. 1997)). Here, Arby's is represented by Douglas Meal of Orrick, Herrington & Sutcliffe, LLP, an international defense firm. As recently as October 2018, Mr. Meal's hourly rate was $1,550.00. *See LabMD, Inc. v. Fed. Trade Comm'n*, No. 16-

16270, ECF No. 150 at ¶ 42 (11th Cir. 2018) (demonstrating opposing counsel's hourly rate).[6]

### 3. Class Counsel Assumed Further Risk in Taking This Case On A Contingency Basis, and Were Further Precluded From Other Employment

Class Counsel pursued this action on a contingency basis. (Barnes Dec. ¶35). Therefore, Class Counsel risked non-payment after numerous hours were expended in this litigation, further justifying the fee request. *Lunsford*, 2014 WL 12740375, at *14 ("In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment."); *see also In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award); *see also Behren*s *v. Wometco Enters., Inc.*, 118 F.R.D. 534, 118 F.R.D. at 534 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees. If this 'bonus' methodology did not exist, very few lawyers could take on the

---

[6] Class Counsel's hourly rates are far lower, reinforcing the reasonableness of the fee request. *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1267 (D. Kan. 2017) ("The Court may properly consider the rate of opposing counsel when setting reasonable hourly rates."); *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) (holding that the hourly rate which "counsel can command in the market is itself highly relevant proof of the prevailing community rate."); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (same).

representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.") (internal citations omitted).   And given their lodestar, Class Counsel will in fact experience underpayment.

Risking non-payment or underpayment due to taking a complex class action case on a contingency fee "can support a fee award of over 30% of the settlement fund." *Morgan*, 301 F. Supp. 3d at 1253 (S.D. Fla. 2016). This risk is amplified considering that Class Counsel were precluded from engaging in other employment. *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *3 (S.D. Fla. Nov. 9, 2018). Since Class Counsel risked non-payment and experienced underpayment by prosecuting these claims, foregoing other opportunities in the process, their request is reasonable.

### 4.  Value of the Benefits to the Class

Separate from and in addition to up to $2 million reimbursement to Settlement Class Members, Arby's has agreed to pay attorneys' fees ($980,000), Class Counsel's reasonable costs and expenses (up to $35,000), and costs of notice and settlement administration (approximately $291,000.).[7] (Settlement Agt. ¶¶ 8.1-8.3;

---

[7] KCC estimates that the total cost for settlement administration will be approximately $291,000.00 (Peak Dec. ¶6).

Peak Dec. ¶6). Accordingly, the total monetary relief benefitting Settlement Class Members is approximately $3,306,000, meaning Class Counsel requests 29.64% of the available relief. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993) (holding that defendant's "payment of administrative expenses and attorney's fees" should be "included in the Court's calculation of the amount of the common fund" because it "inures to the benefit of the class."); *See In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 1:14-MD-02583-TWT, 2016 WL 11299474, at *2 (N.D. Ga. Aug. 23, 2016) ("*Including the requested fee*, the monetary benefits made available to the Settlement Class total approximately $27 million, meaning the requested fee is about 28% of the monetary benefit conferred on the Class.") (emphasis supplied); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011) ("In cases such as this one, where attorneys' fees are paid separately from the claim fund, courts base the fee award on the entire settlement fund as that package is the benefit to the class. This amount includes notice and administration costs and separately paid attorneys' fees and costs."); *see*

*also Fellows v. Am. Campus Communities Servs., Inc.*, No. 4:16-CV-01611-JAR, 2018 WL 3056046, at *6 (E.D. Mo. June 20, 2018) (same, collecting cases).[8]

### 5. Class Counsel's Fee Request Comports with Customary Fees Granted in Similar Cases

A fee request of up to "one-third fee is well within the range of a customary fee." *Lunsford*, 2014 WL 12740375, at *15 (collecting cases awarding one-third in Northern District of Georgia). The Eleventh Circuit has recently affirmed a district court's fee award of 33%. *See Muransky v. Godiva Chocolatier, Inc.*, 2019 WL 1760292, at *13; *see also Waters v. International Precious Metals Corp.*, 190 F.3d at 1297-98 (collecting cases and affirming fee award of 33.33% on settlement of $40 million). For these reasons, Class Counsel's fee request falls well within the range accepted in this Circuit.

---

[8] Additionally, this provision has not addressed the verification of Arby's data security under oath, but courts regularly consider the impact of nonmonetary relief in evaluating fee requests. *See Camden I*, 946 F.2d at 775 (11th Cir. 1991) (establishing that "pertinent factor" in determining the appropriate fee award in common fund cases is "any non-monetary benefits conferred upon the class by the settlement."); *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015) (holding that district courts should "[include] the value of the nonmonetary relief" as "part of the settlement pie"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 352 (recognizing value of non-monetary benefit to class when "defendants have agreed to implement [] compliance programs which will help forestall [] violations in the future").

### 6. The Remaining *Camden I* Factors Also Warrant Approval Of Class Counsel's Fee Request

The Eleventh Circuit also enumerates "[o]ther pertinent factors" in determining the reasonableness of a fee award. *Camden I*, 946 F.2d at 775. One of these factors is "whether there are any substantial objections by class members or other parties to the settlement terms or the fee requested by counsel." *Id.* Here, although Class Members will have an additional opportunity to object to this request for attorneys' fees, there have been no objections to the Settlement Agreement, which contained Class Counsel's fee request. *See In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 ("To date, Plaintiffs have not received a single objection to the fee and expense application, and only one potential Class Member has requested to be excluded from the Class. The lack of numerous objections is evidence that the requested fee is fair."); *In re Food Serv. Equip. Hardware Antitrust Litig.*, No. 1:10-CV-1849-WSD, 2011 WL 13175440, at *4 (N.D. Ga. Dec. 28, 2011) (same).

*Camden I* also counsels the consideration of the "economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. As discussed in further detail above, the nature of contingency-based complex class actions is risky, as Class Counsel risked non-payment while simultaneously refusing other engagements. Continued litigation would require substantial additional money and resources.

Without settlement, Class Counsel would need to continue document production and review, pay to process and store the great volume of produced documents, take and defend many depositions, and expend significant sums for expert witnesses on the issues of liability, causation, damages, and the appropriateness of class treatment. The costs for all of the above would greatly exceed $35,000, all without any assurance that the Class would ever recover more.

## IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE

Class Counsel further seeks reimbursement of $35,000 in costs and expenses they reasonably incurred in obtaining relief for Settlement Class Members since this Action's inception on March 22, 2017. (Settlement Agt. ¶ 8.2). These costs and expenses include, among other things, filing and PACER fees, process service, legal research charges, copying and mailing expenses, travel expenses, expert fees, and document repository charges. Courts in this Circuit regularly approve costs and expenses incurred in class actions. *See Poertner*, 618 F. App'x at 631 (affirming award of costs in consumer class action); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (same). Class Counsel's costs presently exceed $35,000. (*See* Ex. 1, ¶20).

As with attorneys' fees, Class Counsel will continue to incur costs and expenses in finalizing this litigation through final judgment, continued

administration, and potentially defending settlement upon appeal. For these reasons, Class Counsel respectfully request the Court grant recovery of these costs and expenses.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant the Plaintiffs' service awards of $4,500 each in recognition of their efforts on behalf of the Class, (2) approve attorneys' fees, costs and expenses in the amount of $1,015,000, and (3) award reimbursement of Class Counsel's costs and expenses in the amount of $35,000.

Dated: May 7, 2019                                    Respectfully Submitted,

/s/ Roy E. Barnes                                     /s/ Timothy J. Peter
**BARNES LAW GROUP, LLC**          **FARUQI & FARUQI, LLP**
Roy E. Barnes                                         Robert W. Killorin
Ga. Bar No. 039000                                    Ga. Bar No. 417775
John R. Bevis                                         Stuart J. Guber
Ga. Bar No. 056100                                    Ga. Bar No. 141879
J. Cameron Tribble                                    Timothy J. Peter *
Ga. Bar No. 754759                                    101 Greenwood Avenue
31 Atlanta Street                                     Jenkintown, Pennsylvania 19046
Marietta, Georgia 30060                               Tel:  (215) 277-5770
Tel: (770) 227-6375                                   Fax:  (215) 277-5771
Fax: (770) 227-6373                                   rkillorin@faruqilaw.com
roy@barneslawgroup.com                                sguber@faruqilaw.com
bevis@barneslawgroup.com                              tpeter@faruqilaw.com
ctribble@barneslawgroup.com

*Co-Lead Counsel*
*for Plaintiffs and the Proposed Class*
*\*Pro Hac Vice*

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John Yanchunis *
Marisa Glassman*
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com
mglassman@forthepeople.com

**EVANGELISTA WORLEY, LLC**
David J. Worley
Ga. Bar No. 776665
James M. Evangelista
Ga. Bar No. 707807
8100A Roswell Road, Suite 100
Atlanta, Georgia 30350
Tel: (404) 205-8400
Fax: (404) 205-8395
jim@ewlawllc.com
david@ewlawllc.com

*Co-Liaison Counsel*
*for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR ATTORNEYS' FEES, COSTS\ EXPENSES, AND SERVICE AWARDS** was prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(C).

This 7th day of May, 2019.

*/s/ Roy E. Barnes*_____
Roy E. Barnes

*Co-Liaison Counsel*
*for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR ATTORNEYS' FEES, COSTS\ EXPENSES, AND SERVICE AWARDS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to all counsel of record.

This 7th day of May, 2019.

BARNES LAW GROUP, LLC

*/s/ Roy E. Barnes*
Roy E. Barnes
Ga. Bar No. 039000
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
Fax: (770) 227-6373
roy@barneslawgroup.com

2